1   KAMALA D. HARRIS, STATE BAR NO. 146672
    Attorney General of California
2   NIROMI W. PFEIFFER, STATE BAR NO. 154216
    Supervising Deputy Attorney General
3   KARLI EISENBERG, STATE BAR NO. 281923
    Deputy Attorney General
4   JULIE T. TRINH, STATE BAR NO. 231276
    Deputy Attorney General
5    600 West Broadway, Suite 1800
     San Diego, CA 92101
6   P.O. Box 85266
    San Diego, CA 92186-5266
7   Telephone:  (619) 645-2201
    Fax:  (619) 645-2581
8   E-mail:  Julie.Trinh@doj.ca.gov
    *Attorneys for Defendants*
9

10              IN THE UNITED STATES DISTRICT COURT

11           FOR THE SOUTHERN DISTRICT OF CALIFORNIA

12

13

14

15  **SKYLINE WESLEYAN CHURCH,**          CASE NO. :  **'16CV0501 JM   DHB**

16                          Plaintiff,    San Diego Superior Court, Case No.
                                          37-2016-00003936-CU-CR-CTL
17          v.
                                          **DEFENDANTS' NOTICE OF**
18                                        **REMOVAL OF ACTION UNDER**
                                          **28 U.S.C. § 1441(a)**
19  **CALIFORNIA DEPARTMENT OF**
    **MANAGED HEALTH CARE;**
20  **MICHELLE ROUILLARD, in her**
    **official capacity as Director of the**
21  **California Department of Managed**
    **Health Care,**
22
                            Defendants.
23

24       To the Clerk of the Court:

25       Please take notice that Defendants California Department of Managed Health

26  Care and Michelle Rouillard, in her official capacity as Director of the California

27  Department of Managed Health Care, hereby remove to this Court the state court

28  action described herein pursuant to 28 U.S.C. §§ 1441(a) and 1446 (b).

                                    1

1.    On or about February 4, 2016, Plaintiff Skyline Wesleyan Church (Plaintiff) filed a Complaint for Declaratory and Injunctive Relief and Nominal Damages (Complaint) in the state court action, naming the California Department of Managed Health Care and Michelle Rouillard, in her official capacity as Director of the California Department of Managed Health Care, as defendants (collectively Defendants).

2.    The state court action is *Skyline Wesleyan Church v. California Department of Managed Health Care, et al.*, filed as Case Number 37-2016-00003936-CU-CR-CTL in the Superior Court of California in and for the County of San Diego.  A true and correct copy of a court docket in the state court action as it existed on February 25, 2016, is attached as Exhibit A.

3.    Defendants were served with copies of the summons, Complaint, notice of case assignment, notice of eligibility to efile and assignment to imaging department, and alternative dispute resolution information on February 24, 2016. True and correct copies of all documents served on Defendants are attached as Exhibits B-F, respectively.

4.    Defendants have not yet responded to the Complaint in the state court action.

5.    Plaintiff is allegedly a non-profit organization pursuant to § 501(c)(3) of the Internal Revenue Code.  (See Exhibit C, Complaint, ¶ 14.)

6.    This is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1331, and is one which may be removed to this Court pursuant to the provisions of 28 U.S.C. § 1441(a) because it arises under alleged violations of 42 U.S.C. §§ 1983 and 1988, and the First and Fourteenth Amendments to the United States Constitution.  (See Exhibit C, Complaint, Causes of Action 1-3.)

7.    The remaining causes of action are for state law claims.  (See Exhibit C, Complaint, Causes of Action 4-6.)  Defendants request removal of the entire action, including these pendent claims pursuant to the provisions of 28 U.S.C. § 1367.  All

2

causes of action arise from the same core set of factual allegations related to letters issued by the Department of Managed Healthcare to health plan providers to ensure their compliance with federal and state laws with respect to the coverage of legal abortions.

8.    Removal to this district court is proper under 28 U.S.C. sections 1441(a) because San Diego County, where the Complaint was filed, is geographically located within this court's district.

9.    Removal is timely under 28 U.S.C. § 1446(b) because the Notice of Removal is filed within 30 days of service of process of the Complaint and all named defendants consent to this Notice of Removal.

Dated:  February 25, 2016

Respectfully submitted,

KAMALA D. HARRIS
Attorney General of California
NIROMI W. PFEIFFER
Supervising Deputy Attorney
KARLI EISENBERG
Deputy Attorney General

*s/ Julie T. Trinh*

JULIE T. TRINH
Deputy Attorney General
*Attorneys for Defendants*

SD2016600637
81277656

# EXHIBIT A

**SUPERIOR COURT OF CALIFORNIA**
## County of SAN DIEGO

**Register of Actions Notice**

| | | | |
|---|---|---|---|
| Case Number: | 37-2016-00003936-CU-CR-CTL | Filing Date: | 02/04/2016 |
| Case Title: | Skyline Wesleyan Church vs Theriot [IMAGED] | Case Age: | 21 days |
| Case Status: | Pending | Location: | Central |
| Case Category: | Civil - Unlimited | Judicial Officer: | Richard E. L. Strauss |
| Case Type: | Civil Rights | Department: | C-75 |

### Future Events

| Date | Time | Department | Event |
|---|---|---|---|
| 07/08/2016 | 09:00 AM | C-75 | Motion Hearing (Civil) |
| 07/08/2016 | 09:00 AM | C-75 | Motion Hearing (Civil) |
| 07/08/2016 | 09:00 AM | C-75 | Motion Hearing (Civil) |
| 07/08/2016 | 09:00 AM | C-75 | Motion Hearing (Civil) |
| 08/19/2016 | 10:00 AM | C-75 | Civil Case Management Conference - Complaint |

### Participants

| Name | Role | Representation |
|---|---|---|
| California Department of Managed Health Care | Defendant | |
| Rouillard, Michelle | Defendant | |
| SKYLINE WESLEYAN CHURCH | Plaintiff | Hacker, David J; LiMandri, Charles S |

### Representation

| Name | Address | Phone Number |
|---|---|---|
| HACKER, DAVID J | ALLIANCE DEFENDING FREEDOM 101 Parkshore Drive 100 Folsom CA 95630 | (916) 923-2850 |
| LIMANDRI, CHARLES S | P O Box 9120 RANCHO SANTA FE CA 92067 | |

| ROA# | Entry Date | Short/Long Entry | Filed By |
|---|---|---|---|
| 1 | 02/04/2016 | Complaint filed by SKYLINE WESLEYAN CHURCH. Refers to: California Department of Managed Health Care; Rouillard, Michelle | SKYLINE WESLEYAN CHURCH (Plaintiff) |
| 2 | 02/04/2016 | Civil Case Cover Sheet filed by SKYLINE WESLEYAN CHURCH. Refers to: California Department of Managed Health Care; Rouillard, Michelle | SKYLINE WESLEYAN CHURCH (Plaintiff) |
| 3 | 02/04/2016 | Original Summons filed by SKYLINE WESLEYAN CHURCH. Refers to: California Department of Managed Health Care; Rouillard, Michelle | SKYLINE WESLEYAN CHURCH (Plaintiff) |
| 4 | 02/05/2016 | Summons issued. | |
| 5 | 02/04/2016 | Case assigned to Judicial Officer Strauss, Richard. | |
| 6 | 02/05/2016 | Civil Case Management Conference scheduled for 08/19/2016 at 10:00:00 AM at Central in C-75 Richard E. L. Strauss. | |
| 7 | 02/05/2016 | Case initiation form printed. | |
| 8 | 02/17/2016 | Motion Hearing (Civil) scheduled for 07/08/2016 at 09:00:00 AM at Central in C-75 Richard E. L. Strauss. | |
| 9 | 02/17/2016 | Motion Hearing (Civil) scheduled for 07/08/2016 at 09:00:00 AM at Central in C-75 Richard E. L. Strauss. | |
| 10 | 02/17/2016 | Motion Hearing (Civil) scheduled for 07/08/2016 at 09:00:00 AM at Central in C-75 Richard E. L. Strauss. | |
| 11 | 02/17/2016 | Motion Hearing (Civil) scheduled for 07/08/2016 at 09:00:00 AM at Central in C-75 Richard E. L. Strauss. | |

# EXHIBIT B

# SUMMONS
## *(CITACION JUDICIAL)*

**SUM-100**

**NOTICE TO DEFENDANT:** California Department of Managed
*(AVISO AL DEMANDADO):* Health Care; Michelle Rouillard

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**02/04/2016** at 02:19:36 PM

Clerk of the Superior Court
By Jessica Pascual,Deputy Clerk

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Skyline Wesleyan Church

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
SUPERIOR COURT OF CALIFORNIA
County of San Diego
330 West Broadway
San Diego, CA 92101

CASE NUMBER:
*(Número del Caso):* 37-2016-00003936-CU-CR-CTL

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Charles S. LiMandri, Esq.          (858) 759-9948   (858) 759-9938
Freedom of Conscience Defense Fund
P.O. Box 9520
Rancho Santa Fe, CA 92067

DATE: 02/05/2016                    *J. Pascual*
*(Fecha)*                           J. Pascual
                    Clerk, by _____, Deputy
                    *(Secretario)*                      *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. [X] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*
3. [ ] on behalf of *(specify):*
   under: [ ] CCP 416.10 (corporation)        [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)  [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
          [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Legal
Solutions
Plus

Code of Civil Procedure §§ 412.20, 465

# EXHIBIT C

1  Charles S. LiMandri (California Bar No. 110841)
   FREDOM OF CONSCIENCE DEFENSE FUND
2  P.O. Box 9520
   Rancho Santa Fe, CA 92067
3  (858) 759-9948
   cslimandri@ConscienceDefense.org
4

5  Kevin Theriot (Arizona Bar No. 030446)*
   Erik Stanley (Arizona Bar No. 030961)*
6  Jeremiah Galus (Arizona Bar No. 030469)*
   ALLIANCE DEFENDING FREEDOM
7  15100 N. 90th Street
   Scottsdale, AZ 85260
8  (480) 444-0020
   ktheriot@ADFlegal.org
9  estanley@ADFlegal.org
   jgalus@ADFlegal.org
10

11 David J. Hacker (California Bar No. 249272)
   ALLIANCE DEFENDING FREEDOM
12 101 Parkshore Drive, Suite 100
   Folsom, CA 95630
13 (916) 923-2850
   dhacker@ADFlegal.org
14

15 Casey Mattox (Virginia Bar No. 47148)*
   ALLIANCE DEFENDING FREEDOM
16 440 First Street, NW, Suite 600
   Washington, DC 20001
17 (202) 393-8690
   cmattox@ADFlegal.org

18 *Attorneys for Plaintiff*

19              SUPERIOR COURT OF THE STATE OF CALIFORNIA

20                      FOR THE COUNTY OF SAN DIEGO

21 SKYLINE WESLEYAN CHURCH,              )  Case No.: 37-2016-00003936-CU-CR-CTL
                                         )
22              Plaintiff,               )
           vs.                           )
23                                       )
                                         )  **COMPLAINT FOR DECLARATORY AND**
24 CALIFORNIA DEPARTMENT OF MANAGED      )  **INJUNCTIVE RELIEF AND NOMINAL**
   HEALTH CARE; MICHELLE ROUILLARD, in   )  **DAMAGES**
25 her official capacity as Director of the California )
   Department of Managed Health Care,    )
26                                       )
                                         )
27              Defendants.              )

28

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**02/04/2016** at 02:19:36 PM

Clerk of the Superior Court
By Jessica Pascual,Deputy Clerk

1    Plaintiff Skyline Wesleyan Church ("Skyline Church"), by and through its attorneys,

2  alleges as follows:

3                                         **INTRODUCTION**

4    1.    This Complaint challenges the validity of a mandate issued by the California

5  Department of Managed Health Care (the "DMHC"), and its Director, Michelle Rouillard, on

6  August 22, 2014, requiring group health insurance plans issued in California to provide

7  coverage for all legal abortions, including voluntary and elective ones (the "Mandate").

8    2.    After previously approving group health plans that excluded or limited coverage

9  for abortion, Defendants demanded that certain group health plans immediately cover all legal

10  abortions and that insurers remove from those plans any restrictions placed on abortion

11  coverage, such as exclusions for "voluntary" or "elective" abortions or limiting coverage to

12  "therapeutic" or "medically necessary" abortions. *See* **Exhibit 1.**

13    3.    Defendants based the Mandate on a requirement in the Knox-Keene Health Care

14  Service Plan Act of 1975 ("Knox-Keene Act") that employer health plans cover "basic health

15  care services."

16    4.    Until the Mandate, however, the DMHC had not interpreted "basic health care

17  services" to include voluntary and elective abortions.

18    5.    In fact, existing law and regulations define "basic health care services" to include

19  services only "where medically necessary" *See, e.g.*, Cal. Code Regs. tit. 28, § 1300.67.

