UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SKYLINE WESLEYAN CHURCH,

Plaintiff,

v.

CALIFORNIA DEPARTMENT OF
MANAGED HEALTH CARE, et al.,

Defendants.

Case No.: 16-cv-00501-H (DHB)

**ORDER:**

**(1) REGARDING JOINT MOTIONS FOR DETERMINATION OF DISCOVERY DISPUTE (ECF NOS. 47, 55); AND**

**(2) GRANTING MOTION TO FILE DOCUMENTS UNDER SEAL (ECF NO. 56)**

On April 24, 2017, Plaintiff Skyline Wesleyan Church ("Plaintiff") and Defendants California Department of Managed Health Care ("DMHC") and Michelle Rouillard, in her official capacity as Director of the DMHC, (collectively "Defendants"), filed a Joint Motion for Determination of Discovery Dispute. (ECF No. 47.) On May 1, 2017, the Court issued an Order instructing the parties to engage in further meet and confer efforts regarding all issues raised by the pending Joint Motion. (ECF No. 50.) On June 5, 2017, the parties filed an Amended Joint Motion for Determination of Discovery Dispute, narrowing the set of issues raised in the prior motion. (ECF No. 55.) Defendants also filed

a Motion to Seal certain exhibits filed in support of the Amended Joint Motion.  (ECF No. 56.)

Having considered the Amended Joint Motion and the parties' submissions and supporting exhibits, the Court hereby **DENIES** Plaintiff's motion to compel, as outlined below.  The Court further **GRANTS** Defendants' Motion to Seal.

## I.   BACKGROUND

### A.   Complaint

On February 4, 2016, Plaintiff filed a complaint against Defendants for declaratory and injunctive relief and nominal damages in San Diego County Superior Court.  (ECF No. 1 at 9-29 ("Compl.").)   The complaint challenges Defendants' requirement that group health insurance plans provide coverage for all legal abortions.  (*Id*. at ¶ 1.)  On February 26, 2016, Defendants removed the action to this court pursuant to 28 U.S.C. § 1441 on the basis of federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367.  (ECF No. 1 at 1-3.)

In the complaint, Plaintiff alleges Defendant DMHC is an executive agency of the State of California responsible for enforcing California law and regulations regarding health service plans.  (Compl. at ¶ 17.)  As part of its regulatory responsibilities, Defendant DMHC is charged with ensuring that health plans in California comply with the Knox-Keene Health Care Service Plan Act of 1975 ("Knox Keene Act").  (*Id*.)   Defendant Rouillard is the Director of Defendant DMHC.  (*Id*. at ¶ 18.)

On August 22, 2014, Defendants sent letters to group health plans that did not provide coverage for all legal abortions and required that the plans begin offering such coverage.  (*Id*. at ¶¶ 1-2, Exh. 1.)  As authority for imposing this requirement, Defendants cited the Knox Keene Act's provision that health plans must cover "basic health care services."  (*Id*. at ¶ 3, Exh. 1.)  Plaintiff alleges that, prior to announcing the coverage requirement, Defendants had not interpreted the term "basic health care services" to include voluntary and elective abortions.  (*Id*. at ¶ 4.)

2

Plaintiff is an Internal Revenue Code Section 501(c)(3) non-profit, Christian church located in La Mesa, California. (*Id*. at ¶ 14.) Plaintiff alleges that it believes and teaches that participation in, facilitation of, or payment for an elective or voluntary abortion is a grave sin. (*Id*. at ¶ 23.) Plaintiff states that, based on its religious beliefs, it seeks to offer health insurance to its employees in a way that does not cause it to pay for abortions. (*Id*. at ¶ 29.) Plaintiff also alleges that the coverage requirement prevents Plaintiff from obtaining a group health care plan that is consistent with Plaintiff's religious beliefs. (*Id*. at ¶ 7.)

Following Defendants' motion to dismiss, the following claims remain against Defendants: (1) violation of the California Administrative Procedure Act, California Government Code § 11340, *et seq*.; (2) violation of the Free Exercise Clause of the First Amendment of the U.S. Constitution; (3) violation of the Free Exercise Clause of Article I, Section 4 of the California Constitution; (4) violation of the Establishment Clause of the First Amendment of the U.S. Constitution; and (5) violation of the Establishment Clause of Article I, Section 4 of the California Constitution. (ECF No. 28.)

### B. Discovery

On October 28, 2016, Plaintiff issued its first set of requests for production and interrogatories to Defendants. (ECF No. 55-1, Declaration of Jeremiah Galus ("Galus Decl."), at ¶ 3; ECF No. 55-2, Declaration of Karli Eisenberg ("Eisenberg Decl."), at ¶ 2.) On December 28, 2016, Defendants served their written responses to Plaintiff's first set of discovery requests. (Galus Decl. at ¶ 4, Exh. 1.) Defendants objected to certain document requests based on the attorney-client privilege, attorney work product privilege, official information privilege, and deliberative process privilege, but nonetheless agreed to produce responsive, non-privileged documents. (*Id*.)

Defendants initially produced documents on January 11, 2017. (Galus Decl. at ¶ 5.) This production comprised 1,846 documents, including over thirty (30) non-privileged emails to/from Defendants' General Counsel Gabriel Ravel. (Eisenberg Decl. at ¶ 3.) Defendants provided Plaintiff with a privilege log in connection with this production. (*Id*.)

On January 30, 2017, Defendants produced an additional thirteen (13) documents and served their first supplemental responses to Plaintiff's first set of requests for production. (Eisenberg Decl. at ¶ 4; Galus Decl. at ¶ 5, Exh. 2.) The newly produced documents were removed from Defendants' initial privilege log, and Defendants' provided Plaintiff with a First Supplemental Privilege Log. (Galus Decl. at ¶ 6, Exh. 3; Eisenberg Decl. at ¶ 4.) The parties met and conferred about Plaintiff's issues with Defendants' First Supplemental Privilege Log in February 2017. (Galus Decl. at ¶¶ 7-8, Exhs. 4-5; Eisenberg Decl. at ¶¶ 5-11.)

On March 10, 2017, Defendants provided Plaintiff with a Second Amended Privilege Log. (Galus Decl. at ¶ 9; Eisenberg Decl. at ¶ 12.) On the same date, Defendants also served their first supplemental response to Plaintiff's first set of interrogatories. (Galus Decl. at ¶ 10, Exh. 6; Eisenberg Decl. at ¶ 12.) The parties met and conferred about Plaintiff's issues with Defendants' amended privilege log. (Galus Decl. at ¶¶ 11-12, Exh. 7; Eisenberg Decl. at ¶¶ 13-20, Exh. B-F.) Defendants provided Plaintiff with a Third Amended Privilege log on April 12, 2017, as well as forty-eight (48) additional documents. (Galus Decl. at ¶¶ 13-14; Eisenberg Decl. at ¶¶ 21-23, Exh. G.) Included in this production were thirty-eight (38) emails either to/from Defendants' General Counsel Gabriel Ravel. (Eisenberg Decl. at ¶ 23.)

On April 24, 2017, the parties filed a Joint Motion for Determination of Discovery Dispute. (ECF No. 47.) After reviewing the motion, the Court issued an Order noting that "prior meet and confer efforts have been productive" and directing the parties "to engage in further meet and confer efforts about all issues raised by the pending Joint Motion." (ECF No. 50.)

The parties met and conferred by telephone on May 9, 2017 about the privilege log issues raised in the Joint Motion. (Galus Decl. at ¶ 16; Eisenberg Decl. at ¶ 34.) Prior to the call, Plaintiff provided Defendants with a list of 329 documents from Defendants' Third Amended Privilege Log that Plaintiff believes have been improperly withheld. (Galus Decl. at ¶ 17, Exh. 8 ("TAPL"); Eisenberg Decl. at ¶ 32.) During the May 9, 2017 call,

Defendants maintained that all of the documents listed in the Third Amended Privilege Log are privileged and do not have to be produced. (Galus Decl. at ¶ 18.) The parties filed an Amended Joint Motion for Determination of Discovery Dispute related only to these 329 documents on June 5, 2017. (ECF No. 55.)

