UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SKYLINE WESLEYAN CHURCH,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF MANAGED HEALTH CARE; MICHELLE ROUILLARD, in her official capacity as Director of the California Department of Managed Health Care,<br><br>　　　　　　　　　　Defendants. | Case No.: 3:16-cv-0501-CAB-(DHB)<br><br>**[TENTATIVE] ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br>**[Doc. Nos. 67, 68]** |

　　　This matter comes before the Court on Plaintiff's Motion for Summary Judgment [Doc. No. 67] and on Defendants' Cross Motion for Summary Judgment, or in the Alternative for Summary Adjudication, of Claims (or Defenses) [Doc. No. 68]. The motions have been fully briefed and the Court held oral argument on February 26, 2018. For the following reasons, Defendants' motion is granted and Plaintiff's motion is denied.

## BACKGROUND

　　　In California, the Department of Managed Health Care ("DMHC") is one of two state entities charged with overseeing the health coverage market, enforcing California laws and regulating health care service plans. Its responsibilities include ensuring that

1

health care plans in California comply with the Knox-Keene Health Care Service Plan Act by providing "enrollees with access to quality health care services and protect and promote the interests of enrollees." CAL. HEALTH & SAFETY CODE § 1341(a); [Doc. No. 67-6 at 246-248]. Defendant Rouillard is the Director of the DMHC. [Doc. No. 67-6 at 432.]

Plaintiff is a non-profit Christian church located in La Mesa California, organized exclusively for religious purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code. [Doc. No. 67-3 at 7-14.] Skyline Church believes that abortion is a sin and is incompatible with the Bible's teachings. [*Id.* at 2, ¶9.] As a member of the Wesleyan denomination, Skyline Church follows and operates in accordance with *The Discipline of the Wesleyan Church*. [*Id.* at 2, ¶ 6.] Thus, it agrees with the Wesleyan Church's position that an abortion is only permissible in:

> rare pregnancies where there are grave medical conditions threatening the life of the mother, which would raise a serious question about taking the life of the unborn child. In such a case, a decision should be made only after very prayerful consideration following medical and spiritual counseling.

[Doc. No. *Id.* at 44.]

On August 22, 2014, Defendant Rouillard sent letters to seven group health plans[1] that had limited or excluded coverage for termination of pregnancies. [Doc. No. 67-9 at 56-57; Doc. No. 68-5 at 8-21.] The letters explained that the "DMHC has reviewed the relevant legal authorities and has concluded that it erroneously approved, or it did not object to such discriminatory language in some evidence of coverage (EOC) filings." [Doc. No. 67-9 at 56-57; Doc. No. 68-5 at 8-21.] Further, the stated purpose of the letters was to:

---

[1] The seven plans who were recipients of the letters were: (1) Aetna Health of California, Inc., ("Aetna"); (2) Blue Cross of California ("Blue Cross'); (3) California Physicians' Services, dba Blue Shield of California ("Blue Shield); (4) GEMCare Health Plan, Inc., dba ERD, Inc., Physicians Choice by GEMCare Health Plan ("GEMCare"); (5) Health Net of California ("Health Net"); (6) Kaiser Foundation Health Plan, Inc., dba Kaiser Foundation. Permanente Medical Care Program ("Kaiser') ; and (7) UHC of California ("UHC").

> remind plans that the Knox-Keene Health Care Service Plan Act of 1971 (Knox Keene Act) requires the provision of basic health care services and the California Constitution prohibits health plans from discriminating against women who choose to terminate a pregnancy.  Thus, all health plans must treat maternity services and legal abortion neutrally.
> Exclusions and limitations are also incompatible with both the California Reproductive Privacy Act and multiple California judicial decisions that have unambiguously established under the California Constitution that every pregnant woman has the fundamental right to choose to either bear a child or have a legal abortion.  A health plan is not required to cover abortions that would be unlawful under Health & Safety Code § 123468.

[Doc. No. 67-9 at 56; Doc. No. 68-5 at 8, 10, 12, 14, 16, 18, 20.][2]  The letter informed the issuers of the health care plans that the plans must be amended to "remove discriminatory coverage exclusions and limitations," including but not limited to, "any exclusion of coverage for "voluntary" or "elective" abortions and/or any limitations of coverage to only "therapeutic" or "medically necessary" abortions."   [Doc. No. 67-9 at 57; Doc. No. 68-5 at 9, 11, 13, 15, 17, 19, 21.]  Upon receipt of the letters all of the issuers amended their health plan filings to eliminate the abortion exclusions.  [Doc. No. 78-3 at 156.]