20    6.    Although Defendants knew that employers like Skyline Church have sincerely

21  held religious beliefs against paying for or facilitating abortions, Defendants nevertheless

22  required that any group health insurance plan sold to them cover abortions, including

23  voluntary and elective ones.

24    7.    Thus, by issuing the Mandate, Defendants caused Skyline Church's group health

25  plan to include coverage for voluntary and elective abortions without its knowledge and in

26  violation of its religious beliefs.

27  / / /

28  / / /

<hr>

                                          1
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND NOMINAL DAMAGES

8.      Although the Mandate implemented a new interpretation of "basic health care services," and unilaterally changed the insurance contracts of Skyline Church and other religious employers, Defendants promulgated the Mandate without any public notice or comment.

9.      Skyline Church now seeks declaratory and injunctive relief and an award of nominal damages from the Court to remedy this bureaucratic overreach and unjustified infringement of its constitutionally protected rights.

## JURISDICTION AND VENUE

10.     This case raises questions under the United States Constitution, specifically the First and Fourteenth Amendments, and under federal law, particularly 42 U.S.C. §§ 1983 and 1988. This case also raises questions under Article I, Sections 4 and 7 of the California Constitution and the California Administrative Procedures Act.

11.     This Court is authorized to grant declaratory relief under section 1060 of the California Code of Civil Procedure and section 11350 of the California Government Code.

12.     This Court is authorized to grant injunctive relief under sections 525 and 526 of the California Code of Civil Procedure.

13.     Venue is proper in this Court under sections 393(b) and 401(1) of the California Code of Civil Procedure.

## PARTIES

14.     Plaintiff Skyline Wesleyan Church is a non-profit, Christian church organized exclusively for religious purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code. Skyline Church is located in La Mesa, California.

15.     Skyline Church is a member of the Wesleyan denomination and adheres to the Wesleyan Doctrinal Statement, including the belief that the Holy Bible is the inspired Word of God, infallible and without error.

16.     Skyline Church currently offers health insurance plans to its employees through Sharp Health Plan, with a plan year that begins and ends annually on or about December 1.

///

2

1   Skyline Church started with Sharp Health Plan on December 1, 2014; its previous insurer was

2   Aetna.

3        17.    The California Department of Managed Health Care ("DMHC") is an executive

4   agency of the State of California responsible for enforcing California law and regulations

5   regarding health care service plans. As part of its regulatory responsibilities, the DMHC is

6   charged with ensuring that health plans comply with the Knox-Keene Health Care Service

7   Plan Act of 1975 ("Knox-Keene Act").

8        18.    Defendant Michelle Rouillard is the Director of the DMHC, where she is

9   responsible for the promulgation and enforcement of the Mandate. Defendant Rouillard is

10  sued in her official capacity only.

11                                         **FACTS**

12       19.    Skyline Church holds and actively professes historic and orthodox Christian

13  beliefs on the sanctity of human life, including the belief that each human life is formed by

14  and bears the image of God.

15       20.    Skyline Church believes and teaches that abortion ends a human life.

16       21.    Skyline Church believes and teaches that abortion violates the Bible's command

17  against the intentional destruction of innocent human life.

18       22.    Skyline Church believes and teaches that abortion is inconsistent with the dignity

19  conferred by God on creatures made in His image.

20       23.    Skyline Church believes and teaches that participation in, facilitation of, or

21  payment for an elective or voluntary abortion is a grave sin.

22       24.    Consistent with its religious beliefs, Skyline Church seeks to recognize and

23  preserve the sanctity of human life from conception (fertilization) to natural death.

24       25.    Among other things, Skyline Church supports local medical centers and clinics

25  providing life-affirming counseling and medical services to women facing unexpected

26  pregnancies and offers support groups and Bible studies for women who have had abortions.

27  ///

28  ///

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND NOMINAL DAMAGES

26.     Skyline Church expects its employees to abide by the church's moral and ethical standards, including its religious beliefs and teachings on abortion, in both their work life and private life.

27.     Skyline Church seeks to promote the physical, emotional, and spiritual well-being of its employees and their families and thus offers health insurance to its employees as a benefit of employment.

28.     Skyline Church evaluated various options and determined that purchasing a group health insurance plan was the only affordable way for the church to provide health care coverage consistent with its call to care for its employees and its legal obligation under the Patient Protection and Affordable Care Act ("ACA").

29.     Because of its religious beliefs, however, Skyline Church seeks to offer health insurance coverage to its employees in a way that does not also cause it to pay for abortions.

30.     To that end, Skyline Church previously obtained a group health plan that excluded coverage for voluntary and elective abortions.

31.     Skyline Church subsequently learned that, after the Mandate was issued, its group health plan was amended to include coverage for voluntary and elective abortions

32.     Skyline Church has since consulted with its health insurer about purchasing a group health insurance plan that excludes or limits coverage for abortions.

33.     The insurer informed Skyline Church that it could no longer offer such a plan because the Mandate requires group health insurance plans issued in California to provide coverage for all legal abortions, including voluntary and elective ones.

34.     The Mandate required California insurers to amend their group health plans and remove any limitations placed on abortion coverage, such as excluding coverage for "voluntary" or "elective" abortions or limiting coverage to "therapeutic" or "medically necessary" abortions. *See* **Exhibit 1**.

35.     Defendants based the Mandate on a requirement in the Knox-Keene Act that employer health plans include coverage for "basic health care services."

///

36.     Defendants also cited as authority the California Constitution, the California Reproductive Privacy Act, and "multiple California judicial decisions that have unambiguously established under the California Constitution that every pregnant woman has the fundamental right to choose to either bear a child or have a legal abortion."

37.     Nothing in the Knox-Keene Act, California Constitution, California Reproductive Privacy Act, or California case law requires churches or other religious employers to pay for or otherwise facilitate access to abortions through group health plans purchased for their employees.

38.     The Knox-Keene Act defines "basic health care services" to include physician services; hospital inpatient services and ambulatory care services; diagnostic laboratory and diagnostic and therapeutic radiologic services; home health services; preventive health services; emergency health care services; and hospice care. *See* Cal. Health & Safety Code § 1345(b).

39.     Existing law and regulations further define "basic health care services" to include services only "where medically necessary." *See* Cal. Code Regs. tit. 28, § 1300.67.

40.     Defendants ignored the plain meaning and purpose of the Knox-Keene Act in interpreting "basic health care services" to include elective and voluntary abortions.

41.     Interpreting "basic health care services" to include elective and voluntary abortions is a departure from how the DMHC previously interpreted that term.

42.     Indeed, before issuing the Mandate, the DMHC previously allowed insurers to sell group health plans to employers that excluded coverage for elective and voluntary abortions and placed other limitations on abortion coverage.

43.     Now, the Mandate requires that group health plans cover all legal abortions, regardless of whether churches or religious employers purchased the plans or whether the abortions are medically necessary.

44.     Defendants adopted this new interpretation of "basic health care services" and promulgated the Mandate without any public notice or comment.

/ / /

45.    Defendants instead issued the Mandate through letters sent to private health insurers and by publishing the letters on the DMHC website. *See* **Exhibits 1 and 2.**

46.    The letters demanded that the private health insurers amend their group health plans to ensure that they provide coverage for all legal abortions, including elective and voluntary abortions.

47.    The Mandate does not include an exemption for group health insurance plans purchased by churches or other employers that have religious beliefs against abortion.

48.    Because Defendants simply read the elective abortion requirement into the Knox-Keene Act, they did not give Skyline Church or other interested employers the opportunity to comment on the Mandate before it went into effect.

49.    Defendants' decision to apply the Mandate to plans purchased by churches and other religious employers is fundamentally at odds with how the Knox-Keene Act generally treats religious employers.

50.    For example, the Knox-Keene Act specifically exempts religious employers from being forced to provide coverage for contraceptive methods "that are contrary to [their] religious tenets," stating that a religious employer must be given a health care plan that excludes coverage for contraceptives if requested. Cal. Health & Safety Code § 1367.25(c).

51.    The Knox-Keene Act also exempts religious employers from being compelled to provide health insurance coverage for infertility treatments "in a manner inconsistent with [their] religious and ethical principles." Cal. Health & Safety Code § 1374.55(e).

52.    Thus, the Mandate has created an inconsistent and untenable situation where Skyline Church and other religious employers do not have to provide health insurance coverage for contraceptives and infertility treatments but must pay for voluntary and elective abortions.

53.    Defendants issued the Mandate knowing that many churches and religious employers providing health insurance coverage to their employees hold the same or similar beliefs to Skyline Church.

/ / /

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND NOMINAL DAMAGES

54. Defendants designed the Mandate so that coverage for voluntary and elective abortions would be added into religious employers' group health plans (including Skyline Church's) without their knowledge or authorization.

55. Defendants encouraged the insurers not to notify the employers of this change in coverage, advising the insurers that they could insert the abortion coverage yet "omit any mention of coverage for abortion services in health plan documents." *See* **Exhibit 1**.

56. After learning about the Mandate, Skyline Church contacted its insurer and learned that coverage for voluntary and elective abortions had been injected into its group health plan without its knowledge or approval.

57. Were it not for the Mandate, Skyline Church would and could obtain a group health insurance plan for its employees that excludes or limits coverage for abortions in a way consistent with its religious beliefs.

58. California insurers have previously offered group health insurance plans to religious employers excluding or limiting coverage for abortions and would continue to offer such plans in absence of the Mandate.

59. Before Defendants issued the Mandate, insurers submitted evidence of coverage filings to the DMHC properly notifying Defendants of benefit plan options excluding coverage or limiting coverage for abortions.

60. Defendants approved those filings, allowing insurers to offer the group health plans to employers such as Skyline Church.

61. However, Defendants reversed their earlier decisions and issued the Mandate in response to pressure from abortion advocates who had learned that two Catholic universities in California had decided to eliminate coverage for elective abortions from their health care plans.

62. The Knox-Keene Act's "basic health care services" requirement, as interpreted and implemented through the Mandate, is neither neutral nor generally applicable because it provides for both individualized and general exemptions.

///

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND NOMINAL DAMAGES

63.    For example, the Knox-Keene Act creates a system of individualized exemptions, giving the Director of DMHC—in this case, Defendant Rouillard—the authority to exempt any class of persons or plan contracts from the requirements of the Act and giving her the power to waive any requirement of any rule, including the Mandate. *See* Cal. Health & Safety Code §§ 1343(b) and 1344(a).

64.    Defendant Rouillard has exercised this broad authority and granted at least one individualized exemption to the Mandate.

65.    On information and belief, the individualized exemption granted by Defendant Rouillard accommodates only government-approved religious beliefs on abortion.

66.    On information and belief, Defendant Rouillard has approved a group health plan for religious employers that limits abortion coverage to the cases of rape, incest, and to save the life of the mother.

67.    Defendants have made no allowance for the religious freedom of religious employers and churches, such as Skyline Church, who object to paying for or providing insurance coverage for elective or voluntary abortions under any circumstance.

68.    In addition to giving Defendant Rouillard broad power to grant individualized exemptions, the Knox-Keene Act (and by extension the Mandate) exempts from its requirements certain specified health care service plans, including but not limited to plans "directly operated by a bona fide public or private institution of higher learning." *See* Cal. Health & Safety Code §§ 1343(e)

69.    The Mandate also did not apply to every health benefit plan offered by the California Public Employees' Retirement System (CalPERS).

70.    CalPERS, which purchases health benefits for the State of California and covers over 1.4 million active and retired state, local government, and school employees and their family members, continued to offer health plans excluding or limiting coverage for elective abortions after Defendants issued the Mandate.

/ / /

/ / /

8

71.    Nor does the Mandate apply to certain multi-state health plans sold on California's individual and small business exchanges established as part of the Patient Protection and Affordable Care Act ("ACA").

72.    Skyline Church was not eligible to purchase group health plans on California's small business exchange.

73.    Even if it were eligible, Skyline Church could still be forced to pay for abortions in violation of its religious beliefs because California's small business exchange does not allow an employer to limit its employees' health plan options to a specific multi-state plan excluding abortion coverage.

74.    Given the number of Skyline Church's full-time employees, the ACA requires Skyline Church to provide health insurance coverage to its employees.

75.    Moreover, the ACA imposes crippling monetary penalties on employers that do not provide health insurance to their employees.

76.    The Mandate thus forces Skyline Church to choose between violating federal law and violating its deeply held religious beliefs by paying for abortion coverage.

77.    Defendants unnecessarily designed the Mandate to make it impossible for Skyline Church to comply with its religious beliefs.

78.    Skyline Church relies on tithes and donations from members to fulfill its Christian mission.

79.    On information and belief, members who give to Skyline Church do so with an understanding of Skyline Church's Christian mission and with the assurance that Skyline Church will continue to adhere to and transmit authentic Christian teachings on morality and the sanctity of human life.