## C. Defendants' Third Amended Privilege Log

### 1. Attorney-Client Privilege

Defendants assert the attorney-client privilege over 261 of the 329 documents listed in the excerpted Third Amended Privilege Log.[1] Gabriel Ravel, the Deputy Director and General Counsel for Defendant DMHC,[2] was either the sender, recipient, or copied on all of the emails designated as attorney-client privileged. (ECF No. 55-3, Declaration of Gabriel Ravel ("Ravel Decl."), at ¶ 1; TAPL.)

The other parties on the emails include: (1) Defendant Michelle Rouillard; (2) Sandra Gallardo, counsel for DMHC; (3) DMHC OPL counsel; (4) various employees of the DMHC; (5) various employees of the CHHS; and (6) various employees of the Governor's Office. (TAPL.) Defendants also assert the attorney-client privilege over certain attachments to the privileged emails. (*Id.*)

#### a. *On or Before August 22, 2014*

The earliest documents are emails dating back to July 3, 2014. (*Id.* at p. 1.) Sixty-eight (68) of the claimed attorney-client communications are dated prior to August 22, 2014, when the DMHC issued letters to seven group health plans stating they were not

---

[1] On June 5, 2017, Defendants filed a Motion to Seal Exhibits 8, O, and P filed in support of the Amended Joint Motion for Determination of Discovery Dispute. (ECF No. 56.) No opposition was filed. Good cause appearing, the motion is hereby **GRANTED**.

[2] In his capacity as the Deputy Director and General Counsel for DMHC, Mr. Ravel also serves as the direct counsel for Defendant Rouillard, and counsel for the California Health & Human Services Agency ("CHHS") and Office of Governor Edmund G. Brown ("Governor's Office") on legal matters that arise out of or relate to the DMHC. (Ravel Decl. at ¶¶ 2-3.)

compliant with the Knox Keene Act.  (Ravel Decl. at ¶ 4, Exh. L; TAPL at pp. 1-11.)  Mr. Ravel, Ms. Gallardo, Defendant Rouillard, and various employees of the DMHC and CHHS are the only individuals on these communications.  (TAPL at pp. 1-11.)  Defendants cited one or more of the following as the basis for the privilege of these emails:

> (1)    client request for legal advice and/or attorney review regarding issuance of letter or legal memorandum or legal research;
>
> (2)    attorney response to client request for legal advice regarding issuance of letter or legal memorandum or legal research;
>
> (3)    deliberations between: (i) client and attorney(s) regarding issuance of August 22, 2014 letters; (ii) attorneys regarding issuance of August 22, 2014 letters; (iii) client and attorney(s); or (iv) attorneys;
>
> (4)    draft legal memorandum or legal letter prepared by or under the direction of counsel; or
>
> (5)    deliberations and comments by attorney regarding attached draft.

(*Id.*)

The "Description" of the emails includes the following: Email re: (1) Grievances Data; (2) Restrictive abortion coverage; (3) Abortion Coverage; (4) GAO Request: QHP Coverage of Abortion Services; (5) GAO Request—QHP Coverage of Abortion Services; (6) abortion coverage and compliance with APA; (7) abortion coverage and medical necessity of abortion; (8) GAO follow-up questions regarding abortion; (9) GAO-Abortion Point of Contact; (10) Abortion Language in EOCs, DF's; (11) Kaiser Benchmark EOC and ABC's QHP EOC; (12) QHP filing re abortion; (13) Abortion-response to GAO; (14) California Lawyer—Cover Story; (15) Legal Memorandum Documents re AC and proposed letter; (16) Letter re: DMHC and abortion coverage; (17) medical Necessity/abortion; (18) Legal memorandum re abortion coverage; (19) Aetna request re: abortion language; (20) AC letter; (21) Draft AC letter; (22) WAR for REVIEW; and (23) Talking Points and Q&A.  (*Id.*)

6

There were also attachments to the emails entitled: (1) Response_Grove v2.docx (draft legal letter prepared by or under the direction of counsel);[3] (2) Open Filings With Abortion Language (7-10-14 Revision 1).xlsx (draft legal memorandum prepared by or under the direction of counsel); (3) Memorandum (draft) re Health Plans' Limitation on Enrollee Access to Abortion; (4) SFGate.xps (attached to Email re: Californian Lawyer: Cover Story); (5) Draft Abortion Survey Chart.docx (draft legal memorandum prepared by or under the direction of counsel); (6) Medical Necessity Definitions.docx (draft legal memorandum prepared by or under the direction of counsel); (7) Legal Memorandum re Abortion Coverage.doc; (8) Legal Chart.pptx (draft legal memorandum prepared by or under the direction of counsel); (9) AC Draft Plan 8.14.14.docx (draft legal memorandum prepared by or under the direction of counsel); (10) Week Ahead Report – Confidential Significant Litigation – Litigation Status and Strategy; and (11) AC Plan FINAL (draft legal memorandum prepared by or under the direction of counsel). (*Id.*)

     b. *Between August 22, 2014 and September 8, 2014*

Immediately after the DMHC issued the letters on August 22, 2014, the DMHC received a letter from the Legal Director of Life Legal Defense Foundation, Catherine Short, asserting that the DMHC violated the Weldon Amendment by issuing the August 22, 2014 letters, and that she intended to file complaints with the Office of Civil Rights ("OCR") in the Federal Department of Health & Human Services ("DHHS"), if the DMHC did not reverse its position. (Ravel Decl. at ¶ 6.) Mr. Ravel states that after conducting confidential internal discussions, developing recommendations, and further deliberating regarding how to respond to these legal accusations, the DMHC issued a response on September 8, 2014. (*Id.* at ¶ 7, Exh. M.) The response, which stated that the DMHC will not reverse its position, was signed by Defendant Rouillard. (*Id.*)

---

   [3] Mr. Ravel states "[t]hose documents described as relating to 'Grove' concern the confidential internal deliberations of DMHC regarding how to respond to the legal accusations from State Assemblymember Shannon Grove." (Ravel Decl. at ¶ 41.)

Dated on and after August 22, 2014, and until September 8, 2014, Defendants deemed thirty-two (32) documents attorney-client privileged communications. (TAPL at pp. 11-15.) Mr. Ravel, Ms. Gallardo, Defendant Rouillard, and various employees of the DMHC, CHHS, and Governor's Office are the only individuals on these communications. (*Id*.) Defendants cited one or more of the following as the basis for the privilege of these emails:

(1)     client request for legal advice and/or attorney review regarding legal memorandum or legal research;

(2)     attorney response to client request for legal advice regarding issuance of letter or legal memorandum or legal research;

(3)     deliberations between: (i) client and attorney(s) regarding issuance of August 22, 2014 letters; (ii) client and attorney(s); or (iii) attorneys;

(4)     draft legal memorandum prepared by or under the direction of counsel;

(5)     deliberations and comments by attorney regarding attached draft; or

(6)     request to attorney for meeting.

(*Id*.)

The "Description" of the emails includes the following: Email re: (1) Weldon Amendment complaint in response to letters; (2) DMHC decision re abortion coverage; (3) August 22 letters; (4) State reverses abortion decision at 2 Catholic colleges; (5) SCU outreach re abortion coverage; (6) August 22, 2014 letters; (7) follow-up with SCU re health plans' abortion coverage; (8) inquiry from San Francisco Chronicle;[4] (9) For What's New Section; (10) Abortion Comment/Memorandum; (11) Open Filings With Abortion Language; (12) Questions from the public; (13) Member questions; (14) Termination of Pregnancy Language; (15) "religiously sponsored health carrier"; (16) call from Consumer re August 22, 2014 letter and discussion on how to respond; and (17) Call from Consumer re August 22, 2014 letter. (*Id*.)