Before August 22, 2014, Skyline Church had an employee health plan that restricted abortion coverage consistent with the Church's religious beliefs. [Doc. No. 67-6 at 45-46, 132-33.]  On September 3, 2014, Aetna, Skyline Church's health insurance provider at the time, responded to the DMHC's letter by removing reference to voluntary termination of pregnancy exclusions.  [Doc. No. 67-9 at 63-64.]

In October of 2014 and 2016, Skyline Church contacted its insurance broker, Mr. Himmer, to discuss the possibility of obtaining a religious exemption from the abortion coverage requirement and purchasing a plan that restricted abortion coverage consistent

---

[2] A footnote indicates that "[a]lthough health plans are required to cover legal abortions, no individual health care provider, religiously sponsored health carrier, or health care facility may be required by law or contract in any circumstances to participate in the provision of or payment for a specific service if they object to doing so for reasons of conscience or religion. [Doc. No. 67-9, fn. 3 at 56; Doc No. 68-5 fn. 3 at 8, 10, 12, 14, 16, 18, 20.]

with the Church's religious beliefs. [Doc. No. 67-4 at 2, ¶¶4-5; Doc. No. 67-6 at 50, 130-133, 186-188.] Mr. Himmer informed the Church that all of the available employee health care plans were required to provide coverage for elective abortion. [Doc. No. 67-4 at 2, ¶¶4, 5; Doc. No. 67-6 135-136, 186-187.] Daniel Grant, the executive pastor and chief financial officer of Skyline Church, did not make inquiries with any other churches as to the medical care plans they subscribe to and saw no reason "to try and seek out any other insurance because it would have been against the law to have any insurance that didn't cover" abortion but did contemplate joining a medical sharing ministry and self-insurance. [Doc. No. 67-6 at 83-84, 135-139.]

Subsequently, the DMHC informed the health care plans that it would grant them an exemption from the requirements it had detailed in the August 22, 2014 letter for products offered exclusively to entities that meet the definition of a "religious employers" as defined in the California Health and Safety Code 1367.25(b)(1). [Doc. No. 67-6 at 360-367; Doc. No. 68-5 at 31.] DMHC also allowed Anthem Blue Cross to offer a plan to religious employers which limits termination of pregnancy to situations involving rape, incest or where the woman's life is in danger. [Doc. Nos. 67-1 at 6-35; 67-6 at 359-368; 67-6 at 477; 68-5 at 5 ¶ 5; 78-3 at 156.] A declaration from Sarah Ream, the Deputy Director of the Office of Plan Licensing at the DMHC, executed on November 15, 2017, attests "[t]o date, no plan has requested an exemption that would mandate that women who become pregnant as a result of rape or incest be forced to carry to term." [Doc. No. 68-4 at ¶ 2.]

On February 4, 2016, Plaintiff filed a complaint for declaratory and injunctive relief and nominal damages in San Diego County Superior Court against Defendants, alleging claims for (1) violation of the Free Exercise Clause of the First Amendment of the United States Constitution; (2) violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution; (3) violation of the Establishment Clause of the First Amendment of the United States Constitution; (4) violation of the Establishment and Free Exercise Clauses of Article I, Section 4 of the California Constitution; (5) violation of the Equal Protection Clause of Article I, Section 7 of the California

Constitution; and (6) violation of the California Administrative Procedure Act ("APA"), California Government Code § 11340, *et seq*. [Doc. No. 1 at 9-29.] Plaintiff alleges that it wishes to provide health coverage to its employees in a way that "does not cause it to pay for abortions" and that participating in or paying for a plan that provides for abortions in circumstances not limited to endangering the mother's life, is inconsistent with its beliefs and is a grave sin. [*Id.* ¶¶ 23, 29.] On June 20, 2016, the Honorable Marilyn L. Huff, granted Defendants' motion to dismiss Plaintiff's equal protection claims and denied their motion to dismiss Plaintiff's remaining claims. [Doc. No. 28.]

On November 11, 2017, the parties filed their cross motions for summary judgment. [Doc. Nos. 67, 68] Plaintiff seeks judgment in its favor on the free exercise claims, establishment clause claims and APA claims. [Doc. No. 67] In support, Plaintiff asserts that the undisputed facts show Defendants have substantially burdened the Church's religious beliefs and interfered with its ability to conduct its internal affairs consistent with its religious beliefs about abortion. Further, Plaintiff contends that after issuing that abortion coverage requirement Defendants exercised their discretionary exemption authority in a way that prefers some religious beliefs over others. Finally, Plaintiff posits that Defendants' new interpretation of the Knox-Keene Act conflicts with existing state and federal law.