80.    Skyline Church cannot use donated funds for purposes known to be morally repugnant to its members and in ways that violate the implicit trust of the purpose of their tithes and donations.

///

///

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND NOMINAL DAMAGES

81.    The Mandate imposes a burden on Skyline Church's ability to recruit and retain employees and places Skyline Church in a competitive disadvantage by creating uncertainty as to whether it will be able to offer group health insurance in the future.

82.    Skyline Church has already devoted significant institutional resources, including both staff time and funds, to determining how to respond to the Mandate.

83.    Skyline Church, along with other California churches, filed an administrative complaint with the U.S. Department of Health and Human Services Office of Civil Rights in October 2014, asking it to enforce the Hyde-Weldon Amendment and vindicate their constitutional rights. *See* **Exhibit 3.**

84.    The administrative complaint explained that the Mandate constitutes unlawful discrimination against a health care entity under section 507 of the Consolidated Appropriations Act, Pub. L. No. 113-76, 128 Stat. 5 (Jan. 17, 2014) (the Hyde-Weldon Amendment).

85.    The Hyde-Weldon Amendment prohibits states that receive funding under the federal Labor, Health and Human Services, and Education Appropriations Act, from discriminating against health care plans based on whether they cover abortion.

86.    Under the Hyde-Weldon Amendment, none of the funds received for programs under the Labor, Health and Human Services, and Education Appropriations Act may be available to a State that "subjects any individual or institutional health care entity to discrimination on the basis that the health care entity does not provide for, pay for, provide coverage of, or refer for abortions."

87.    The Hyde-Weldon Amendment defines "health care entity" to include "a health insurance plan."

88.    On information and belief, the State of California receives approximately $70 billion annually in federal funds for programs under the Labor, Health and Human Services, and Education Appropriations Act.

/ / /

/ / /

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND NOMINAL DAMAGES

89.    California accepted these federal funds with full knowledge of the requirements of the Hyde-Weldon Amendment.

90.    Defendants chose to ignore the Hyde-Weldon Amendment when issuing the Mandate.

91.    Skyline Church has sent several follow up letters to the U.S. Department of Health and Human Services Office of Civil Rights, asking it to act quickly given the ongoing violation of Skyline Church's constitutional rights. *See* **Exhibits 4, 5, and 6.**

92.    To date, the U.S. Department of Health and Human Services Office of Civil Rights has failed to take any action, leading Skyline Church to file this lawsuit.

93.    Without injunctive and declaratory relief as requested herein, Skyline Church is suffering and will continue to suffer irreparable harm.

## FIRST CAUSE OF ACTION
### Violation of the Free Exercise Clause of the
### First Amendment to the United States Constitution

94.    Skyline Church realleges all matters set forth in paragraphs 1-93 and incorporates them herein.

95.    Skyline Church's sincerely held religious beliefs prohibit it from providing coverage for voluntary or elective abortions or contracting for a group health insurance plan that covers voluntary or elective abortions.

96.    Skyline Church has a sincere religious objection to providing coverage for abortions because it believes that abortion ends an innocent human life.

97.    When Skyline Church complies with its sincerely held religious beliefs on the sanctity of human life, it exercises religion within the meaning of the Free Exercise Clause.

98.    The Mandate imposes a substantial burden on Skyline Church's religious exercise and coerces it to change or violate its religious beliefs.

99.    Defendants substantially burden Skyline Church's religious exercise when they force Skyline Church to choose between following its religious beliefs and suffering debilitating penalties under federal law or violating its conscience in order to avoid those penalties.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND NOMINAL DAMAGES

100. The Mandate is neither neutral nor generally applicable.

101. The Knox-Keene Act creates categorical and individualized exemptions to its requirements and, by extension, the Mandate.

102. Defendant Rouillard has broad, unilateral power to grant individualized exemptions to the Mandate and has granted at least one since it was issued.

103. The Mandate does not apply to certain specified health care service plans, including but not limited to plans "directly operated by a bona fide public or private institution of higher learning."

104. The Mandate does not apply to multi-state plans sold and purchased pursuant to the ACA.

105. The Mandate also was not applied to certain health benefit plans offered by CalPERS to active and retired state and local government employees.

106. The Mandate furthers no compelling governmental interest.

107. California already exempts religious employers like Skyline Church from being forced to include coverage for contraceptives and infertility treatments in their group health plans.

108. Guaranteeing unfettered access to elective and voluntary abortions through employee health insurance plans is not a significant social problem.

109. Compelling Skyline Church and other churches to pay for elective and voluntary abortions is hardly the least restrictive means of advancing any interest that the government might have.

110. The Mandate constitutes government-imposed coercion on Skyline Church to change or violate its sincerely held religious beliefs.

111. The Mandate chills Skyline Church's religious exercise.

112. The Mandate exposes Skyline Church to substantial monetary penalties and/or financial burdens for its religious exercise.

113. The Mandate exposes Skyline Church to substantial competitive disadvantages because of uncertainties about its health insurance benefits caused by the Mandate.

114.     The Mandate imposes a burden on Skyline Church's employee recruitment efforts by creating uncertainty as to whether or on what terms it will be able to offer health insurance or will suffer penalties therefrom.

115.     If Skyline Church drops health insurance to avoid application of the Mandate, it will be in violation of federal law and will experience a competitive disadvantage in its efforts to recruit and retain employees.

116.     Defendants designed the Mandate to make it impossible for Skyline Church to comply with its religious beliefs.

117.     Defendants issued the Mandate to suppress the religious exercise of Skyline Church and other similarly situated churches and religious employers.

118.     Defendants' implementation and enforcement of the Mandate violates the Free Exercise Clause of the First Amendment of the United States Constitution, as applied to Skyline Church.

### SECOND CAUSE OF ACTION
**Violation of the Equal Protection Clause of the
Fourteenth Amendment to the United States Constitution**

119.     Skyline Church realleges all matters set forth in paragraphs 1-93 and incorporates them herein.

120.     The Fourteenth Amendment to the United States Constitution guarantees Skyline Church equal protection of the laws, which prohibits Defendants from treating Skyline Church differently than similarly situated persons and businesses.

121.     The government may not treat some employers disparately as compared to similarly situated employers.

122.     The Mandate treats Skyline Church and other religious employers differently than similarly situated persons and businesses by granting categorical and individualized exemptions from the Mandate's requirements to similar entities but denying an exemption to Skyline Church and other religious employers.

123.     Defendants lack a rational or compelling state interest for such disparate treatment of Skyline Church and other religious employers because guaranteeing unfettered access to

13

1   elective and voluntary abortions through employee health insurance plans is not a significant

2   social problem.

3      124.   Defendants' disparate treatment of Skyline Church and other religious employers

4   is not narrowly tailored because compelling Skyline Church and other religious employers to

5   pay for abortions in violation of their religious beliefs is hardly the least restrictive means of

6   advancing any legitimate interest the government may have.

7      125.   Defendants' implementation and enforcement of the Mandate violates the Equal

8   Protection Clause of the Fourteenth Amendment to the United States Constitution, both

9   facially and as applied to Skyline Church.

10                        **THIRD CAUSE OF ACTION**
                   **Violation of the Establishment Clause of the**
11                 **First Amendment to the United States Constitution**

12     126.   Skyline Church realleges all matters set forth in paragraphs 1-93 and incorporates

13   them herein.

14     127.   The Establishment Clause of the First Amendment prohibits the establishment of

15   any religion and/or excessive government entanglement with religion.

16     128.   The Establishment Clause of the First Amendment also prohibits the government

17   from disapproving of or showing hostility toward a particular religion or religion in general.

18     129.   The Mandate discriminates between religions and denominations and exhibits

19   hostility towards certain religious beliefs.

20     130.   In both issuing and implementing the Mandate, Defendants have adopted a

21   particular theological view of what is acceptable moral complicity in provision of abortion

22   and imposed it upon all churches and religious employers who must either conform or incur

23   ruinous fines.

24     131.   Defendants issued the Mandate with full knowledge that some religions and

25   denominations object to participating in, paying for, facilitating, or otherwise supporting

26   abortion, while others do not.

27   ///

28   ///

1    132.    Furthermore, Defendant Rouillard has since granted an exemption to the Mandate,

2    accommodating only those employers who hold government-approved religious beliefs on

3    abortion.

4    133.    No exemption is available to religious employers who, like Skyline Church,

5    believe that paying for any voluntary or elective abortion is sinful.

6    134.    Defendants designed the Mandate to make it impossible for Skyline Church and

7    other religious employers to comply with its religious beliefs.

8    135.    Defendants issued the Mandate to suppress the religious exercise of Skyline

9    Church and other similarly situated churches and religious employers.

10    136.    The Mandate unconstitutionally prefers those religions and denominations that do

11    not have religious objections to abortion or certain types of abortions and exhibits hostility

12    towards those that do by forcing them to pay for abortions in violation of their sincerely held

13    religious beliefs.

14    137.    Defendants' implementation and enforcement of the Mandate violates the

15    Establishment Clause of the First Amendment to the United States Constitution, both facially

16    and as applied to Skyline Church.

17    ## FOURTH CAUSE OF ACTION
### Violation of California Constitution
18    ### Article I, Section 4

19    138.    Skyline Church realleges all matters set forth in paragraphs 1-93 and incorporates

20    them herein.

21    139.    Skyline Church's sincerely held religious beliefs prohibit it from providing

22    coverage for voluntary or elective abortions or contracting for a group health insurance plan

23    that covers voluntary or elective abortions.

24    140.    When Skyline Church complies with its sincerely held religious beliefs on the

25    sanctity of human life, it exercises religion within the meaning of Article 1, Section 4 of the

26    California Constitution.

27    141.    The Mandate imposes a substantial burden on Skyline Church's religious exercise

28    and coerces it to change or violate its religious beliefs about the sanctity of human life.

15

1    142.    Defendants substantially burden Skyline Church's religious exercise when they

2    force Skyline Church to choose between following church teaching on the sanctity of human

3    life and suffering debilitating penalties under federal law or violating church teaching in order

4    to avoid those penalties.

5    143.    The Mandate is neither neutral nor generally applicable.

6    144.    The Knox-Keene Act creates categorical and individualized exemptions to its

7    requirements and, by extension, the Mandate.

8    145.    Defendant Rouillard has broad, unilateral power to grant individualized

9    exemptions to the Mandate and has granted at least one since it was issued.

10    146.    The Mandate does not apply to certain specified health care service plans,

11    including but not limited to plans "directly operated by a bona fide public or private

12    institution of higher learning."

13    147.    The Mandate does not apply to multi-state plans sold and purchased pursuant to

14    the ACA.

15    148.    The Mandate also was not applied to certain health benefit plans offered by

16    CalPERS to active and retired state and local government employees.

17    149.    The Mandate furthers no compelling governmental interest.

18    150.    California already exempts religious employers like Skyline Church from being

19    forced to include coverage for contraceptives and infertility treatments in their group health

20    plans.

21    151.    Guaranteeing unfettered access to elective and voluntary abortions through

22    employee health insurance plans is not a significant social problem and compelling Skyline

23    Church and other churches and religious employers to pay for or otherwise facilitate access to

24    abortions, including voluntary and elective ones, is hardly the least restrictive means of

25    advancing any legitimate interest that the government might have.

26    152.    The Mandate coerces Skyline Church to violate its religious beliefs.

27    153.    The Mandate chills Skyline Church's religious exercise.

28    ///

16

154.    The Mandate exposes Skyline Church to substantial monetary penalties and/or financial burdens for its religious exercise.

155.    The Mandate exposes Skyline Church to substantial competitive disadvantages because of uncertainties about its health insurance benefits caused by the Mandate.

156.    Moreover, the Mandate (and Defendants' subsequent implementation and enforcement of it) unconstitutionally prefers those religions and denominations that do not have religious objections to abortion or certain types of abortions and exhibits hostility towards those that do by forcing them to pay for abortions in violation of their sincerely held religious beliefs.

157.    Defendants issued the Mandate to suppress the religious exercise of Skyline Church and other similarly situated churches and religious employers.

158.    Defendants' implementation and enforcement of the Mandate violates Article I, Section 4 of the California Constitution, both facially and as applied to Skyline Church.

### FIFTH CAUSE OF ACTION
#### Violation of California Constitution
#### Article I, Section 7

159.    Skyline Church realleges all matters set forth in paragraphs 1-93 and incorporates them herein.

160.    Article I, Section 7 of the California Constitution guarantees Skyline Church equal protection of the laws and prohibits Defendants from treating Skyline Church differently than similarly situated persons and businesses.

161.    The government may not treat some employers disparately as compared to similarly situated employers.

162.    The Mandate treats Skyline Church differently than similarly situated persons and businesses by granting categorical and individualized exemptions from the Mandate's requirements to similar entities but denying an exemption to Skyline Church.