---

[4]     According to Mr. Ravel, after the issuance of the August 22, 2014 letters, the DMHC received additional media and public inquiries. (Ravel Decl. at ¶ 22.) As a result, Mr. Ravel states that several entries on the Third Amended Privilege Log "concern confidential internal predecisional deliberations regarding how to respond to outside media and public inquiries in light of pending litigation." (*Id*. at ¶ 23.)

There were also attachments to the emails entitled: (1) Legal Abortion Comment/Memorandum Open&Non-Filed-8-25-14.docx (draft legal memorandum prepared by or under the direction of counsel); and (2) Open Filings With Abortion Language.xlsx (draft legal memorandum prepared by or under the direction of counsel). (*Id.* at pp. 12-13.)

c.  *Between September 9, 2014 and January 20, 2015*

On October 9, 2014, the Life Legal Defense Foundation and Alliance Defending Freedom, representing Plaintiff, Foothill Church, and several other religious entities, filed a "Complaint for Discrimination in Violation of Federal Conscience Protections," with the OCR of the DHHS.  (Ravel Decl. at ¶ 8, Exh. N.)  Mr. Ravel states that the lodging of this complaint initiated an investigation by the OCR, requiring that the DMHC respond to the legal allegations in the complaint.  (*Id.* at ¶ 9, Exh. O.)  Following confidential internal deliberations regarding how to respond to the complaint, including conversations with the California Attorney's General Office, of which Mr. Ravel was materially involved, the DMHC issued a final response legal letter on January 20, 2015, signed by Mr. Ravel.  (*Id.* at ¶ 10, Exh. P.)

On November 17, 2014, Commissioner Peter Kirsanow of the U.S. Commission on Civil Rights issued a letter to the DMHC, alleging that the DMHC violated the Weldon Amendment by issuing the August 22, 2014 letters.  (*Id.* at ¶ 13.)  After confidential internal deliberations, including among counsel and Mr. Ravel, the DMHC responded to these legal allegations on December 18, 2014.  (*Id.* at ¶ 14, Exh. R.)

Dated between September 9, 2014 and January 20, 2015, there are an additional one hundred and twelve (112) documents on Defendants' privilege log.  (TAPL at pp. 15-25.)  Of these documents, ninety (90) are deemed attorney-client privileged communications.  (*Id.*)  Mr. Ravel, Ms. Gallardo, Defendant Rouillard, and various employees of the DMHC, CHHS, and Governor's Office are the only individuals on these communications.  (*Id.*)  Defendants cited one or more of the following as the basis for the privilege of these emails:

(1)     client request for legal advice and/or attorney review regarding legal memorandum or legal research;

(2)     attorney response to client request for legal advice regarding issuance of letter or legal memorandum or legal research;

(3)     deliberations between: (i) client and attorney(s) regarding issuance of August 22, 2014 letters; (ii) client and attorney(s); or (iii) attorneys;

(4)     draft legal memorandum or legal letter prepared by or under the direction of counsel; or

(5)     deliberations and comments by attorney regarding attached draft.

(*Id.*)

The "Description" of the emails includes the following: Email re: (1) AC article; (2) "religiously sponsored health carrier"; (3) health plan changes at Santa Clara and Loyola Marymount Univ.; (4) enforcing the Aug 22 letter on abortion coverage; (5) Abortion Article; (6) Catholic Bishops File Federal Complaint Against State of California; Department of Managed Health Care Accused of Serious Civil Rights Violations; (7) Aug 22 2014 letter; (8) Questions from Trust Woman Advocacy; (9) August 22, 2014 letter inquiry from Church State Council; (10) MSP and Abortion; (11) abortion coverage; (12) abortion coverage in Covered California plans; (13) PRA – Abortion Coverage documents; (14) Shelley, please rescind the abortion mandate; (15) Question re Multi-State Plans; (16) Pre-Filing Conference Call Regarding Termination of Pregnancy; (17) Conference Call Regarding Termination of Pregnancy; (18) UnitedHealthcare (Abortion Language); (19) Status of Abortion Filings from 7 Plans (Director's Letter of August 22, 2014); (20) DMHC/Religious Liberties; (21) The short version of California's Weldon amendment justification; (22) Meeting Follow-Up (Abortion Language); (23) NHeLP Request re abortion; (24) Request for General Information re abortion coverage; (25) Santa Clara University – Request for Conference Call; (26) Document EOC Review re limiting language; (27) DMHC abortion exclusion & meeting follow up; (28) 2014 plan enrollment charts; (29) Health Net EOC Documents for Production; (30) AGO Comments on Draft

Response to HHS/OCR;[5] (31) Footnote language; (32) California Lawyer Abortion article; (33) Edits to draft documents/OCR letter; (34) OCR Response Letter; and (35) updated draft OCR Response Letter.  (*Id.*)

There were also attachments to the emails entitled: (1) Abortion Language Status-11-14-14.docx (draft legal memorandum prepared by or under the direction of counsel); (2) Abortion Language Status-11-20-14.docx (draft legal memorandum prepared by or under the direction of counsel); (3) Abortion Language Status-11-26-14.docx (draft legal memorandum prepared by or under the direction of counsel); (4) The short version of California's Weldon amendment justification.docx (draft legal memorandum prepared by or under the direction of counsel); (5) 2014 abortion enrollment data.docx (draft legal memorandum prepared by or under the direction of counsel); (6) DMHC and Plan Contact Sheet.docx (draft legal memorandum prepared by or under the direction of counsel); and (7) California Lawyer June 2014.pdf.  (*Id.*)

### d. *Between January 21, 2015 and November 9, 2015*

On January 28, 2015, the California Catholic Conference, by and through Mr. James Sweeney, Esq., filed an Underground Regulation Petition with the California Office of Administrative Law ("OAL"), alleging that the DMHC violated the California Administrative Procedures Act in issuing the August 22, 2014 letters.  (Ravel Decl. at ¶ 15.)  After confidential internal deliberations, including among counsel and Mr. Ravel, the DMHC responded to these allegations on March 20, 2015.  (*Id.* at ¶ 16, Exh. S.)  The DMHC's six-page response letter, which includes extensive legal analysis, was signed by Mr. Ravel.  (*Id.*)  On March 30, 2015, the OAL issued a letter stating that it "declines to accept" the Catholic Conference's petition, and advised the Catholic Conference that its decision did not restrict the Catholic Conference's right or ability to pursue the matter

---

[5]     According to Mr. Ravel, "those documents described as relating to 'OCR' concern the confidential internal deliberations of DMHC regarding how to respond to the Weldon Complaint."  (Ravel Decl. at ¶ 39.)

directly with the DMHC or the court. (*Id.* at ¶ 17, Exh. T.) The same counsel who pursued the petition, thereafter filed a lawsuit in Sacramento Superior Court, *Missionary Guadalupanas of the Holy Spirit, Inc. v. Michelle Rouillard*, Case No. 34-2015-80002226. (*Id.* at ¶ 18, Exh. U.) The Superior Court denied the petition for writ of mandate and complaint for injunctive and declaratory relief and a motion for new trial in August and September 2016, respectively. (*Id.* at ¶ 19, Exh. U.) The petitioner appealed to the California Court of Appeal for the Third Appellate District, *Missionary Guadalupanas v. Rouillard*, Appellate Case No. C083232, and the appeal remained pending as of the date of the Amended Joint Motion. (*Id.* at ¶ 20.)

On October 16, 2015, several churches, including those that filed the OCR complaint, represented by Alliance Defending Freedom, filed a lawsuit in United States District Court for the Eastern District of California, alleging, among other things, that the August 22, 2014 letters violate the Free Exercise Clause and the Establishment Clause of the United States Constitution. (*Id.* at ¶ 21; *see also Foothill Church, et al. v. Rouillard*, Case No. 2:15-cv-02165-KJM-EFB (E.D. Cal.)). The case remains pending. (*Id.*)

On June 16, 2016, the OCR concluded that the DMHC did not violate the Weldon Amendment. (Ravel Decl. at ¶ 11, Exh. Q.) However, on March 2, 2017, Congressman Kevin McCarthy requested that the OCR review and reopen its investigation into whether the August 22, 2014 letters violate the Weldon Amendment. (*Id.* at ¶ 12.)