Defendants contest Plaintiff's Article III standing to bring this suit, asserting that: (1) Plaintiff cannot demonstrate an injury in fact; (2) the alleged injury is not traceable to Defendants; and (3) the alleged injury would not be addressable by a favorable decision. Defendants also contend that Plaintiff has neither demonstrated a Constitutional nor APA violation. [Doc. No. 68.] Since the cross motions for summary judgment request adjudication of the same issues and contain arguments common to both, the Court will address the motions together.

//
//

## DISCUSSION

### I. Legal Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any , show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Entry of summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "When parties submit cross-motions for summary judgment, '[e]ach motion must be considered on its own merits." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (quotations and citations omitted). If the cross-motions are before the court at the same time, the court is obliged to consider the evidence proffered by both sets of motions before ruling on either one. *Id.* at 1134.

### II. Ripeness of Plaintiff's Claims

Defendants standing arguments raise a ripeness question that compels discussion. *See Reno v. Catholic Soc. Servs., Inc.,* 509 U.S. 43, 57 n.18 (1993) ("Even when a ripeness question in a particular case is prudential" the court "may raise it on [its] own motion and 'cannot be bound by the wishes of the parties.'") (citing *Reg'l Rail Reorganization Act Cases,* 419 U.S. 102, 138 (1974)). "Ripeness is a justiciability doctrine designed to prevent the courts through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative polices, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) *(*quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-49 (1967)). Whether an administrative decision is ripe for judicial review requires the court evaluate "(1) the fitness of the issues for judicial decision and (2) the hardship to

the parties of withholding court consideration." *National Park Hospitality Ass'n,* 538 U.S. at 808. *See also Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 891 (1990) ("a regulation is not ordinarily considered the type of agency action "ripe" for judicial review [] until the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him.") Without considering the merits of either parties' arguments, the Court has determined the issues presented are not appropriate for judicial resolution at this time.

This finding is based on a myriad of factors. From the evidentiary record, the Court concludes that no health care plan has actually been asked to provide Plaintiff with a policy that contains its desired abortion limitations. Relatedly, the Court finds that no evidence has been presented that any health plan has approached the DMHC seeking an exemption that would satisfy Plaintiff's beliefs. This conclusion is supported by the declaration of Sarah Ream, the Deputy Director of the Office of Plan Licensing who attested that "no plan has requested an exemption that would mandate that women who become pregnant as a result of rape or incest be forced to carry to term," [Doc. No. 68-4 at ¶ 2], and the deposition testimony submitted by the parties in support of their motions. Additionally, Plaintiff has not communicated directly with the DMHC regarding its desired exemption, choosing instead to discuss its requirements with is its insurance broker, Mr. Himmer. [Doc. No. 67-4 at 2, ¶¶4-5; Doc. No. 67-6 at 50, 130-133, 186-188.] Mr. Himmer, in turn, communicated with Aetna regarding religious employers providing coverage for elective abortions, but it does not appear that he contacted any other plans or the DMHC before reporting to Plaintiff that all of the available employee health care plans are required to provide coverage for elective abortion. [Doc. No. 67-4 at 2, ¶¶4, 5; Doc. No. 67-6 at 135-136, 186-187.]

Neither has it be demonstrated that should a health care plan apply for such an exemption, Defendants would deny it or that such an application would be futile. To the contrary, at her deposition Defendant Rouillard left open the possibility of allowing an

exemption as desired by Plaintiff. [Doc. No. 67-6 at 475-478.] Moreover, following the issuance of the August 22, 2014 letters, the DMHC informed the health care plans that it would grant them an exemption from the requirements of offering voluntary and elective abortions to religious employers and allowed Anthem Blue Cross to offer religious employers a plan that limits abortion to situations involving rape, incest or where the woman's life is in danger. [Doc. Nos. 67-1 at 6-35; Doc. No. 67-6 at 359 -368, 477; Doc. No. 68-5 at 5 ¶ 5, 31; Doc. No. 78-3 at 156.] At this point in time it cannot be said that the DMHC would deny a health care plan's request to offering the exemption sought by Plaintiff because no such plan has been submitted.

As to the hardship inquiry, there is no evidence before the Court to demonstrate that deferral of review of Plaintiff's claims will result in real hardship. The potential hardship of funding a health care plan that offers abortions in situations that conflict with the religious beliefs held by Skyline Church is ameliorated by the Church's ability to seek alternative forms of health insurance for its employees.

Thus, while the decision to require health care plans to remove discriminatory coverage and exclusions related to voluntary and elective abortions may well be a definitive and final decision on the part of the DMHC, the decision regarding the types of exemptions to confer religious employers is far from settled. Until the DMHC receives and denies approval of a health care plan that reflects Plaintiff's religious beliefs, Plaintiff's claims are not ripe.

## CONCLUSION

In light of the foregoing, Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE** because they are not ripe for adjudication.