163.    Defendants lack a rational or compelling state interest for such disparate treatment of Skyline Church because guaranteeing unfettered access to elective and voluntary abortions through employee health insurance plans is not a significant social problem.

164.    Defendants' disparate treatment of Skyline Church is not narrowly tailored because compelling Skyline Church and other churches and religious employers to pay for abortions is hardly the least restrictive means of advancing any interest that the government might have.

165.    Defendants' implementation and enforcement of the Mandate violates Article I, Section 7 of the California Constitution, both facially and as applied to Skyline Church.

### SIXTH CAUSE OF ACTION
### Violation of California Administrative Procedure Act
### Cal. Gov't Code § 11340, *et seq.*

166.    Skyline Church realleges all matters set forth in paragraphs 1-93 and incorporates them herein.

167.    Defendants are responsible for issuing, utilizing, enforcing, or attempting to enforce the Mandate as a guideline, criterion, bulletin, manual, instruction, order, or standard of general application for the administration of group health plans in California.

168.    The Mandate was intended to apply generally rather than to a specific case.

169.    Defendants have utilized, enforced, and attempted to enforce the Mandate, and the Mandate has affected policy, practice, or procedure within the DMHC.

170.    Defendants issued the Mandate without following the necessary steps for promulgating a regulation as required by the California Administrative Procedure Act, Gov't Code § 11340, et. seq.

171.    Defendants failed to initiate a formal rulemaking process, failed to provide any opportunity for notice and comment, and never filed the Mandate nor any related rulemaking action with the Office of Administrative Law.

172.    The Mandate is therefore an invalid underground regulation in that it applies generally and implements, interprets, or makes specific the law enforced or administered by Defendants or governs the procedure of Defendants.

173.    Defendants did not follow statutory standards and failed to consider the constitutional and statutory implications of the Mandate.

///

18

174.    The Mandate fails to protect the statutory and constitutional conscience rights of religious employers and churches like Skyline Church.

175.    The Mandate violates the United States and California Constitutions.

176.    The Mandate requires that Skyline Church provide health insurance coverage for abortions in a manner that is contrary to law.

177.    The Mandate also conflicts with governing statutes and is not reasonably necessary to effectuate the purpose of governing statutes. Thus, Defendants' decision to issue the Mandate is unreasonable, arbitrary and capricious, and beyond their statutory authority.

178.    The Mandate is also contrary to the provisions of the federal Hyde-Weldon Amendment, which prohibits California agencies from discriminating against health insurance plans that "do[ ] not provide, pay for, provide coverage of, or refer abortions."

179.    The Mandate is contrary to existing law and regulations and is in violation of the California Administrative Procedures Act.

**PRAYER FOR RELIEF**

WHEREFORE, Skyline Church respectfully requests that the Court enter judgment in its favor:

a.    Declaring that the Mandate and its application to Skyline Church and others not before the Court violates the First and Fourteenth Amendments to the United States Constitution and Article I, Sections 4 and 7 of the California Constitution.

b.    Declaring that the Mandate violates the California Administrative Procedures Act and constitutes an invalid regulation, which may not be implemented, utilized, or enforced by Defendants;

c.    Permanently enjoining Defendants from enforcing the Mandate against Skyline Church, its group health insurer, and others not before the Court, and prohibiting Defendants from illegally discriminating against Skyline Church and others not before the Court by preventing them from purchasing a group health insurance plan that excludes or limits coverage for abortion consistent with their sincerely held religious beliefs;

///

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND NOMINAL DAMAGES

d.    Awarding Skyline Church nominal damages for violation of its constitutional rights;

e.    Awarding Skyline Church court costs and reasonable attorneys' fees under 42 U.S.C. § 1988, California Code of Civil Procedure § 1021.5, and any other applicable statute;

f.    Awarding such other and further relief as the Court finds just and proper.

Respectfully submitted,

Dated: February 4, 2016

Charles S. LiMandri (California Bar No. 110841)
Freedom of Conscience Defense Fund
P.O. Box 9520
Rancho Santa Fe, CA 92067
(858) 759-9948
cslimandri@ConscienceDefense.org

David J. Hacker (California Bar No. 249272)
ALLIANCE DEFENDING FREEDOM
101 Parkshore Drive, Suite 100
Folsom, CA 95630
(916) 923-2850
dhacker@ADFlegal.org

Kevin Theriot (Arizona Bar No. 030446)*
Erik Stanley (Arizona Bar No. 030961)*
Jeremiah Galus (Arizona Bar No. 030469)*
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
ktheriot@ADFlegal.org
estanley@ADFlegal.org
jgalus@ADFlegal.org

Casey Mattox (Virginia Bar No. 47148)*
ALLIANCE DEFENDING FREEDOM
440 First Street, NW, Suite 600
Washington, DC 20001
(202) 393-8690
cmattox@ADFlegal.org

*Pro hac vice application forthcoming

ATTORNEYS FOR PLAINTIFF

20

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND NOMINAL DAMAGES

# EXHIBIT 1



Edmund G. Brown Jr., Governor
State of California
Health and Human Services Agency

**Department of Managed Health Care**
980 9th Street, Suite 500
Sacramento, CA 95814-2725
Phone: (916) 324-8176
Fax: (916) 255-5241

August 22, 2014

**VIA ELECTRONIC MAIL & U.S. MAIL**

John Ternan
President of Aetna Health of California, Inc.
Aetna Health of California, Inc.
2625 Shadelands Drive
Walnut Creek, CA 94898

Re: Limitations or Exclusions of Abortion Services

Dear Mr. Ternan:

It has come to the attention of the Department of Managed Health Care (DMHC) that some Aetna Health of California, Inc. (Aetna) contracts contain language that may discriminate against women by limiting or excluding coverage for termination of pregnancies. The DMHC has reviewed the relevant legal authorities and has concluded that it erroneously approved or did not object to such discriminatory language in some evidence of coverage (EOC) filings. The DMHC has performed a survey and has discovered that such language is present in EOCs for products covering a very small fraction of California health plan enrollees.

The purpose of this letter is to remind plans that the Knox-Keene Health Care Service Plan Act of 1975[1] (Knox Keene Act) requires the provision of basic health care services and the California Constitution prohibits health plans from discriminating against women who choose to terminate a pregnancy. Thus, all health plans must treat maternity services and legal abortion neutrally.

Exclusions and limitations are also incompatible with both the California Reproductive Privacy Act and multiple California judicial decisions that have unambiguously established under the California Constitution that every pregnant woman has the fundamental right to choose to either bear a child or to have a legal abortion.[2,3]  A health plan is not required to cover abortions that would be unlawful under Health & Safety Code § 123468.

---

[1] Health & Safety Code § 1340, et seq.
[2] Consistent with 42 U.S.C. § 18054(a)(6), this letter shall not apply to a Multi-State Plan.
[3] Although health plans are required to cover legal abortions, no individual health care provider, religiously sponsored health carrier, or health care facility may be required by law or contract in any circumstance to participate in the provision of or payment for a specific service if they object to doing so for reason of conscience or religion. No person may be discriminated against in employment or professional privileges because of such objections.

Mr. John Ternan

August 22, 2014
Page 2

Regardless of existing EOC language, effective as of the date of this letter, Aetna must comply with California law with respect to the coverage of legal abortions.

**Required Action**

1.  Aetna must review all current health plan documents to ensure that they are compliant with the Knox-Keene Act with regard to legal abortion. This includes plan documents previously approved or not objected to by the DMHC.

    In regards to coverage for abortion services, the descriptors cited below are inconsistent with the Knox-Keene Act and the California Constitution. Aetna must amend current health plan documents to remove discriminatory coverage exclusions and limitations. These limitations or exclusions include, but are not limited to, any exclusion of coverage for "voluntary" or "elective" abortions and/or any limitation of coverage to only "therapeutic" or "medically necessary" abortions. Aetna may, consistent with the law, omit any mention of coverage for abortion services in health plan documents, as abortion is a basic health care service.

2.  To demonstrate compliance, health plans are directed to file any revised relevant health plan documents (e.g. EOCs, subscriber documents, etc.) with the Department as an Amendment to the health plan's license within 90 days of the date of this letter. The filing should highlight as well as underline the changes to the text as required by the California Code of Regulations, title 28, §1300.52(d).

**Authority Cited**

California Constitution, article 1, section 1; Health and Safety Code §1340, et seq. and Health and Safety Code §123460 et seq., and implementing regulations.

If you have any questions concerning the guidance issued in this letter, please contact your Plan's Office of Plan Licensing reviewer.

Sincerely,

*Michelle Rouillard*

MICHELLE ROUILLARD
Director
Department of Managed Health Care

cc: Mary V. Anderson, Western Region General Counsel, Aetna Health of California, Inc.



Edmund G. Brown Jr., Governor
State of California
Health and Human Services Agency

**Department of Managed Health Care**
980 9th Street, Suite 500
Sacramento, CA 95814-2725
Phone: (916) 324-8176
Fax: (916) 255-5241

August 22, 2014

**VIA ELECTRONIC MAIL & U.S. MAIL**

Mark Morgan
California President of Anthem Blue Cross
Blue Cross of California, dba Anthem Blue Cross
21555 Oxnard Street
Woodland Hills, CA 91367

Re: Limitations or Exclusions of Abortion Services

Dear Mr. Morgan:

It has come to the attention of the Department of Managed Health Care (DMHC) that some Blue Cross of California (Blue Cross) contracts contain language that may discriminate against women by limiting or excluding coverage for termination of pregnancies. The DMHC has reviewed the relevant legal authorities and has concluded that it erroneously approved or did not object to such discriminatory language in some evidence of coverage (EOC) filings. The DMHC has performed a survey and has discovered that such language is present in EOCs for products covering a very small fraction of California health plan enrollees.

The purpose of this letter is to remind plans that the Knox-Keene Health Care Service Plan Act of 1975[1] (Knox Keene Act) requires the provision of basic health care services and the California Constitution prohibits health plans from discriminating against women who choose to terminate a pregnancy. Thus, all health plans must treat maternity services and legal abortion neutrally.

Exclusions and limitations are also incompatible with both the California Reproductive Privacy Act and multiple California judicial decisions that have unambiguously established under the California Constitution that every pregnant woman has the fundamental right to choose to either bear a child or to have a legal abortion.[2,3] A health plan is not required to cover abortions that would be unlawful under Health & Safety Code § 123468.

---

[1] Health & Safety Code § 1340, et seq.
[2] Consistent with 42 U.S.C. § 18054(a)(6), this letter shall not apply to a Multi-State Plan.
[3] Although health plans are required to cover legal abortions, no individual health care provider, religiously sponsored health carrier, or health care facility may be required by law or contract in any circumstance to participate in the provision of or payment for a specific service if they object to doing so for reason of conscience or religion. No person may be discriminated against in employment or professional privileges because of such objections.

Mr. Mark Morgan

August 22, 2014
Page 2

Regardless of existing EOC language, effective as of the date of this letter, Blue Cross must comply with California law with respect to the coverage of legal abortions.

**Required Action**

1.  Blue Cross must review all current health plan documents to ensure that they are compliant with the Knox-Keene Act with regard to legal abortion. This includes plan documents previously approved or not objected to by the DMHC.

    In regards to coverage for abortion services, the descriptors cited below are inconsistent with the Knox-Keene Act and the California Constitution. Blue Cross must amend current health plan documents to remove discriminatory coverage exclusions and limitations. These limitations or exclusions include, but are not limited to, any exclusion of coverage for "voluntary" or "elective" abortions and/or any limitation of coverage to only "therapeutic" or "medically necessary" abortions. Blue Cross may, consistent with the law, omit any mention of coverage for abortion services in health plan documents, as abortion is a basic health care service.

2.  To demonstrate compliance, health plans are directed to file any revised relevant health plan documents (e.g. EOCs, subscriber documents, etc.) with the Department as an Amendment to the health plan's license within 90 days of the date of this letter. The filing should highlight as well as underline the changes to the text as required by the California Code of Regulations, title 28, §1300.52(d).

**Authority Cited**

California Constitution, article 1, section 1; Health and Safety Code §1340, et seq. and Health and Safety Code §123460 et seq., and implementing regulations.

If you have any questions concerning the guidance issued in this letter, please contact your Plan's Office of Plan Licensing reviewer.