Dated between January 21, 2015 and November 9, 2015, the date of the last entry on the privilege log, there are an additional seventy-one (71) documents deemed attorney-client privileged communications on Defendants' privilege log.[6] (TAPL at pp. 25-33.) Mr.

_____

[6] This includes two undated documents entitled "Abortion Survey Chart" and "AbortionCommentOPenNo n-Filed-8-25-14 (2).docx." (*See* TAPL at p. 33.) In its analysis below, the Court will consider the "Abortion Survey Chart" related to documents bates-stamped PRIV000363-365, 5132-5133, which are dated August 11, 2014. (*Id.* at p. 8.) The Court will further consider the "AbortionCommentOPenNo n-Filed-8-25-14

Ravel, Ms. Gallardo, Defendant Rouillard, and various employees of the DMHC, CHHS, and Governor's Office are the only individuals on these communications. (*Id*.) Defendants cited one or more of the following as the basis for the privilege of these emails:

> (1)    client request for legal advice and/or attorney review regarding legal memorandum or legal research;
>
> (2)    attorney response to client request for legal advice regarding (i) issuance of letter; (ii) legal memorandum; or (iii) legal research;
>
> (3)    deliberations between: (i) client and attorney(s) regarding issuance of August 22, 2014 letters; (ii) attorney(s) regarding issuance of August 22, 2014 letters; (iii) client and attorney(s); (iv) attorneys; (v) attorneys regarding potential "religious employer" exemption to August 22, 2014 letters; or (vi) client and attorney(s) regarding potential "religious employer" exemption to August 22, 2014 letters;
>
> (4)    draft legal memorandum prepared by or under the direction of counsel; or
>
> (5)    deliberations and comments by attorney regarding attached draft.

(*Id*.)

The "Description" of the emails includes the following: Email re: (1) Abortion-Related Documents; (2) Meeting Follow-Up re Abortion Language; (3) Secretary Buwell appearance at Congressional panels discussing August 2014 letters; (4) HHS Investigation Clips; (5) Women's Health bulletin points; (6) Women's Health; (7) Abortion Pricing Discrimination Issue; (8) Proposal from Kevin Eckery; (9) Catholic Conference's position on DMHC's action; (10) All Counsel Forum Agenda; (11) Edits to OLS All Counsel Forum Presentation; (12) OLS PowerPoint Draft; (13) August 22, 2014 Letters on the Website; (14) EHBs and Abortion Coverage; (15) abortion coverage; (16) August 22, 2014 letter re abortion; (17) August 22, 2014 letter/Weldon Amendment; (18) Question regarding abortion coverage; (19) Sen. Joel Anderson, et al.[7] / Elective abortion services and funding

---

(2).docx." document related to the document bates-stamped PRIV005894, which is dated August 25, 2014. (*Id*. at p. 13.)

      [7]    According to Mr. Ravel, "[t]hose documents described as relating to the 'Sen. Joel Anderson' concern the confidential internal deliberations of DMHC regarding how to

16-cv-00501-H (DHB)

site health care programs; (20) health plans with limiting language re abortion coverage; (21) Religious Employer Exemption; and (22) abortion services coverage. (*Id.*)

There were also attachments to the emails entitled: (1) 2013 Annual Report for Office of Legal Services (OLS) FINAL 04.30.14.doc (draft legal memorandum prepared by or under the direction of counsel); (2) Summary of open PRA requests.xlsx (draft legal memorandum prepared by or under the direction of counsel); (3) Summary of open PRA requests (3.6.15).xlsx (draft legal memorandum prepared by or under the direction of counsel); PRAs regarding abortion coverage.docx (draft legal memorandum prepared by or under the direction of counsel); (4) OLS All Counsel Fo[ru]m-Draft jp 5.5.15.pptx (draft legal memorandum prepared by or under the direction of counsel); (5) OLS All Counsel Forum-Draft.pptx (draft legal memorandum prepared by or under the direction of counsel) (6) OLS All Counsel Forum-Draft.pptx ((two drafts of a legal memorandum prepared by or under the direction of counsel); (7) OLS Program Issue PowerPoint.pptx (draft legal memorandum prepared by or under the direction of counsel); (8) OLS Program Issue PowerPoint, outlining legal issues pending in DMHC, including status of litigation related to August 22, 2014 letters.pptx (draft legal memorandum prepared by or under the direction of counsel); (9) Abortion Survey Chart.docx; and (10) Abortion Comment Open No n-filed-8.25.14 (2).docx. (*Id.*)

### 2. Attorney Work Product Privilege

For all but two (2) documents deemed attorney-client privileged (PRIV003032, PRIV006005), Defendants also assert the attorney work product privilege. (TAPL at pp. 11, 12.) Defendants also assert the attorney work product privilege over an additional sixty-four (64) documents. (*Id.*) The only parties on the emails, which comprise all but four (4) of the sixty-four (64) additional documents, are Mr. Ravel, Ms. Gallardo, and various employees of the DMHC. (*Id.*)

---

respond to the legal accusations from California State Senator Joel Anderson." (Ravel Decl. at ¶ 42.)

3.    <u>Official Information Privilege and Deliberative Process Privilege</u>

For the remaining four documents (PRIV006037-83, PRIV002949, PRIV002950-95, PRIV004196-242), Defendants only assert the deliberative process privilege and official information privilege.  (TAPL at p. 28.)

## II.    LEGAL STANDARD

### A.    Motion to Compel

Under Federal Rule of Civil Procedure 26(b)(1), the scope of discovery includes "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  A party may withhold "information otherwise discoverable by claiming that the information is privileged."  Fed. R. Civ. P. 26(b)(5).  In order to withhold this material, a party must "expressly make the claim" and "describe the nature of the documents, communications or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  Fed. R. Civ. P. 26(b)(5)(A)(i)-(ii).

Pursuant to Federal Rule of Civil Procedure 37, a party may move the Court for an order compelling disclosure or discovery responses.  Fed. R. Civ. P. 37(a)(1).  The motion must include certification that the moving party "in good faith conferred or attempted to confer" with opposing counsel in an effort to obtain discovery before resorting to court action.  *Id.*

## III.    DISCUSSION

### A.    Attorney-Client Privilege

#### 1.    <u>Legal Standard</u>

The attorney-client privilege is intended "to encourage clients to make full disclosure to their attorneys," recognizing that sound advice "depends upon the lawyer's being fully informed by the client."  *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (internal quotation marks and citations omitted).  "[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice."  *Id.* at 390

(citations omitted); *see also In re Grand Jury Investigation (Corp.)*, 974 F.2d 1068, 1070 (9th Cir. 1992) ("The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, . . . as well as an attorney's advice in response to such disclosures." (internal citations omitted)). "The attorney-client privilege applies to communications between lawyers and their clients when the lawyers act in a counseling and planning role, as well as when lawyers represent their clients in litigation." *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996).

Because the attorney-client privilege withholds relevant information from the fact-finder, it should apply "only when necessary to effectuate its limited purpose of encouraging complete disclosure by the client." *Tornay v. United States*, 840 F.2d 1424, 1428 (9th Cir. 1988) (citing *United States v. Osborn*, 561 F.2d 1334, 1339 (9th Cir. 1977)). In the Ninth Circuit, the following eight-part test typically determines whether information is covered by the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*In re Grand Jury Investigation (Corp.)*, 974 F.2d at 1071 n. 2 (quoting *United States v. Margolis (In re Fischel)*, 557 F.2d 209, 211 (9th Cir. 1977)); *see also United States v. Ruehle*, 583 F.3d 600, 607-08 (9th Cir. 2009).