Sincerely,

*Michelle Rouillard*

MICHELLE ROUILLARD
Director
Department of Managed Health Care

cc: Terry German, Associate General Counsel, Blue Cross of California



DEPARTMENT OF
**Managed**
**Health  re**

Edmund G. Brown Jr., Governor
State of California
Health and Human Services Agency

**Department of Managed Health Care**
980 9th Street, Suite 500
Sacramento, CA 95814-2725
Phone: (916) 324-8176
Fax: (916) 255-5241

August 22, 2014

**VIA ELECTRONIC MAIL & U.S. MAIL**

Paul Markovich
President and Chief Executive Officer
California Physicians' Service, dba Blue Shield of California
50 Beale Street
San Francisco, CA 94105

Re: Limitations or Exclusions of Abortion Services

Dear Mr. Markovich:

It has come to the attention of the Department of Managed Health Care (DMHC) that some California Physicians' Service, dba Blue Shield of California (Blue Shield) contracts contain language that may discriminate against women by limiting or excluding coverage for termination of pregnancies. The DMHC has reviewed the relevant legal authorities and has concluded that it erroneously approved or did not object to such discriminatory language in some evidence of coverage (EOC) filings. The DMHC has performed a survey and has discovered that such language is present in EOCs for products covering a very small fraction of California health plan enrollees.

The purpose of this letter is to remind plans that the Knox-Keene Health Care Service Plan Act of 1975[1] (Knox Keene Act) requires the provision of basic health care services and the California Constitution prohibits health plans from discriminating against women who choose to terminate a pregnancy. Thus, all health plans must treat maternity services and legal abortion neutrally.

Exclusions and limitations are also incompatible with both the California Reproductive Privacy Act and multiple California judicial decisions that have unambiguously established under the California Constitution that every pregnant woman has the fundamental right to choose to either bear a child or to have a legal abortion.[2,3]  A health plan is not required to cover abortions that would be unlawful under Health & Safety Code § 123468.

---

[1] Health & Safety Code § 1340, et seq.
[2] Consistent with 42 U.S.C. § 18054(a)(6), this letter shall not apply to a Multi-State Plan.
[3] Although health plans are required to cover legal abortions, no individual health care provider, religiously sponsored health carrier, or health care facility may be required by law or contract in any circumstance to participate in the provision of or payment for a specific service if they object to doing so for reason of conscience or religion. No person may be discriminated against in employment or professional privileges because of such objections.

Mr. Paul Markovich

August 22, 2014
Page 2

Regardless of existing EOC language, effective as of the date of this letter, Blue Shield must comply with California law with respect to the coverage of legal abortions.

**Required Action**

1.  Blue Shield must review all current health plan documents to ensure that they are compliant with the Knox-Keene Act with regard to legal abortion. This includes plan documents previously approved or not objected to by the DMHC.

    In regards to coverage for abortion services, the descriptors cited below are inconsistent with the Knox-Keene Act and the California Constitution. Blue Shield must amend current health plan documents to remove discriminatory coverage exclusions and limitations. These limitations or exclusions include, but are not limited to, any exclusion of coverage for "voluntary" or "elective" abortions and/or any limitation of coverage to only "therapeutic" or "medically necessary" abortions. Blue Shield may, consistent with the law, omit any mention of coverage for abortion services in health plan documents, as abortion is a basic health care service.

2.  To demonstrate compliance, health plans are directed to file any revised relevant health plan documents (e.g. EOCs, subscriber documents, etc.) with the Department as an Amendment to the health plan's license within 90 days of the date of this letter. The filing should highlight as well as underline the changes to the text as required by the California Code of Regulations, title 28, §1300.52(d).

**Authority Cited**

California Constitution, article 1, section 1; Health and Safety Code §1340, et seq. and Health and Safety Code §123460 et seq., and implementing regulations.

If you have any questions concerning the guidance issued in this letter, please contact your Plan's Office of Plan Licensing reviewer.

Sincerely,

*Michelle Rouillard*

MICHELLE ROUILLARD
Director
Department of Managed Health Care

cc: Kathleen Lynaugh, Associate General Counsel, California Physicians' Service, dba Blue Shield of California



Edmund G. Brown Jr., Governor
State of California
Health and Human Services Agency

Department of Managed Health Care
980 9th Street, Suite 500
Sacramento, CA 95814-2725
Phone: (916) 324-8176
Fax: (916) 255-5241

August 22, 2014

**VIA ELECTRONIC MAIL & U.S. MAIL**

Michael Myers
Chief Executive Officer
GEMCare Health Plan, Inc., dba ERD, Inc., Physicians Choice by GEMCare Health Plan
4550 California Avenue, Suite 100
Bakersfield, CA 93309

Re: Limitations or Exclusions of Abortion Services

Dear Mr. Myers:

It has come to the attention of the Department of Managed Health Care (DMHC) that some GEMCare Health Plan, Inc., dba ERD, Inc., Physicians Choice by GEMCare Health Plan (GEMCare) contracts contain language that may discriminate against women by limiting or excluding coverage for termination of pregnancies. The DMHC has reviewed the relevant legal authorities and has concluded that it erroneously approved or did not object to such discriminatory language in some evidence of coverage (EOC) filings. The DMHC has performed a survey and has discovered that such language is present in EOCs for products covering a very small fraction of California health plan enrollees.

The purpose of this letter is to remind plans that the Knox-Keene Health Care Service Plan Act of 1975[1] (Knox Keene Act) requires the provision of basic health care services and the California Constitution prohibits health plans from discriminating against women who choose to terminate a pregnancy. Thus, all health plans must treat maternity services and legal abortion neutrally.

Exclusions and limitations are also incompatible with both the California Reproductive Privacy Act and multiple California judicial decisions that have unambiguously established under the California Constitution that every pregnant woman has the fundamental right to choose to either bear a child or to have a legal abortion.[2,3] A health plan is not required to cover abortions that would be unlawful under Health & Safety Code § 123468.

---

[1] Health & Safety Code § 1340, et seq.
[2] Consistent with 42 U.S.C. § 18054(a)(6), this letter shall not apply to a Multi-State Plan.
[3] Although health plans are required to cover legal abortions, no individual health care provider, religiously sponsored health carrier, or health care facility may be required by law or contract in any circumstance to participate in the provision of or payment for a specific service if they object to doing so for reason of conscience or religion. No person may be discriminated against in employment or professional privileges because of such objections.

Mr. Michael Myers

August 22, 2014
Page 2

Regardless of existing EOC language, effective as of the date of this letter, GEMCare must comply with California law with respect to the coverage of legal abortions.

**Required Action**

1. GEMCare must review all current health plan documents to ensure that they are compliant with the Knox-Keene Act with regard to legal abortion. This includes plan documents previously approved or not objected to by the DMHC.

   In regards to coverage for abortion services, the descriptors cited below are inconsistent with the Knox-Keene Act and the California Constitution. GEMCare must amend current health plan documents to remove discriminatory coverage exclusions and limitations. These limitations or exclusions include, but are not limited to, any exclusion of coverage for "voluntary" or "elective" abortions and/or any limitation of coverage to only "therapeutic" or "medically necessary" abortions. GEMCare may, consistent with the law, omit any mention of coverage for abortion services in health plan documents, as abortion is a basic health care service.

2. To demonstrate compliance, health plans are directed to file any revised relevant health plan documents (e.g. EOCs, subscriber documents, etc.) with the Department as an Amendment to the health plan's license within 90 days of the date of this letter. The filing should highlight as well as underline the changes to the text as required by the California Code of Regulations, title 28, §1300.52(d).

**Authority Cited**

California Constitution, article 1, section 1; Health and Safety Code §1340, et seq. and Health and Safety Code §123460 et seq., and implementing regulations.

If you have any questions concerning the guidance issued in this letter, please contact your Plan's Office of Plan Licensing reviewer.

Sincerely,

MICHELLE ROUILLARD
Director
Department of Managed Health Care



DEPARTMENT OF
**Managed**
# Health Care

Edmund G. Brown Jr., Governor
State of California
Health and Human Services Agency

Department of Managed Health Care
980 9th Street, Suite 500
Sacramento, CA  95814-2725
Phone: (916) 324-8176
Fax: (916) 255-5241

August 22, 2014

**VIA ELECTRONIC MAIL & U.S. MAIL**

Steven Sell
President, Western Region Health Plan and President, Health Net of California, Inc.
Health Net of California, Inc.
21281 Burbank Blvd.
Woodland Hills, CA 91367

Re: Limitations or Exclusions of Abortion Services

Dear Mr. Sell:

It has come to the attention of the Department of Managed Health Care (DMHC) that some Health Net of California, Inc. (Health Net) contracts contain language that may discriminate against women by limiting or excluding coverage for termination of pregnancies. The DMHC has reviewed the relevant legal authorities and has concluded that it erroneously approved or did not object to such discriminatory language in some evidence of coverage (EOC) filings. The DMHC has performed a survey and has discovered that such language is present in EOCs for products covering a very small fraction of California health plan enrollees.

The purpose of this letter is to remind plans that the Knox-Keene Health Care Service Plan Act of 1975[1] (Knox Keene Act) requires the provision of basic health care services and the California Constitution prohibits health plans from discriminating against women who choose to terminate a pregnancy. Thus, all health plans must treat maternity services and legal abortion neutrally.

Exclusions and limitations are also incompatible with both the California Reproductive Privacy Act and multiple California judicial decisions that have unambiguously established under the California Constitution that every pregnant woman has the fundamental right to choose to either bear a child or to have a legal abortion.[2,3]  A health plan is not required to cover abortions that would be unlawful under Health & Safety Code § 123468.

---

[1] Health & Safety Code § 1340, et seq.
[2] Consistent with 42 U.S.C. § 18054(a)(6), this letter shall not apply to a Multi-State Plan.
[3] Although health plans are required to cover legal abortions, no individual health care provider, religiously sponsored health carrier, or health care facility may be required by law or contract in any circumstance to participate in the provision of or payment for a specific service if they object to doing so for reason of conscience or religion. No person may be discriminated against in employment or professional privileges because of such objections.

Mr. Steven Sell                                                    August 22, 2014
                                                                   Page 2

Regardless of existing EOC language, effective as of the date of this letter, Health Net must comply with California law with respect to the coverage of legal abortions.

**Required Action**

1. Health Net must review all current health plan documents to ensure that they are compliant with the Knox-Keene Act with regard to legal abortion. This includes plan documents previously approved or not objected to by the DMHC.

   In regards to coverage for abortion services, the descriptors cited below are inconsistent with the Knox-Keene Act and the California Constitution. Health Net must amend current health plan documents to remove discriminatory coverage exclusions and limitations. These limitations or exclusions include, but are not limited to, any exclusion of coverage for "voluntary" or "elective" abortions and/or any limitation of coverage to only "therapeutic" or "medically necessary" abortions. Health Net may, consistent with the law, omit any mention of coverage for abortion services in health plan documents, as abortion is a basic health care service.

2. To demonstrate compliance, health plans are directed to file any revised relevant health plan documents (e.g. EOCs, subscriber documents, etc.) with the Department as an Amendment to the health plan's license within 90 days of the date of this letter. The filing should highlight as well as underline the changes to the text as required by the California Code of Regulations, title 28, §1300.52(d).

**Authority Cited**

California Constitution, article 1, section 1; Health and Safety Code §1340, et seq. and Health and Safety Code §123460 et seq., and implementing regulations.

If you have any questions concerning the guidance issued in this letter, please contact your Plan's Office of Plan Licensing reviewer.


Sincerely,

*Michelle Rouillard*

MICHELLE ROUILLARD
Director
Department of Managed Health Care

cc: Douglas Schur, Vice President, Chief Regulatory Counsel, Health Net of California, Inc.



DEPARTMENT OF
**Managed**
# Health Care

Edmund G. Brown Jr., Governor
State of California
Health and Human Services Agency

**Department of Managed Health Care**
980 9th Street, Suite 500
Sacramento, CA 95814-2725
Phone: (916) 324-8176
Fax: (916) 255-5241

August 22, 2014

**VIA ELECTRONIC MAIL & U.S. MAIL**

Wade J. Overgaard
Senior Vice President, California Health Plan Operations
Kaiser Foundation Health Plan, Inc., dba Kaiser Foundation, Permanente Medical Care Program
1950 Franklin Street, 20th Floor
Oakland, CA 94612

Re: Limitations or Exclusions of Abortion Services

Dear Mr. Overgaard:

It has come to the attention of the Department of Managed Health Care (DMHC) that some
Kaiser Foundation Health Plan, Inc., dba Kaiser Foundation, Permanente Medical Care Program
(Kaiser) contracts contain language that may discriminate against women by limiting or
excluding coverage for termination of pregnancies. The DMHC has reviewed the relevant legal
authorities and has concluded that it erroneously approved or did not object to such
discriminatory language in some evidence of coverage (EOC) filings. The DMHC has performed
a survey and has discovered that such language is present in EOCs for products covering a very
small fraction of California health plan enrollees.

The purpose of this letter is to remind plans that the Knox-Keene Health Care Service Plan Act
of 1975[1] (Knox Keene Act) requires the provision of basic health care services and the California
Constitution prohibits health plans from discriminating against women who choose to terminate
a pregnancy. Thus, all health plans must treat maternity services and legal abortion neutrally.