"The party asserting an evidentiary privilege has the burden to demonstrate that the privilege applies to the information in question." *Tornay*, 840 F.2d at 1426 (citing *United States v. Hirsch*, 803 F.2d 493, 496 (9th Cir. 1986)). To meet this burden, the party must demonstrate that its documents adhere to the "essential elements" of the attorney-client privilege adopted by the Ninth Circuit. *In re Grand Jury Investigation (Corp.)*, 974 F.2d at 1070-71 (citing *In re Fischel*, 557 F.2d at 211). "In essence, the party asserting the privilege must make a *prima facie* showing that the privilege protects the information the party intends to withhold." *Id.* at 1071.

One way to sufficiently establish the privilege is the production of a privilege log. *Id.*; *see also* Fed. R. Civ. P. 26(b)(5)(A). A privilege log which identifies the following is sufficient to establish the attorney-client privilege:

> (a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated.

*Id.* (citing *Dole v. Milonas*, 889 F.2d 885, 888, n.3, 890 (9th Cir. 1989)).[8] A privilege log may be supplemented by affidavits of the attorneys responsible for preparing the documents. *Id.* (finding that any questions the privilege log leaves open may be answered by affidavits from the attorneys responsible for preparing the documents).

## 2. Analysis

To make their *prima facie* showing that the attorney-client privilege applies to the 261 documents discussed above over which Defendants claim the attorney-client privilege, Defendants submitted a privilege log and a declaration from their counsel, Mr. Ravel, regarding the confidential nature of the documents. The Third Amended Privilege Log contains the following categories: (1) Bates Beg[in]; (2) Bates End; (3) Date Sent; (4) Email To; (5) Email From; (6) Email CC; (7) Email BCC; (8) Description; (9) Privileged Designation; and (10) Basis for Privilege. (TAPL.) After careful review of the Third Amended Privilege Log and the declaration of Mr. Ravel, the Court finds that Defendants have made a *prima facie* showing that the attorney-client privilege applies to the 261 documents designated as such.

---

[8] Alternatively, the Ninth Circuit has found a privilege log which identifies the following to be sufficient to establish the attorney-client privilege: (1) the attorney and client involved; (2) the nature of the document; (3) all persons or entities shown on the document to have received or sent the document; (4) the date the document was generated, prepared, or dated; and (5) the subject matter of each document. *In re Grand Jury Investigation (Corp.)*, 974 F.2d at 1071.

In the Amended Joint Motion, Plaintiff does not dispute that Mr. Ravel is listed as either an author or recipient of every document listed on the Third Amended Privilege Log. (ECF No. 55 at p. 9.) Plaintiff further does not argue that the categories of information provided in the Third Amended Privilege Log are insufficient, or that the communications were not kept confidential between counsel and client(s). Rather, Plaintiff argues that Defendants have improperly asserted the attorney-client privilege "over internal communications that were not made primarily to obtain legal advice." (*Id.* at p. 10.) In making this argument, Plaintiff only cites specifically to documents bates-stamped PRIV006005 and PRIV005052-54 as examples of communications that were not made primarily to obtain legal advice. (*Id.*) Otherwise, Plaintiff more generally argues that "[a]lthough Defendants very well may have sought legal advice before issuing the August 22 letters, that does not automatically convert every communication about the abortion coverage requirement into a privileged one." (*Id.*) Plaintiff's primary concern seems to be that Defendants did not produce any internal e-mail communications related to the imposition or implementation of the abortion coverage requirement, and Plaintiff simply does not find it plausible that all such e-mails are privileged. (*Id.* at pp. 9-10.)

The document bates-stamped PRIV006005 is an email dated August 22, 2014 and entitled "State reverses abortion decision at 2 Catholic colleges." (TAPL at p. 12.) The email was sent from Diana Dooley (CHHS) to Defendant Rouillard, Mr. Ravel and various employees of the DMHC, CHHS, and Governor's Office. (*Id.*) Mr. Ravel states that the email was sent from Secretary Diana Dooley "to her attorneys and those entities with a common interest, concerning the immediate press coverage of the August 22, 2014 letters." (Ravel Decl. at ¶ 30.) He further states that the email "contains a confidential discussion regarding anticipated litigation." (*Id.*)

The document bates-stamped PRIV005052-54 is an email dated August 22, 2014 – the same day the letters at issue were issued – entitled "For What's New Section." (TAPL at p. 12.) The email was sent from the DMHC Webmaster to Rodger Butler (DMHC), copying Mr. Ravel. (*Id.*) Mr. Ravel states this was a "confidential email" from one of his

16-cv-00501-H (DHB)

clients, the DMHC Webmaster, "discussing [Mr. Ravel's] legal review of the at-issue letters before they [were] posted on the public website." (Ravel Decl. at ¶ 31.)

Based on the information provided in the Third Amended Privilege Log and Mr. Ravel's declaration providing further information as to these two documents, the Court finds that Defendants have sufficiently established they are privileged. Plaintiff's mere speculation, without more, that these two emails may not be privileged is insufficient to overrule the assertion of privilege or persuade the Court that it needs to review these documents *in camera*.

Moreover, the Court does not find Plaintiff's more general argument that Defendants have improperly designated as privileged internal documents relating to the imposition or implementation of the abortion coverage requirement to be persuasive. Plaintiff's contention is premised on its speculation that Defendants *must* have relevant, non-privileged internal emails related to the imposition or implementation of the abortion coverage requirement. However, the August 22, 2014 letters, which are at the heart of this case, are legal in nature. They set forth a legal determination by Defendants that coverage for all legal abortions is required by the Knox Keene Act. As such, the complaints, petitions, and lawsuits that have followed, including this one, relate to the DMHC's legal interpretation of that requirement. Given the pending and anticipated litigation related to this interpretation, Defendants assertion that their responses to health plan inquiries require legal review and advice is credible. (*See, e.g.*, Ravel Decl. at ¶ 34.) For these reasons, the Court does not find Plaintiff's presumptive contention persuasive.

Plaintiff further argues that Mr. Ravel acts in a dual role in his position as counsel for Defendants. (ECF No. 55 at pp. 9-10.) The Court acknowledges that the fact "a person is a lawyer does not, ipso facto, make all communications with that person privileged. [Rather, t]he privilege applies only when legal advice is sought 'from a professional legal advisor *in his capacity as such*.'" *Chen*, 99 F.3d at 1501 (citation omitted). However, while it may be true that Mr. Ravel works in a dual capacity in his position, based on Mr. Ravel's declaration, the circumstances of this case, and the documents before the Court,

the Court finds that Defendants have established that Mr. Ravel was working on this matter in his legal capacity and that the primary purpose of the communications was to secure legal advice. *See N. Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1127 (N. D. Cal. 2003) ("In general, legal advice is implicated if the nonlegal aspects of the consultation are integral to the legal assistance given and the legal assistance is the *primary purpose* of the consultation."); *Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 628 (D. Nev. 2013) ("[W]hen dealing with communications to or from in-house counsel, many courts have found that in order for a communication that pertains to both business and legal advice to be considered privileged, the primary purpose must be to obtain or give legal advice.").

Mr. Ravel states in his declaration that prior to the issuance of the letters, the DMHC anticipated litigation in response to the letters, and therefore undertook several legal analyses and discussions for potential litigation. (Ravel Decl. at ¶ 32.) Mr. Ravel further states that he provided confidential legal analysis and recommendations as to why the August 22, 2014 letters should be issued. (*See, e.g.*, *id.* at ¶¶ 31, 32.) Beginning on the day the letters were issued, Defendants undisputedly faced legal challenges, which are ongoing and remain pending to this day. Mr. Ravel states that he was materially involved in the responses to these challenges, and in fact, Mr. Ravel signed at least two of the legal letters served by the DMHC. (*See, e.g.*, *id.* at ¶¶ 7, 10, 14, 16, 24, Exhs. P, S.)