Exclusions and limitations are also incompatible with both the California Reproductive Privacy
Act and multiple California judicial decisions that have unambiguously established under the
California Constitution that every pregnant woman has the fundamental right to choose to either
bear a child or to have a legal abortion.[2,3]  A health plan is not required to cover abortions that
would be unlawful under Health & Safety Code § 123468.

---

[1] Health & Safety Code § 1340, et seq.
[2] Consistent with 42 U.S.C. § 18054(a)(6), this letter shall not apply to a Multi-State Plan.
[3] Although health plans are required to cover legal abortions, no individual health care provider, religiously
sponsored health carrier, or health care facility may be required by law or contract in any circumstance to participate
in the provision of or payment for a specific service if they object to doing so for reason of conscience or religion.
No person may be discriminated against in employment or professional privileges because of such objections.

Mr. Wade J. Overgaard                                    August 22, 2014
                                                                Page 2

Regardless of existing EOC language, effective as of the date of this letter, Kaiser must comply with California law with respect to the coverage of legal abortions.

**Required Action**

1. Kaiser must review all current health plan documents to ensure that they are compliant with the Knox-Keene Act with regard to legal abortion. This includes plan documents previously approved or not objected to by the DMHC.

   In regards to coverage for abortion services, the descriptors cited below are inconsistent with the Knox-Keene Act and the California Constitution. Kaiser must amend current health plan documents to remove discriminatory coverage exclusions and limitations. These limitations or exclusions include, but are not limited to, any exclusion of coverage for "voluntary" or "elective" abortions and/or any limitation of coverage to only "therapeutic" or "medically necessary" abortions. Kaiser may, consistent with the law, omit any mention of coverage for abortion services in health plan documents, as abortion is a basic health care service.

2. To demonstrate compliance, health plans are directed to file any revised relevant health plan documents (e.g. EOCs, subscriber documents, etc.) with the Department as an Amendment to the health plan's license within 90 days of the date of this letter. The filing should highlight as well as underline the changes to the text as required by the California Code of Regulations, title 28, §1300.52(d).

**Authority Cited**

California Constitution, article 1, section 1; Health and Safety Code §1340, et seq. and Health and Safety Code §123460 et seq., and implementing regulations.

If you have any questions concerning the guidance issued in this letter, please contact the Office of Plan Licensing reviewer.

Sincerely,

*Michelle Rouillard*

MICHELLE ROUILLARD
Director
Department of Managed Health Care

cc: Deborah Espinal, Executive Director of Policy, Kaiser Foundation Health Plan, Inc.



**DEPARTMENT OF Managed HealthCare**

Edmund G. Brown Jr., Governor
State of California
Health and Human Services Agency

**Department of Managed Health Care**
980 9th Street, Suite 500
Sacramento, CA 95814-2725
Phone: (916) 324-8176
Fax: (916) 255-5241

August 22, 2014

**VIA ELECTRONIC MAIL & U.S. MAIL**

Brandon Cuevas
UnitedHealthcare of California, President and CEO
UHC of California
5995 Plaza Drive
Cypress, CA 92630

Re: Limitations or Exclusions of Abortion Services

Dear Mr. Cuevas:

It has come to the attention of the Department of Managed Health Care (DMHC) that some UHC of California (UHC) contracts contain language that may discriminate against women by limiting or excluding coverage for termination of pregnancies. The DMHC has reviewed the relevant legal authorities and has concluded that it erroneously approved or did not object to such discriminatory language in some evidence of coverage (EOC) filings. The DMHC has performed a survey and has discovered that such language is present in EOCs for products covering a very small fraction of California health plan enrollees.

The purpose of this letter is to remind plans that the Knox-Keene Health Care Service Plan Act of 1975[1] (Knox Keene Act) requires the provision of basic health care services and the California Constitution prohibits health plans from discriminating against women who choose to terminate a pregnancy. Thus, all health plans must treat maternity services and legal abortion neutrally.

Exclusions and limitations are also incompatible with both the California Reproductive Privacy Act and multiple California judicial decisions that have unambiguously established under the California Constitution that every pregnant woman has the fundamental right to choose to either bear a child or to have a legal abortion.[2,3]  A health plan is not required to cover abortions that would be unlawful under Health & Safety Code § 123468.

---

[1] Health & Safety Code § 1340, et seq.
[2] Consistent with 42 U.S.C. § 18054(a)(6), this letter shall not apply to a Multi-State Plan.
[3] Although health plans are required to cover legal abortions, no individual health care provider, religiously sponsored health carrier, or health care facility may be required by law or contract in any circumstance to participate in the provision of or payment for a specific service if they object to doing so for reason of conscience or religion. No person may be discriminated against in employment or professional privileges because of such objections.

Mr. Brandon Cuevas

August 22, 2014
Page 2

Regardless of existing EOC language, effective as of the date of this letter, UHC must comply with California law with respect to the coverage of legal abortions.

**Required Action**

1. UHC must review all current health plan documents to ensure that they are compliant with the Knox-Keene Act with regard to legal abortion. This includes plan documents previously approved or not objected to by the DMHC.

   In regards to coverage for abortion services, the descriptors cited below are inconsistent with the Knox-Keene Act and the California Constitution. UHC must amend current health plan documents to remove discriminatory coverage exclusions and limitations. These limitations or exclusions include, but are not limited to, any exclusion of coverage for "voluntary" or "elective" abortions and/or any limitation of coverage to only "therapeutic" or "medically necessary" abortions. UHC may, consistent with the law, omit any mention of coverage for abortion services in health plan documents, as abortion is a basic health care service.

2. To demonstrate compliance, health plans are directed to file any revised relevant health plan documents (e.g. EOCs, subscriber documents, etc.) with the Department as an Amendment to the health plan's license within 90 days of the date of this letter. The filing should highlight as well as underline the changes to the text as required by the California Code of Regulations, title 28, §1300.52(d).

**Authority Cited**

California Constitution, article 1, section 1; Health and Safety Code §1340, et seq. and Health and Safety Code §123460 et seq., and implementing regulations.

If you have any questions concerning the guidance issued in this letter, please contact the Office of Plan Licensing reviewer.

Sincerely,

*Michelle Rouillard*

MICHELLE ROUILLARD
Director
Department of Managed Health Care

cc: Elizabeth Hays, Director, Regulatory Affairs, UHC of California

# EXHIBIT 2

California Department of Managed Health Care - Laws & Regulations - Director's Letters and Opinions

Translate: Select Language | ▼

Accessibility   Contact U

## CA.GOV

HOME | FILE A COMPLAINT | HEALTH CARE IN CALIFORNIA | CONSUMER | RESEARCH | LAWS & REGULATIONS | LICENSING & REPORTING

Home > Laws & Regulations > Director's Letters and Opinions

ABOUT THE DMHC

# Director's Letters and Opinions

SHARE

April 24, 2015 - AB 1962 Guidance

- Cover Letter to AB 1962 Guidance 📄
- Attachment 1 – Reporting Form 📄 - Revised 5/26/15. Please refer to Submit Financial Reports for an excel version of Attachment 1.
- Attachment 2 – Instructions for Reporting Form; and 📄
- Attachment 3 – Guidance 📄

October 31, 2013 - 14 📄 - Adoption of Model Notice Templates implementing AB 792, AB 1180, SBX1 2 and Instructions for Use

- DL 14 Attachment 📄: Model Notice Templates for AB 792, AB 1180, SBX1 2

April 9, 2013 - 12 - K 📄: Gender Nondiscrimination Requirements

February 15, 2013 - 13 - K 📄: Applicability of SB 1088 to Specialized Health Care Service Plans

February 2, 2012 - 8 - K 📄: Revised Guidance Related to Premium Rate Filings

June 30, 2011 - 10 - K 📄: Implementation of AB 2470

May 24, 2011 - 9 - K 📄: Additional Guidance to Implement AB 2244

May 24, 2011 - 8 - K 📄: Guidance Related to Premium Rate Filings

May 12, 2011 - 4 - K 📄: Implementation of AB 2244

May 3, 2011 - 7 - K 📄: Timely Authorization of Provider Requests

April 7, 2011 - 6 - K 📄: Information Security

April 7, 2011 - 5 - K 📄: Care and Treatment for Psychiatric Emergencies

December 2, 2010 - 3 - K 📄: Electronic Rate Filings Under the SERFF System

December 2, 2010 - 2 - K 📄: Notification of Federal Temporary High Risk Program

February 10, 2010 - 1 - K 📄: OB/GYN Participating as a Primary Care Physician

### Draft Director's Letters

No Draft Director's Letters at this time.

### Director's Opinions

- May 2, 2008
  Notice of Decision on Request for Reconsideration 📄

## Laws & Regulations

+ Enforcement Actions
  Administrative Actions and Decisions
  **Director's Letters and Opinions**
  Legislative Reports and Decisions on Rulemaking Petitions
  Mental Health Parity and Addiction Equity Act of 2008 (MHPAEA)
+ Opportunities to Participate

### Need Help with Your Health Plan?

Call the DMHC Help Center

# 1-888-466-2219

or submit an Independent Medical Review/Complaint Form

# Follow Us




Internal Department of Managed Health Care - Laws & Regulations - Director's Actions and Opinions

Petitioner: Salvatore D'Anna

- February 8, 2008
  Director's Opinion No. 08/1 issued February 8, 2008, to XTRACARD
  Corporation, Inc.
  Director's Opinion No. 08/1 🗋

- February 8, 2008
  Director's Opinion No. 08/2 issued February 8, 2008, to DentalPlans.Com
  Director's Opinion No. 08/2 🗋

- December 14, 2005
  Rescission issued December 14, 2005, reinstating Director's Opinion 4614H
  Rescission 🗋
  Director's Opinion 4614H 🗋

- June 2, 2005
  Revised AB1455 Annual and Quarterly Reports (effective 10/1/05)
  Memo 🗋
  Annual Plan Claims Payment and Dispute Resolution Mechanism Report 🗋
  Quarterly Claims Settlement Practices Report 🗋

## 2004

- June 29, 2004
  Plan-to-Plan Contractual Arrangements for the Provision of Mental Health
  Services 🗋

- January 13, 2004
  AB 1455 Advisory 🗋

## Communications from the DMHC

On August 22, 2014 the DMHC issued the letters below to the following plans
regarding limitations or exclusions of abortion services

- Aetna 🗋
- Anthem Blue Cross 🗋
- Blue Shield of California 🗋
- GEMCare 🗋
- Health Net 🗋
- Kaiser 🗋
- United Healthcare 🗋

Independent Medical Review/Complaint Form

DMHC Help Center Brochure 🗋

View All Health Plans

Premium Rate Review

Submit a Provider Complaint

Language Access Complaint 🗋

Language Access Complaint (En español) 🗋

California Department of Managed Health Care · Laws & Regulations · Director's Letters and Opinions

send us an email



Back to Top
Conditions of Use
Privacy Policy
Site Map
Events/Meetings
Accessibility
Contact Us



Governor



Secretary, Health & Human Services Agency



Director, Department of Managed Health Care



# EXHIBIT 3



LIFE: AT THE HEART OF THE LAW

Dana Cody, Esq.
*Executive Director*
Catherine W. Short, Esq.
*Legal Director*
Mary Riley
*Administrative Director*
Allison K. Aranda, Esq.
*Senior Staff Counsel*

**Board of Directors**
John R. Streett, Esq.
*Chairman*
Dana Cody, Esq.
Joanna Galbraith, Esq.
Christian Hon
Royce Hood
Marcella Tyler Ketelhut
David Shaneyfelt, Esq
Terry L. Thompson, Esq.
Colette Wilson, Esq.
Anthony E. Wynne, JD

**Advisory Board**
The Hon. Steve Baldwin
*San Diego, California*
Daniel Cathcart, Esq.
*Los Angeles, California*
Raymond Dennehy, PhD.
*San Francisco, California*
The Rev. Joseph D. Fessio, SJ
*San Francisco, California*
Robert P. George
*Princeton University*
The Hon. Ray Haynes
*Riverside, California*
James Hirsen, Esq.
*Riverside, California*
The Hon. Howard Kaloogian
*Los Angeles, California*
David Llewellyn, Esq.
*Sacramento, California*
Anne J. O'Connor, Esq.
*New Jersey*
Charles E. Rice, Esq.
*South Bend, Indiana*
Ben Stein, Esq.
*West Hollywood, California*
Andrew Zepeda, Esq.
*Beverly Hills, California*

Northern California
(Administration)
P.O. Box 2105
Napa, California 94558
(707) 224-6675

Southern California
P.O. Box 1313
Ojai, California 93024
(805) 640-1940

**www.LLDF.org**

United States Department of Health and Human Services
Office for Civil Rights
Via Email to OCRComplaint@hhs.gov

Complaint for Discrimination in Violation of Federal Conscience Protections

*Contact attorneys for complainants:*

Catherine W. Short
Life Legal Defense Foundation
P.O. Box 2105
Napa, CA 94558
(707) 224-6675
LLDFojai@earthlink.net

Casey Mattox
Matt Bowman
Alliance Defending Freedom
801 G Street NW
Washington, DC 20001
(202) 393-8690
cmattox@alliancedefendingfreedom.org

*Complaint filed on behalf of:*

Foothill Church and Foothill Christian School
Skyline Church
Alpine Christian Fellowship
The Shepherd of the Hills Church
City View Church
Faith Baptist Church
Calvary Chapel Chino Hills

All complainants can be reached through their counsel, identified above.