Accordingly, based on the foregoing, the Court denies Plaintiff's motion to overrule the privilege as to all documents on the Third Amended Privilege Log deemed attorney-client communications and compel their production.

**B.    Attorney Work Product Privilege**

### 1.    Legal Standard

The attorney work product privilege is a "qualified privilege" that protects "certain materials prepared by an attorney 'acting for his client in anticipation of litigation.'" *United States v. Nobles*, 422 U.S. 225, 237-38 (1975) (quoting *Hickman v. Taylor*, 329 U.S. 495, 508 (1947)). "The primary purpose of the work product rule is to 'prevent exploitation of a party's efforts in preparing for litigation.'" *Holmgren v. State Farm Mut. Auto. Ins. Co.*,

976 F.2d 573, 576 (9th Cir. 1992) (quoting *Admiral Ins. Co. v. U.S. D. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989)).

The attorney work product privilege, codified in Federal Rule of Civil Procedure 26(b)(3), provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). When a party withholds information otherwise discoverable by claiming that the information is protected by the work product privilege, the party must "(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A).

To qualify for work product protection, documents and tangible things must: (1) be "prepared in anticipation of litigation or for trial" and (2) be prepared "by or for another party or by or for that other party's representative." *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011) (citing *In re Grand Jury Subpoena, Mark Torf/Torf Envtl. Mgmt. (Torf)*, 357 F.3d 900, 907 (9th Cir. 2004)); *see also* Fed. R. Civ. P. 26(b)(3). The scope of the attorney work product privilege is limited to documents and tangible things, not the underlying facts. *See Callwave Commc'ns, LLC v. Wavemarket, Inc.*, No. C 14-80112 JSW (LB), 2015 WL 831539, at *2 (N.D. Cal. Feb. 23, 2015); *Garcia v. City of El Centro*, 214 F.R.D. 587, 591 (S.D. Cal. 2003).

"In circumstances where a document serves a dual purpose, that is, where it was not prepared exclusively for litigation, then the 'because of' test is used." *Richey*, 632 F.3d at 567-68 (citing *Torf*, 357 F.3d at 907). The "because of" test is defined as follows:

> Dual purpose documents are deemed prepared because of litigation if "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." [*Torf*, 357 F.3d at 907] In applying the "because of" standard, courts must consider the totality of the circumstances and

determine whether the "'document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of litigation.'" *Id.* at 908 (quoting *United States v. Adlman*, 134 F.3d 1194 (2d Cir. 1998)).

*Richey*, 632 F.3d at 568.

The attorney work product privilege is not absolute. *United States v. Christensen*, 828 F.3d 763, 805 (9th Cir. 2015). Even where the attorney work product privilege "facially applies, it may be overridden if the party that seeks the otherwise protected materials establish[es] adequate reasons to justify production." *Id.* (citing *Hickman*, 329 U.S. 495 at 512 (internal quotations omitted); Fed. R. Civ. P. 26(b)(3)(A)(ii)). Pursuant to Federal Rule of Civil Procedure 26(b)(3)(A), a party may obtain discovery of trial preparation materials if they are otherwise discoverable and the party shows that it has a "substantial need" for the materials and "cannot, without undue hardship, obtain their substantial equivalent by other means." *Republic of Ecuador v. Mackay*, 742 F.3d 860, 866 (9th Cir. 2014) (quoting Fed. R. Civ. P. 26(b)(3)(A)). To the extent that a court orders discovery of any trial preparation materials under the rule, "it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." *Id.* (quoting Fed. R. Civ. P. 26(b)(3)(B)). However, even this so-called "opinion work product" may be discoverable "when mental impressions are at issue in a case and the need for the material is compelling." *Holmgren*, 976 F.2d at 577.

The party asserting the privilege has the initial burden of establishing that it applies to each document. *See Skynet Elec. Co., Ltd. v. Flextronics Int'l, Ltd.*, No. C 12–06317 WHA, 2013 WL 6623874, at *2 (N.D. Cal. Dec. 16, 2013).

2. Analysis

Defendants assert the attorney work product privilege on sixty-four (64) documents over which they did not assert the attorney-client privilege. (TAPL.) The only parties on the emails, which comprise all but four (4) of these additional documents, are Mr. Ravel, Ms. Gallardo, and various employees of the DMHC. (*Id.*)

16-cv-00501-H (DHB)

The first attorney work product privileged document is an email dated July 8, 2014 and entitled "Email re: Legal Memorandum." (*Id.* at p. 2.) On July 10, 2014, additional emails were circulated and entitled: "Legal Memorandum re Health Plans' Limitation of Abortion Coverage;" "abortion memorandum;" "Final Legal Memorandum;" and "Final Memorandum." (*Id.* at pp. 2-3.) On July 16, 2014, Mr. Ravel and Ms. Gallardo engaged in deliberations in a series of emails regarding abortion coverage and the medical necessity of abortion. (*Id.* at p. 3.) Additional emails regarding "Memorandum redlines" and an "Abortion memo" were exchanged between Mr. Ravel and Ms. Gallardo on July 17, 2014 and July 21, 2014, respectively. (*Id.* at p. 5.) On August 7 and 8, 2014, Mr. Ravel and Ms. Gallardo circulated "edits" to the draft letter to "health plans re limitations or exclusions of abortion services," an email regarding the "Draft Memorandum re Health Plans' Limitation of Abortion Coverage," and emails regarding "Memorandum and Attachments Final," and "question re TPL." (*Id.* at pp. 7-8.) On August 11, 2014, Mr. Ravel sent Ms. Gallardo an email regarding "Abortion Survey Data." (*Id.* at p. 8.) Thereafter, on August 22, 2014, the date the letters were issued, Ms. Gallardo and Mr. Ravel exchanged emails regarding the "DMHC decision re abortion coverage." (*Id.* at pp. 11-12.) Defendants designated the emails as two or more of the following: an attorney response to a client request for legal advice regarding the legal memorandum or legal research or issuance of letter, deliberations between attorneys regarding the August 22, 2014 letters, deliberations between attorneys, draft legal memorandum or legal letter prepared by or under the direction of counsel, or deliberations and comments by attorney regarding attached draft. (*Id.* at pp. 2-12.)

After the issuance of the August 22, 2014 letters, Defendants claim attorney work product protection over several additional documents. (TAPL at pp. 15-33.) These documents are dated from September 5, 2014 through April 13, 2015. (*Id.*) The documents include emails regarding calls from consumers and how to respond to consumer questions, a Weldon Amendment complaint, health plan changes at Catholic universities, a call from the AG's office, multi-state plans and abortion, a request for general information regarding

abortion coverage, the Health & Safety Code, the OCR response and contact list, the DMHC and Plan contact sheet, the OCR response letter, an underground "reg petition,"[9] Secretary Burwell/HHS and the August 22, 2014 letters, final rule for multistate plans, Anthem Blue Cross coverage, Mattox article re: the August 22, 2014 letters, OCR transactions, an all counsel meeting update, and an HHS OCR abortion call. (*Id.*) Defendants cited two or more of the following as the basis for the privilege of these documents:

(1) client request for legal advice and/or attorney review regarding legal memorandum;

(2) attorney response to client request for legal advice regarding (i) issuance of letter, (ii) legal memorandum, or (iii) legal research;

(3) deliberations between: (i) attorneys regarding issuance of August 22, 2014 letters; (ii) client and attorney(s); or (iii) attorneys;

(4) draft legal memorandum prepared by or under the direction of counsel; or

(5) deliberations and comments by attorney regarding attached draft.

(*Id.*)

Based on the foregoing, the Court finds that Defendants have established a *prima facie* case that these documents are covered by the attorney work product privilege. As discussed above, the DMHC anticipated litigation in connection with the issuance of the letters, and undertook several legal analyses and discussions for potential litigation. (Ravel Decl. at ¶ 32.) Given the nature of the letters, there was more than a remote possibility of litigation. Moreover, the immediate and sustained nature of the response to the letters demonstrates that Defendants' anticipation of litigation was not unfounded speculation.