*Agency and State committing the discrimination:*

California Department of Managed Health Care
State of California
980 9th Street, Ste. 500
Sacramento, CA 95814-2725
(888) 466-2219

*Date and nature of discriminatory acts:*

Complainants are churches and a church-run school for pre-K through eighth grade. The Complainants believe that abortion is a grave moral evil and object to being morally complicit through the provision of insurance coverage for abortion to their employees.

On August 22, 2014, the California Department of Managed Health Care (DMHC) notified all private health care insurers in the state, including those through whom Complainants purchase their employee plan, that all health care plans issued in California must *immediately* cover elective abortions. The insurers were instructed to amend their policies to remove any limitations on health coverage for abortions, such as excluding coverage for "voluntary" or "elective" abortions or limiting coverage to "therapeutic" or "medically necessary" abortions. Therefore DMHC ordered elective abortion coverage into these churches' health insurance plans. Insurers have confirmed to some of the churches that these changes have already been made in their plans over their objections.

DMHC justified this change in policy by interpreting the applicable California law mandating coverage of "basic health care services" to require coverage for all abortions. Because DMHC simply read this abortion coverage requirement into the pre-existing 1975 law, Health & Safety Code section 1340 et seq., there is no exemption for any religious employer, including churches.

Each of the Complainants are nonprofit organizations. These churches are "religious employers" for purposes of California Health & Safety Code section 1367.25 and thus are not required to provide coverage in their employee health plans for any contraceptive methods contrary to its religious tenets. However, because no exemption exists from the DMHC order of August 22, 2014, these churches' staff health insurance plans were changed to include elective abortion coverage without their authorization and over their objections.

This directive of the DMHC constitutes unlawful discrimination against a health care entity under section 507 of the Consolidated Appropriations Act, Pub L. No 113-76, 128 Stat. 5 (Jan. 17, 2014) (the Hyde-Weldon Conscience Protection Amendment). DMHC is "subject[ing] Complainants' "health insurance plan" "to discrimination," by denying its approval of the plan that omitted elective abortions, solely "on the basis that the [plan] does not . . . provide coverage of . . . abortions." DMHC is an arm of the State of California and purports to be interpreting and applying the law of California, a state that receives billions of taxpayer dollars through "funds made available in this Act" in this and recent appropriations. California accepted those funds with full knowledge of the requirements of the Hyde-Weldon Amendment, but it has chosen to ignore this law. *The need to remedy this discrimination is urgent because it is immediately forcing Complainants to offer their employees a health plan that includes elective abortions.*

DMHC's requirement is contrary to California law and DMHC's prior approval of health care plans excluding coverage for elective abortion for Complainants and others. DMHC's novel reading of California law to discriminate against Complainants' plans is also belied by California's history of excluding elective abortion coverage in its own plans for its own state employees. Nothing in California law or the California Constitution requires private health plans to cover abortions.

On August 22, 2014, counsel sent a letter to Shelley Rouillard, the director of the DMHC, pointing out the fact that her interpretation of California law, while not only erroneous in its own right, also violated the Hyde-Weldon Conscience Protection Amendment. On September 8, Ms. Rouillard responded via letter, in which she restated the department's position that California law mandates that health plans cover all legal abortions. She did not address the conflict with the Hyde-Weldon Conscience Protection Amendment other than saying the DMHC had "carefully considered all aspects of state and federal law in reaching its position."

Complainants request that this Office enforce the terms of the Hyde-Weldon Amendment and prevent California from discriminating against them in violation of this federal law. Because DMHC's discrimination is causing immediate injury, resulting in the immediate inclusion of elective abortion coverage by the Complainants in violation of their religious convictions and forcing Complainants to consider cancellation of these plans, we ask that you act urgently.

Date: October 9, 2014

By: _Cathn W Short_____

Catherine W. Short
Legal Director

# EXHIBIT 4



ALLIANCE DEFENDING
FREEDOM
FOR FAITH. FOR JUSTICE.

March 5, 2015

Molly Wlodarczyk
Region IX EOS Office for Civil Rights
U.S. Department of Health and Human Services
90 7th Street, Suite 4-100
San Francisco, CA 94103
Molly.Wlodarczyk@hhs.gov

**Re: CA DMHC Order Requiring Elective Abortion Coverage**

Dear Ms. Wlodarczyk:

Thank you for hosting last week's phone conference. As you know, the DMHC Order is presently in effect and forbids approval of any health insurance plan that excludes any legal abortion as a covered benefit. Our clients object to this Order and, were it lifted, would exclude abortion coverage from their health insurance plans. The DMHC Order is a clear violation of the Weldon Amendment and no additional facts are necessary to confirm or can change that fact. We urge you to immediately enforce the Weldon Amendment.

In September 2014 Kaiser Permanente sent Foothill Church and Foothill Christian School the following, confirming the impact of the DMHC Order:

*KAISER STATEMENT: I want to formally share with you that on August 22, 2014, the Department of Managed Health Care (DMHC) notified Kaiser Permanente and other affected health plans in writing regarding group contracts that exclude "voluntary termination of pregnancy."*

*This letter made clear that the DMHC considered health care services related to the termination of pregnancies – whether or not a voluntary termination – a medically necessary basic health care service for which all health care services plans must provide coverage under the Knox-Keene Health Care Service Plan Act. You may recall that at the request of some employer groups with religious affiliations, Kaiser Permanente submitted a regulatory filing in May 2012 properly notifying the DMHC of a benefit plan option that excluded coverage of voluntary terminations of pregnancies. The DMHC did not object to this filing, permitting Kaiser Permanente to offer such a coverage contract to large group purchasers that requested it. The DMHC acknowledged that it previously permitted these contract exclusions, but now is requiring health care service plans to provide coverage of all terminations of pregnancies, effective immediately. To that end, the DMHC requires Kaiser Permanente and similar*

Ms. Molly Wlodarczyk
March 5, 2015
Page 2

> *health care service plans to initiate steps to modify their plan contracts accordingly.*

> *Effective August 22, Kaiser Permanente will comply with this regulatory mandate.*

Prior to the DMHC Order, Kaiser had agreed to exclude elective abortion coverage from Foothill's health insurance plan. After the DMHC Order Kaiser informed Foothill it would no longer be able to honor this agreement and must include elective abortion coverage in their health insurance plan. We are in communication with other California religious employers, in addition to our clients, that have also received the same notice from Kaiser.

Additionally, as we mentioned on the call we have gathered some documents from the DMHC by means of requests under the California Public Records Act. These documents confirm earlier research indicating the DMHC's long-term de facto discrimination against plans that do not cover abortion. Moreover, an e-mail from DMHC director Shelley Rouillard to the entire staff of the DMHC demonstrated that, far from the DMHC's action being a correction of a prior oversight, as her August 22 letter to the insurance companies suggested, the DMHC's move was in fact the result of an agency-wide project. As you can see in the attached e-mail, Ms. Rouillard thanked the many people in the agency "who contributed to this important action," calling it "truly a team effort." This email confirms that the DMHC Order is not a regulator's neutral application of the law to a complaint within her jurisdiction. Instead, the DMHC Order of August 22 was the culmination of the agency's long-term effort to drive plans excluding abortion coverage out of the market in violation of the Weldon Amendment.

To date, DMHC has refused to release any further documents relating to this "team effort," on the grounds that they are all protected from disclosure by attorney-client privilege or attorney work product protection. Presumably your office will have access to those e-mails and other communications as part of your investigation.

Ultimately this additional information only confirms the DMHC's agenda to violate the Weldon Amendment and the impact this is having on our clients. While we are pleased to provide any additional information that might aid the investigation, the DMHC Order itself is all that is required to demonstrate that California is in violation of the Weldon Amendment. The Order facially violates federal law. We ask that your office promptly enforce the Weldon Amendment and ensure California's compliance with its obligations.

Sincerely,


M. Casey Mattox

# EXHIBIT 5



ALLIANCE DEFENDING
FREEDOM
FOR FAITH FOR JUSTICE

April 13, 2015

Molly Wlodarczyk
Region IX EOS Office for Civil Rights
U.S. Department of Health and Human Services
90 7th Street, Suite 4-100
San Francisco, CA 94103
Molly.Wlodarczyk@hhs.gov

**Re: CA DMHC Order Discriminating Against Plans That Do Not Cover Abortion
(File Nos. 14-193604 and 15-195665)**

Dear Ms. Wlodarczyk:

As you know, the California Department of Managed Health Care issued an order requiring every health plan to include elective abortion coverage on August 22, 2014. This order unquestionably discriminates against plans that do not cover elective abortions in violation of the Weldon Amendment. After unsuccessfully attempting to address the problem directly with the California DMHC, we filed complaints with the HHS Office of Civil Rights on behalf of individuals and churches being forced to fund abortion through their health insurance plans as a result of this illegal order. Your office accepted jurisdiction of the complaints on December 16, 2014. On February 26, my clients and I met with you and your colleagues by phone and answered your questions. I also sent a follow-up letter to you on March 5, once more explaining my clients' position and the need for action.

The DMHC Order is a clear violation of the explicit terms of the Weldon Amendment. DMHC has expressly forbidden any insurance plan from being sold in California if it does not include coverage for elective abortion. As a result of this order, every insurance plan in the state – as a condition of licensure – must cover all abortions. There is no possible construction of this order that does not violate the Weldon Amendment. My clients are currently suffering ongoing injury as a result of this illegal order.

We again ask that you immediately enforce the Weldon Amendment. Please let me know if we can answer any further questions toward that end.

Sincerely,

M. Casey Mattox

cc: Interested parties

# EXHIBIT 6



ALLIANCE DEFENDING
FREEDOM
FOR FAITH FOR JUSTICE

June 5, 2015

Molly Wlodarczyk
Region IX EOS Office for Civil Rights
U.S. Department of Health and Human Services
90 7th Street, Suite 4-100
San Francisco, CA 94103
Molly.Wlodarczyk@hhs.gov

###### Re:  CA DMHC Order Discriminating Against Plans That Do Not Cover Abortion (File Nos. 14-193604 and 15-195665)

Dear Ms. Wlodarczyk:

As you know, on August 22, 2014, the California Department of Managed Health Care issued an order requiring every health plan to include elective abortion coverage. This order unquestionably discriminates against plans that do not cover elective abortions, in violation of the Weldon Amendment. We filed complaints with the HHS Office of Civil Rights on behalf of individuals and churches being forced to fund abortion through their health insurance plans as a result of this illegal order. Your office accepted jurisdiction of the complaints on December 16, 2014. On February 26, my clients and I met with you and your colleagues by phone and answered your questions. I also sent follow-up letters to you on March 5 and April 13, once more explaining my clients' need for prompt action.

As some of my clients' policies would renew on July 1, I must again ask that you promptly enforce the law. The DMHC Order is a clear violation of the explicit terms of the Weldon Amendment. DMHC has expressly forbidden any insurance plan from being sold in California if it does not include coverage for elective abortion. As a result of this order, every insurance plan in the state – as a condition of licensure – must cover all abortions. There is no possible construction of this

order that complies with the Weldon Amendment. Indeed, at a recent hearing on a bill to reverse this order the proponents of the mandate made no such attempt, simply asserting that enforcement of the Weldon Amendment is the responsibility of the federal government. See https://vimeo.com/126539714 (at 25:15).

We again ask that you immediately enforce the Weldon Amendment. Please let me know if we can answer any further questions toward that end.

Sincerely,

M. Casey Mattox

cc: Interested parties

# EXHIBIT D

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

| | |
|---|---|
| STREET ADDRESS: | 330 W Broadway |
| MAILING ADDRESS: | 330 W Broadway |
| CITY AND ZIP CODE: | San Diego, CA 92101-3827 |
| BRANCH NAME: | Central |
| TELEPHONE NUMBER: | (619) 450-7075 |

PLAINTIFF(S) / PETITIONER(S):   SKYLINE WESLEYAN CHURCH

DEFENDANT(S) / RESPONDENT(S):   California Department of Managed Health Care et.al.