Plaintiff argues that the attorney work product privilege does not apply here because it only applies to material generated in anticipation of litigation, and not information

---

[9] Per Mr. Ravel, "those documents described as relating to the 'underground reg petition' concern the confidential internal deliberations of DMHC regarding how to respond to the initial underground regulation petition which led to the filing of the *Missionary Guadalupanas* lawsuit, which remains pending in the California Court of Appeal." (Ravel Decl. at ¶ 40.)

collected or communications made in the ordinary course of business. (ECF No. 55 at p. 10.) Applying the "because of" standard, Plaintiff argues that the privilege cannot apply to all documents generated before the August 22, 2014 letters were issued. (*Id.* at p. 11.) Plaintiff cites to the following pre-August 22, 2014 emails as examples of emails that should not be covered by the attorney work product privilege: PRIV004620-31 and PRIV005182-93. (*Id* at p. 11.)

Plaintiff further argues that Defendants have invoked the privilege over documents that were generated in the normal course of business both before and after August 22, 2014, which are separate and distinct from any anticipated or pending litigation. (*Id.*) Plaintiff cites to the following documents as examples of documents generated in the normal course of business: PRIV000363 and PRIV000221-22.

In his declaration, Mr. Ravel states that documents bates-stamped PRIV004620-31 are a series of emails, entitled "abortion memorandum" and dated July 10, 2014, which "concern confidential communications between DMHC attorneys regarding responsive information and data relevant to the issuance of the August 22, 2014 letters." (Ravel Decl. at ¶ 32.) Mr. Ravel adds that these "emails discuss and include confidential analysis and recommendations as to why the August 22, 2014 letters should be issued," and "stem from a client request for legal advice concerning abortion coverage in licensed health plans." (*Id.*) Mr. Ravel further states that prior to the issuance of the letters, the DMHC was anticipating litigation, and therefore was undertaking several legal analyses and discussions regarding potential litigation. (*Id.*)

According to Mr. Ravel, documents bates-stamped PRIV005182-93 are a series of emails, entitled "coverage and medical necessity of abortion" and dated July 16, 2014, between Mr. Ravel and another DMHC attorney, Ms. Gallardo, in which they engage in "legal analysis regarding abortion and 'medical necessity.'" (*Id.* at ¶ 35.) This legal analysis, according to Mr. Ravel, was undertaken in response to a client request, in preparation for issuance of the August 22, 2014 letters. (*Id.*) Mr. Ravel adds that this legal analysis has been utilized in the subsequent litigation in state and federal court. (*Id.*)

As to the document bates-stamped PRIV000363, it is an email dated August 11, 2014 and entitled "abortion survey data." (*Id.* at ¶ 33.) According to Mr. Ravel, the email and its attachment,[10] which is deemed attorney-client privileged, contains "confidential internal predecisional deliberations and a draft memorandum regarding the issuance of the August 22, 2014 letters." (*Id.*) Mr. Ravel states that the email and its attachment are "the result of a client request for legal advice concerning abortion coverage in licensed health plans." (*Id.*)

Lastly, as to the document bates-stamped PRIV000221-22, which is an email from Mr. Ravel's client, Kristene Mapile, to Ms. Gallardo, Mr. Ravel, and other DMHC employees, entitled "Anthem Blue Cross (ABC) abortion coverage" and dated March 5, 2015, Mr. Ravel states that it "includes a confidential draft response to the health plan's inquiry and seeks legal input and approval." (*Id.* at ¶ 34.) Given the pending underground regulation petition and the pending OCR investigation, Mr. Ravel states that "it was important to the clients that counsel be consulted in responding to the health plan's inquiry." (*Id.*)

Based on the information provided in the Third Amended Privilege Log and Mr. Ravel's declaration, the Court finds that Defendants have sufficiently demonstrated that these documents were prepared in anticipation of litigation. Although Plaintiff claims certain documents served a dual purpose, in light of the nature of these documents and the facts of this particular case, the Court finds the documents can fairly be said to have been prepared "because of" the prospect of litigation related to the August 22, 2014 letters. *See In re Grand Jury Subpoena*, 357 F.3d at 908. In making this determination, the Court has considered the totality of the circumstances, and finds that they would not have been created in substantially similar form but for the prospect of litigation. *See id.* For example,

---

[10]      *See also* TAPL at p. 33 (PRIV000001-2).

in responding to health plan inquiries, counsel was consulted because of pending litigation, when it may not have been under a different set of circumstances.

## C.  Deliberative Process Privilege and Official Information Privilege

Defendants assert only the deliberative process privilege and official information privilege over the four (4) remaining documents, which are dated April 1, 2015 and April 3, 2015.[11]  (TAPL at p. 28.)  All of the documents – an email and three PowerPoint presentations – relate to a confidential draft slideshow "UCD" presentation created by Mr. Ravel and another DMHC attorney.  (*Id*.; see also Ravel Decl. at ¶ 29.)

### 1.  Legal Standard

#### a.  *Deliberative Process Privilege*

The deliberative process privilege cover "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."  *Dep't. of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (quoting *N.L.R.B. v. Sears, Roebuck & Co*., 421 U.S. 132, 150 (1975)); *see also F.T.C. v. Warner Commc'ns Inc*., 742 F.2d 1156, 1161 (9th Cir. 1984).  "The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions, by protecting open and frank discussion among those who make them within the Government."  *Id*. at 8-9 (internal citations and quotations omitted).  The Supreme Court has expressly recognized the privilege with respect to the decision-making processes of government agencies.  *North Pacifica, LLC*, 274 F. Supp. 2d at 1121 (citing *N.L.R.B.*, 421 U.S. at 148-53)).

"A document must meet two requirements for the deliberative process privilege to apply.  First, the document must be predecisional—it must have been generated before the

---

[11]  The documents are bates-stamped PRIV006037-6083, PRIV002949, PRIV002950-2995, and PRIV004196-4242.

adoption of an agency's policy or decision." *F.T.C.*, 742 F.2d at 1156. "Second, the document must be deliberative in nature, containing opinions, recommendations, or advice about agency policies." *Id.* "Purely factual material that does not reflect deliberative processes is not protected"; however, factual material that "is so interwoven with the deliberative material that it is not severable" is protected. *Id.*; *see also Sanchez v. Johnson*, No. C–00–1593 CW (JCS), 2001 WL 1870308, at *5 (N.D. Cal. Nov. 19, 2001) ("[T]he fact/opinion distinction should not be applied mechanically. Rather, the relevant inquiry is whether 'revealing the information exposes the deliberative process.'"). The burden of establishing the privilege is on the party asserting it. *North Pacifica, LLC*, 274 F. Supp. 2d at 1122.

However, the deliberative process privilege is a qualified one. *F.T.C.*, 742 F.2d at 1156. Thus, even if the privilege is established, a "litigant may obtain deliberative materials if his or her need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure." *Id.*; *see also North Pacifica, LLC*, 274 F. Supp. 2d at 1122. "Among the factors to be considered in making this determination are: 1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *Id.* Other factors that a court may consider include: 5) the interest of the litigant, and ultimately society, in accurate judicial fact finding, 6) the seriousness of the litigation and the issues involved, 7) the presence of issues concerning alleged governmental misconduct, and 8) the federal interest in the enforcement of federal law. *North Pacifica, LLC*, 274 F. Supp. 2d at 1122 (citing *United States v. Irvin*, 127 F.R.D. 169, 173 (C.D. Cal. 1989)).

b.    *Official Information Privilege*

Federal common law also recognizes a qualified privilege for official information. *Kerr v. U.S. Dist. Ct. for the N. Dist. of Cal.*, 511 F.2d 192, 198 (9th Cir. 1975). In determining what level of protection should be afforded by this privilege, courts conduct a case by case balancing analysis, in which the interests of the party seeking discovery are

28

weighed against the interests of the governmental entity asserting the privilege. *Soto v. City of Concord*, 162 F.R.D. 603, 613-14 (N.D. Cal. 1995); *see also Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033-34 (9th Cir.1990); *Kelly v. City of San Jose*, 114 F.R.D. 653, 660 (N.D. Cal. 1987); *Miller v. Pancucci*, 141 F.R.D. 292, 300 (C.D. Cal. 1992); *Hampton v. City of San Diego*, 147 F.R.D. 227, 230-31 (S.D. Cal. 1993).