SKYLINE WESLEYAN CHURCH VS THERIOT [IMAGED]

| NOTICE OF CASE ASSIGNMENT and CASE MANAGEMENT CONFERENCE | CASE NUMBER: 37-2016-00003936-CU-CR-CTL |
|---|---|

**CASE ASSIGNMENT**

Judge:  Richard E. L. Strauss                    Department: C-75

**COMPLAINT/PETITION FILED:** 02/04/2016

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 08/19/2016 | 10:00 am | C-75 | Richard E. L. Strauss |

A case management statement must be completed by counsel for all parties or self-represented litigants and timely filed with the court at least 15 days prior to the initial case management conference. (San Diego Local Rules, Division II, CRC Rule 3.725).

All counsel of record or parties in pro per shall appear at the Case Management Conference, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of ADR* options.

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT), THE ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION FORM (SDSC FORM #CIV-730), A STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) (SDSC FORM #CIV-359), AND OTHER DOCUMENTS AS SET OUT IN SDSC LOCAL RULE 2.1.5.

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

TIME STANDARDS:  The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time.  General civil cases consist of all civil cases except: small claims proceedings, civil petitions, unlawful detainer proceedings, probate, guardianship, conservatorship, juvenile, parking citation appeals, and family law proceedings.

COMPLAINTS:  Complaints and all other documents listed in SDSC Local Rule 2.1.5 must be served on all named defendants.

DEFENDANT'S APPEARANCE:  Defendant must generally appear within 30 days of service of the complaint.  (Plaintiff may stipulate to no more than 15 day extension which must be in writing and filed with the Court.) (SDSC Local Rule 2.1.6)

JURY FEES:  In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

*ALTERNATIVE DISPUTE RESOLUTION (ADR):  THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO TRIAL, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. PARTIES MAY FILE THE ATTACHED STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (SDSC FORM #CIV-359).

# EXHIBIT E



# Superior Court of California
# County of San Diego

# NOTICE OF ELIGIBILITY TO eFILE
# AND ASSIGNMENT TO IMAGING DEPARTMENT

**This case is eligible for eFiling. Should you prefer to electronically file documents, refer to General Order 051414 at www.sdcourt.ca.gov for rules and procedures or contact the Court's eFiling vendor at www.onelegal.com for information.**

**This case has been assigned to an Imaging Department and original documents attached to pleadings filed with the court will be imaged and destroyed. Original documents should not be filed with pleadings. If necessary, they should be lodged with the court under California Rules of Court, rule 3.1302(b).**

On August 1, 2011 the San Diego Superior Court began the Electronic Filing and Imaging Pilot Program ("Program"). As of August 1, 2011 in all new cases assigned to an Imaging Department all filings will be imaged electronically and the electronic version of the document will be the official court file. The official court file will be electronic and accessible at one of the kiosks located in the Civil Business Office and on the Internet through the court's website.

You should be aware that the electronic copy of the filed document(s) will be the official court record pursuant to Government Code section 68150. The paper filing will be imaged and held for 30 days. After that time it will be destroyed and recycled. **Thus, you should not attach any original documents to pleadings filed with the San Diego Superior Court. Original documents filed with the court will be imaged and destroyed except those documents specified in California Rules of Court, rule 3.1806.** Any original documents necessary for a motion hearing or trial shall be lodged in advance of the hearing pursuant to California Rules of Court, rule 3.1302(b).

It is the duty of each plaintiff, cross-complainant or petitioner to serve a copy of this notice with the complaint, cross-complaint or petition on all parties in the action.

On all pleadings filed after the initial case originating filing, all parties must, to the extent it is feasible to do so, place the words **"IMAGED FILE"** in all caps immediately under the title of the pleading on all subsequent pleadings filed in the action.

# Please refer to the General Order - Imaging located on the San Diego Superior Court website at:

http://www.sdcourt.ca.gov/CivilImagingGeneralOrder

# EXHIBIT F

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION

CASE NUMBER: 37-2016-00003936-CU-CR-CTL    CASE TITLE: Skyline Wesleyan Church vs Theriot [IMAGED]

**NOTICE:** All plaintiffs/cross-complainants in a general civil case are required to serve a copy of the following three forms on each defendant/cross-defendant, together with the complaint/cross-complaint:
    (1) this Alternative Dispute Resolution (ADR) Information form (SDSC form #CIV-730),
    (2) the Stipulation to Use Alternative Dispute Resolution (ADR) form (SDSC form #CIV-359), *and*
    (3) the Notice of Case Assignment form (SDSC form #CIV-721).

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts, community organizations, and private providers offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. The San Diego Superior Court expects that litigants will utilize some form of ADR as a mechanism for case settlement before trial, and it may be beneficial to do this early in the case.

Below is some information about the potential advantages and disadvantages of ADR, the most common types of ADR, and how to find a local ADR program or neutral. A form for agreeing to use ADR is attached (SDSC form #CIV-359).

## Potential Advantages and Disadvantages of ADR
ADR may have a variety of advantages or disadvantages over a trial, depending on the type of ADR process used and the particular case:

| **Potential Advantages** | **Potential Disadvantages** |
|---|---|
| • Saves time | • May take more time and money if ADR does not resolve the dispute |
| • Saves money | |
| • Gives parties more control over the dispute resolution process and outcome | • Procedures to learn about the other side's case (discovery), jury trial, appeal, and other court protections may be limited or unavailable |
| • Preserves or improves relationships | |

## Most Common Types of ADR
You can read more information about these ADR processes and watch videos that demonstrate them on the court's ADR webpage at http://www.sdcourt.ca.gov/adr.

**Mediation:** A neutral person called a "mediator" helps the parties communicate in an effective and constructive manner so they can try to settle their dispute. The mediator does not decide the outcome, but helps the parties to do so. Mediation is usually confidential, and may be particularly useful when parties want or need to have an ongoing relationship, such as in disputes between family members, neighbors, co-workers, or business partners, or when parties want to discuss non-legal concerns or creative resolutions that could not be ordered at a trial.

**Settlement Conference:** A judge or another neutral person called a "settlement officer" helps the parties to understand the strengths and weaknesses of their case and to discuss settlement. The judge or settlement officer does not make a decision in the case but helps the parties to negotiate a settlement. Settlement conferences may be particularly helpful when the parties have very different ideas about the likely outcome of a trial and would like an experienced neutral to help guide them toward a resolution.

**Arbitration:** A neutral person called an "arbitrator" considers arguments and evidence presented by each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are usually relaxed. If the parties agree to binding arbitration, they waive their right to a trial and agree to accept the arbitrator's decision as final. With nonbinding arbitration, any party may reject the arbitrator's decision and request a trial. Arbitration may be appropriate when the parties want another person to decide the outcome of their dispute but would like to avoid the formality, time, and expense of a trial.

**Other ADR Processes:** There are several other types of ADR which are not offered through the court but which may be obtained privately, including neutral evaluation, conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR processes. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute. Be sure to learn about the rules of any ADR program and the qualifications of any neutral you are considering, and about their fees.

<u>Local ADR Programs for Civil Cases</u>

**Mediation:** The San Diego Superior Court maintains a Civil Mediation Panel of approved mediators who have met certain minimum qualifications and have agreed to charge $150 per hour for each of the first two (2) hours of mediation and their regular hourly rate thereafter in court-referred mediations.

<u>On-line mediator search and selection:</u> Go to the court's ADR webpage at www.sdcourt.ca.gov/adr and click on the "Mediator Search" to review individual mediator profiles containing detailed information about each mediator including their dispute resolution training, relevant experience, ADR specialty, education and employment history, mediation style, and fees and to submit an on-line Mediator Selection Form (SDSC form #CIV-005). The Civil Mediation Panel List, the Available Mediator List, individual Mediator Profiles, and Mediator Selection Form (CIV-005) can also be printed from the court's ADR webpage and are available at the Mediation Program Office or Civil Business Office at each court location.

**Settlement Conference:** The judge may order your case to a mandatory settlement conference, or voluntary settlement conferences may be requested from the court if the parties certify that: (1) settlement negotiations between the parties have been pursued, demands and offers have been tendered in good faith, and resolution has failed; (2) a judicially supervised settlement conference presents a substantial opportunity for settlement; and (3) the case has developed to a point where all parties are legally and factually prepared to present the issues for settlement consideration and further discovery for settlement purposes is not required. Refer to SDSC Local Rule <u>2.2.1</u> for more information. To schedule a settlement conference, contact the department to which your case is assigned.

**Arbitration:** The San Diego Superior Court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience. Refer to SDSC Local Rules <u>Division II, Chapter III</u> and Code Civ. Proc. <u>§ 1141.10 et seq</u> or contact the Arbitration Program Office at (619) 450-7300 for more information.

<u>More information about court-connected ADR</u>: Visit the court's ADR webpage at www.sdcourt.ca.gov/adr or contact the court's Mediation/Arbitration Office at (619) 450-7300.

**Dispute Resolution Programs Act (DRPA) funded ADR Programs:** The following community dispute resolution programs are funded under DRPA (Bus. and Prof. Code §§ 465 et seq.):
- In Central, East, and South San Diego County, contact the National Conflict Resolution Center (NCRC) at www.ncrconline.com or (619) 238-2400.
- In North San Diego County, contact North County Lifeline, Inc. at www.nclifeline.org or (760) 726-4900.

**Private ADR:** To find a private ADR program or neutral, search the Internet, your local telephone or business directory, or legal newspaper for dispute resolution, mediation, settlement, or arbitration services.

<u>Legal Representation and Advice</u>

To participate effectively in ADR, it is generally important to understand your legal rights and responsibilities and the likely outcomes if you went to trial. ADR neutrals are not allowed to represent or to give legal advice to the participants in the ADR process. If you do not already have an attorney, the California State Bar or your local County Bar Association can assist you in finding an attorney. Information about obtaining free and low cost legal assistance is also available on the California courts website at *www.courtinfo.ca.gov/selfhelp/lowcost*.

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | FOR COURT USE ONLY |
|---|---|

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

STREET ADDRESS:    330 West Broadway

MAILING ADDRESS:    330 West Broadway

CITY, STATE, & ZIP CODE:  San Diego, CA  92101-3827

BRANCH NAME:    Central

PLAINTIFF(S):   SKYLINE WESLEYAN CHURCH

DEFENDANT(S): California Department of Managed Health Care et.al.

SHORT TITLE:   SKYLINE WESLEYAN CHURCH VS THERIOT [IMAGED]

| STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) | CASE NUMBER:<br>37-2016-00003936-CU-CR-CTL |
|---|---|

Judge: Richard E. L. Strauss               Department: C-75

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution (ADR) process.  Selection of any of these options will not delay any case management timelines.

☐ Mediation (court-connected)          ☐ Non-binding private arbitration

☐ Mediation (private)                ☐ Binding private arbitration

☐ Voluntary settlement conference (private)    ☐ Non-binding judicial arbitration (discovery until 15 days before trial)

☐ Neutral evaluation (private)         ☐ Non-binding judicial arbitration (discovery until 30 days before trial)

☐ Other (specify e.g., private mini-trial, private judge, etc.): _____

_____

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: (Name) _____

_____

Alternate neutral (for court Civil Mediation Program and arbitration only): _____

Date: _____        Date: _____

_____      _____

Name of Plaintiff                     Name of Defendant

_____      _____

Signature                         Signature

_____      _____

Name of Plaintiff's Attorney            Name of Defendant's Attorney

_____      _____

Signature                         Signature

If there are more parties and/or attorneys, please attach additional completed and fully executed sheets.

It is the duty of the parties to notify the court of any settlement pursuant to Cal. Rules of Court, rule 3.1385.  Upon notification of the settlement, the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court.

**IT IS SO ORDERED.**

Dated:  02/05/2016                             _____

                                     JUDGE OF THE SUPERIOR COURT

# CERTIFICATE OF SERVICE

Case Name:     **Skyline Wesleyan Church v. CA DMHC**

I hereby certify that on <u>February 26, 2016</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANTS' NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(a)**

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

I further certify that some of the participants in the case are not registered CM/ECF users. On <u>February 26, 2016</u>, I have caused to be mailed in the Office of the Attorney General's internal mail system, the foregoing document(s) by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within three (3) calendar days to the following non-CM/ECF participants:

Charles S. LiMandri, Esq.
Freedom of Conscience Defense Fund
P.O. Box 9520
Rancho Santa Fe, CA 92067

David J. Hacker, Esq.
Alliance Defending Freedom
101 Parkshore Drive, Suite 100
Folsom, CA 95630

Kevin Theriot Esq.
Erik Stanley Esq.
Jeremiah Galus, Esq.
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260

Casey Mattox, Esq.
Alliance Defending Freedom
440 First Street, NW, Suite 600
Washington, DC 20001

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>February 26, 2016</u>, at San Diego, California.

|  |  |
|---|---|
| J. Dinh<br>Declarant | Signature |

SD2016600637
81279184.doc81279184.doc