However, before a court will engage in this balancing of interests, the party asserting the privilege must properly invoke the privilege by making a "substantial threshold showing." *Soto*, 162 F.R.D. at 669. In order to fulfill the threshold requirement, the party asserting the privilege must submit a declaration or affidavit from a responsible official with personal knowledge of the matters to be attested to in the affidavit. *Id*. The affidavit must include: "(1) an affirmation that the agency generated or collected the material in issue and has maintained its confidentiality; (2) a statement that the official has personally reviewed the material in question; (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer; (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests, and (5) a projection of how much harm would be done to the threatened interests if disclosure were made." *Id*. at 670; *see also Chism v. Cnty. of San Bernardino*, 159 F.R.D. 531, 533 (C.D. Cal. 1994); *Hampton*, 147 F.R.D. at 230–31; *Miller*, 141 F.R.D. at 301. A strong affidavit would also describe how the plaintiff could acquire information of equivalent value from other sources without undue economic burden. *Kelly*, 114 F.R.D. at 670.

If the court concludes that a defendant's submissions are not sufficient to meet the threshold burden, it will order disclosure of the documents in issue. If a defendant meets the threshold requirements, the court will order an in camera review of the material and balance each party's interests. *Id*. at 671; *Chism*, 159 F.R.D. at 533–34; *Hampton*, 147 F.R.D. at 231; *Miller*, 141 F.R.D. at 301.

///

2. <u>Analysis</u>

The four documents at issue, dated April 1, 2015 and April 3, 2015, are not predecisional with regard to the August 22, 2014 letters. A predecisional document is one "prepared in order to assist an agency decisionmaker in arriving at his decision" and may include "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Assembly of Cal. v. U.S. Dep't of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992) (citations omitted). Defendants, who bear the burden of establishing the privilege, do not identify which other policy or decision relate to these documents. Accordingly, based on the information before the Court, Defendants have failed to establish that the deliberative process privilege applies to these documents.

To establish the official information privilege, Mr. Ravel submitted a declaration stating that these four documents contain a confidential draft slideshow presentation created by Mr. Ravel and another DMHC attorney. (Ravel Decl. at ¶ 29.) Mr. Ravel states that these documents have been maintained confidentially and "[r]equiring DMHC to disclose these documents would threaten several governmental interests." (Ravel Decl. at ¶¶ 43-44.) According to Mr. Ravel,

> [d]isclosing the documents related to the post-August 22, 2014 documents, including documents regarding how to respond to the OCR complaints and investigations, how to respond to the underground regulation petition, how to respond to the pending state and federal lawsuits, how to respond to the media inquiries, and how to respond to inquiries from other officials, would threaten the government interest and privacy interest of sensitive internal legal deliberations and strategy in ongoing pending litigation. These confidential documents reflect the Department's legal responses to inquiries taken after the issuance of the August 22, 2014 letters, including in matters that remain pending.

(Ravel Decl. at ¶ 46.) Mr. Ravel further states that disclosing these documents under a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests because there are several ongoing legal actions to which

the DMHC has to respond, and the DMHC's position in these actions would be prejudiced. (Ravel Decl. at ¶¶ 47-48.)

Based on the foregoing, the Court finds that Defendants have met their threshold burden of establishing that these documents fall under the official information privilege. The documents at issue were drafted by, and circulated among, DMHC attorneys, who kept them confidential, and they purportedly contain sensitive internal legal deliberations and strategy in ongoing litigation. Plaintiff argues that Defendants have not met their burden, but does not address these four documents in particular. Accordingly, the Court ORDERS that these documents be submitted for *in camera* review so that the Court may balance each party's interests.

### D. Interrogatories

In Defendants' initial response to Plaintiff's interrogatories asking who participated in the research, analysis, drafting, preparation, and decision to issue the August 22, 2014 letters, including their role or task, title, employer, and current address and telephone number, Defendants objected to the interrogatories on the basis of the attorney-client privilege, attorney work product privilege, official information privilege, and deliberative process privilege. (Galus Decl. at ¶ 10, Exh. 6, Interrogs. No. 3 & 4.) Defendants further responded that "legal counsel for the Department was relied upon prior to issuance of the letters." (*Id.*) In their supplemental responses, served on March 10, 2017, Defendants maintained their privilege objections and "refer[red] Plaintiff, pursuant to Federal Rules of Civil Procedure, Rule 33(d), to the privilege log, and the names therein" and provided contact information at the California Office of the Attorney General. (*Id.*)

Plaintiff now argues that the privilege log, "which names over 100 individuals spanning several state agencies, does not plainly indicate who was involved with the August 22, letters, nor does it explain what each individual's role or task may have been." (ECF No. 55 at p. 11.) Because Plaintiff contends the requested information can only be discerned from the content of the withheld documents, Plaintiff argues the Court should overturn the privilege and compel disclosure. (*Id.*) In response, Defendants argue Plaintiff

waived this argument because it failed to raise the dispute within the Court's 45-day deadline, as set forth in its Civil Chambers Rules, the Civil Local Rules, and the Court's Scheduling Order. (*Id.* at pp. 21-22.) Defendants do not further address Plaintiff's argument.

In Plaintiff's email responses to Defendants following the production of their supplemental responses to Plaintiff's interrogatories, beginning on March 21, 2017, Plaintiff did not raise any issues with Defendants' interrogatory responses. (*See* Galus Decl. at ¶ 11, Exh. 7.) Defendants maintain Plaintiff did not raise the issue until the initial Joint Motion for Determination of Discovery Dispute. (*See* Eisenberg Decl. at ¶ 13; ECF No. 47-11 at 6, ¶ 25.) Plaintiff does not contend otherwise. Moreover, there is no suggestion the parties met and conferred on the issue prior to filing their Amended Joint Motion. (*See* Galus Decl. at ¶¶ 15-18; Eisenberg Decl. at ¶¶ 32-36.) Therefore, the parties have not met and conferred on this issue. Accordingly, pursuant to the Scheduling Order,[12] Civil Rule 26.1(a),[13] the Court's Civil Chambers Rule (IV)(A), and Rule 37(a)(1), the Court finds Plaintiff has waived the issue.

## IV. CONCLUSION

Based on the foregoing, the Court ORDERS as follows:

1. Plaintiff's motion to compel production of the documents listed in the excerpted Third Amended Privilege Log is **DENIED**. However, Defendants shall lodge documents bates-stamped PRIV006037-6083, PRIV002949, PRIV002950-2995, and PRIV004196-4242 with the Court no later than **September 26, 2017** for *in camera* review, so that the Court may engage in a balancing analysis to determine whether the Official Information Privilege applies.

---

[12]     *See* ECF No. 39 at ¶ 5 (requiring counsel to "promptly and in good faith meet and confer with regard to all discovery disputes in compliance with Local Rule 26.1(a)")

[13]     *See* Civ. L.R. 26.1(a) ("The court will entertain no motion pursuant to Rules 26 through 37, Fed. R. Civ. P., unless counsel will have previously met and conferred concerning all disputed issues.")

16-cv-00501-H (DHB)

2.    Defendants Motion to Seal (ECF No. 56) is **GRANTED**.  Accordingly, the documents lodged at ECF No. 57 shall be filed under seal.

IT IS SO ORDERED.

Dated:  September 22, 2017

LOUISA S PORTER
United States Magistrate Judge

16-cv-00501-H (DHB)