ROB BONTA
Attorney General of California
KARLI EISENBERG
Supervising Deputy Attorney General
MELISSA RIESS
HAYLEY PENAN
Deputy Attorneys General
State Bar No. 313693
1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2550
Telephone: (916) 210-7785
Fax: (916) 324-5567
E-mail: Hayley.Penan@doj.ca.gov
*Attorneys for Defendants,*
*California Department of Managed Health*
*Care, Mary Watanabe in her official*
*capacity as Director of the California*
*Department of Managed Health Care*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SKYLINE WESLEYAN CHURCH,** | 3:16-cv-00501-LL-MSB |
| Plaintiff, | **DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION, OF CLAIMS (OR DEFENSES)** |
| v. | |
| **CALIFORNIA DEPARTMENT OF MANAGED HEALTH CARE; MARY WATANABE, in her official capacity as Director of the California Department of Managed Health Care,** | Date: April 6, 2022<br>Time: 1:30 PM<br>Courtroom: 2B<br>Judge: Hon. Linda Lopez<br>Action Filed: Feb. 26, 2016 |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................................... 1

Statutory Background ...................................................................................... 2

Factual Background ......................................................................................... 4

    I.    As a Result of Media Inquiries Regarding Employers Restricting Access to Abortion Coverage in Employee Health Plans, DMHC Conducted a Legal Analysis to Determine What is Required under California Law ........................................................... 4

    II.    DMHC Issued the August 22, 2014 Letters to Seven Health Plans, Reflecting What is Required by Law ................................. 5

    III.    DMHC Has Never Refused an Exemption Request Based on Religious Hardship ..................................................................... 6

    IV.    No Plan Has Requested an Exemption That Would Satisfy Plaintiff's Religious Beliefs ........................................................ 6

Argument ........................................................................................................ 7

    I.    DMHC Has a Compelling Interest in Only Considering Exemption Requests from Entities that It Regulates ..................... 8

        A.    DMHC Has a Compelling Government Interest in Not Opening the Floodgates to Exemption Requests from 26 Million Enrollees ............................................................... 9

        B.    DMHC Has a Compelling Government Interest in Preventing Third Party Harms to Enrollees ....................... 12

        C.    DMHC Has a Compelling Government Interest in Not Expanding its Own Statutory Authority ................................ 16

    II.    Limiting Exemption Requests to Licensed Health Plans Is Narrowly Tailored to, and Is the Least Restrictive Means of, Achieving DMHC's Compelling Government Interests ................... 19

Conclusion .................................................................................................... 21

i

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Alvarez v. IBP, Inc.*
339 F.3d 894 (9th Cir. 2003) ................................................................. 19

*Burwell v. Hobby Lobby Stores, Inc.*
573 U.S. 682 (2014) ....................................................................*passim*

*Church of the Lukumi Babalu Aye, Inc. v. Hialeah*
508 U.S. 520 (1993) ................................................................. 7, 20

*City of Bangor v. Citizens Commc'ns Co.*
532 F.3d 70 (1st Cir. 2008) ................................................................. 19

*Comite De Padres De Familia v. Honig*
192 Cal. App. 3d 528 (1987) ................................................................. 17

*Dr. A v. Hochul*
142 S. Ct. 552 (2021) ................................................................. 9

*Emp't Div., Dep't of Human Resources of Or. v. Smith*
494 U.S. 872 (1990) ................................................................. 11

*Estate of Thornton v. Caldor, Inc.*
472 U.S. 703 (1985) ................................................................. 14

*Fisher v. Univ. of Tex.*
136 S. Ct. 2198 (2016) ................................................................. 8

*FMC Corp. v. Holliday*
498 U.S. 52 (1990) ................................................................. 11

*Fulton v. City of Phila.*
141 S. Ct. 1868 (2021) ................................................................. 7

*Haines v. N.H. Dep't of Health & Human Servs*
2009 WL 1307203 (D.N.H. Apr. 28, 2009) ................................................................. 10

*Healthcare Is a Legal Duty, Inc. v. Min De Parle*
212 F.3d 1084 (8th Cir. 2000) ................................................................. 10

ii

1
2

# TABLE OF AUTHORITIES
## (continued)

**Page**

3
4

*Hernandez v. Comm'r*
    490 U.S. 680 (1989) ...................................................................... 11

5
6

*Kaemmerling v. Lappin*
    553 F.3d 669 (D.C. Cir. 2008) ........................................................ 20

7
8

*Lyng v. Nw. Indian Cemetery Protective Ass'n*
    485 U.S. 439 (1988) ...................................................................... 10

9
10

*McCullen v. Coakley*
    573 U.S. 464 (2014) ...................................................................... 19

11

*Missionary Guadalupanas of Holy Spirit Inc. v. Rouillard*
    38 Cal. App. 5th 421 (2019) ............................................................. 3

12
13
14

*People ex rel. Dep't of Alcoholic Beverage Control v. Miller Brewing Co.*
    104 Cal. App. 4th 1189 (2002) ...................................................... 17

15
16

*Priests for Life v. U.S. Dep't of Health & Human Servs*
    808 F.3d 1 (D.C. Cir. 2015) ............................................................ 13

17
18

*Rea v. Blue Shield of Cal.*
    226 Cal. App. 4th 1209 (2014) ........................................................ 2

19

*Real Alternatives, Inc. v. Sec'y Dep't of Health & Human Servs*
    867 F.3d 338 (3rd Cir. 2017) ..................................................... 9, 10

20
21

*Religious Sisters of Mercy v. Azar*
    513 F. Supp. 3d 1113 (D.N.D. 2021) .............................................. 9

22
23

*Robinson v. Children's Hosp. of Bos.*
    2016 WL 1337255 (D. Mass. Apr. 5, 2016) .................................. 10

24
25

*Rodriguez v. U.S.*
    480 U.S. 522 (1987) ...................................................................... 11

26
27

*Sharon S. v. Super. Ct.*
    31 Cal. 4th 417 (2003) ................................................................... 19

28

1
2

# TABLE OF AUTHORITIES
**(continued)**

**Page**

3
4

*Sherbert v. Verner*
374 U.S. 398 (1963) ................................................................................. 8, 20

5
6

*Silvers v. Sony Pictures Entm't, Inc.*
402 F.3d 881 (9th Cir. 2005) ....................................................................... 18

7
8

*Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*
968 F.3d 738 (9th Cir. 2020) ....................................................................... 16

9

*State Bd. of Educ. v. Honig*
13 Cal. App. 4th 720 (1993) ........................................................................ 17

10
11

*States v. Christie*
825 F.3d 1048 (9th Cir. 2016) ..................................................................... 13

12
13

*Tex. Monthly, Inc. v. Bullock*
489 U.S. 1 (1989) ........................................................................................ 14

14
15

*Texas v. U.S.*
809 F.3d 134 (5th Cir. 2015) ....................................................................... 17

16
17

*Thomas v. Review Bd. of Indian Emp't Sec. Div.*
450 U.S. 707 (1981) .................................................................................... 19

18
19

*U.S. v. Lee*
455 U.S. 252 (1982) .............................................................................. 11, 14

20
21

*We The Patriots USA, Inc. v. Hochul*
17 F.4th 266 (2d Cir. 2021) ........................................................................... 9

22

*Williams-Yulee v. Fla. Bar*
575 U.S. 433 (2015) ................................................................................. 8, 11

23
24
25
26
27
28

iv

# TABLE OF AUTHORITIES
## (continued)

**Page**

**STATUTES**

California Health and Safety Code
§§ 1340-1399.864 ...................................................................................*passim*
§ 1340 ..........................................................................................................2
§ 1341 ..........................................................................................................2
§ 1341(a) ..................................................................................................2, 13
§ 1342.5 ......................................................................................................16
§ 1343 ....................................................................................6, 16, 17, 18
§ 1344 ........................................................................................6, 16, 17
§ 1345 ..............................................................................................17, 18
§ 1345(b)(1) ................................................................................................2
§ 1345(b)(5) ................................................................................................2
§ 1345(c) ....................................................................................................18
§ 1345(f)(1) ..................................................................................................2
§ 1345(p) ....................................................................................................18
§ 1351(b) ......................................................................................................3
§ 1351(f) ......................................................................................................3
§ 1351(g) ......................................................................................................3
§ 1352.1(a) ...................................................................................................3
§ 1367 ................................................................................................16, 17
§ 1367(i) ..............................................................................................2, 3, 6
§ 1374.26 ....................................................................................................15
§ 1389.25 ....................................................................................................15
§ 123460, et seq. ..........................................................................................5

California Insurance Code
§ 10719 ......................................................................................................11

United States Code, Title 29
§ 1003(a) ....................................................................................................10

United States Code, Title 42
§ 201 et seq. .................................................................................................2

1
2

# **TABLE OF AUTHORITIES**
## **(continued)**

**Page**

3    **REGULATIONS**

4    California Code of Regulations, Title 28
5          § 1300.67(a).................................................................3
6          § 1300.67(f) ................................................................3
7    United States Code of Federal Regulations, Title 45
          § 144.103 ....................................................................2
8

9    **CONSTITUTIONAL PROVISIONS**

10   California Constitution ..........................................................5

11   United States Constitution, First Amendment.........................9, 13, 14, 21

12   **OTHER AUTHORITIES**

13   Deb Gordon, *Health Insurance Confusion Continues To Plague*
14        *Americans, New Data Show*, Forbes (Feb. 8, 2021),
          https://www.forbes.com/sites/debgordon/2021/02/08/health-
15        insurance-confusion-continues-to-plague-americans-new-data-
16        show/?sh=4af21c3f4667 ..................................................14

17   *DMHC Protects Consumers' Health Care Rights*, Dep't of Managed
18        Health Care,
19        https://wpso.dmhc.ca.gov/dashboard/MarketPlace.aspx .....................2

20   Larry Gordon, *Santa Clara University Drops Insurance for Elective*
21        *Abortions*, L.A. Times (Oct. 10, 2013),
          http://articles.latimes.com/2013/oct/10/local/la-me-ln-abortion-
22        university-20131010 .......................................................4

23   Margot Sanger-Katz, *It's Not Just You: Picking a Health Insurance*
24        *Plan Is Really Hard*, N.Y. Times (Dec. 11, 2020)
          https://www.nytimes.com/2020/12/11/upshot/choosing-health-
25        insurance-is-hard.html ....................................................14

26

27

28

vi

# <u>TABLE OF AUTHORITIES</u>
### (continued)

**<u>Page</u>**

Tracy Seipel, *Santa Clara University President Triggers Abortion Uproar*, Mercury News.com (Oct. 9, 2013), https://www.mercurynews.com/2013/10/09/santa-clara-university-president-triggers-abortion-uproar .......................................................... 4

*View All Health Plans*, Dep't of Managed Health Care, https://wpso.dmhc.ca.gov/hpsearch/viewall.aspx ................................................. 2

Defendants' Supplemental Brief (3:16-cv-00501-LL-MSB)

# INTRODUCTION

The Department of Managed Health Care (DMHC or the Department) does not regulate employers, including churches or other purchasers of health care service plans (health plans or Plans).  DMHC only regulates certain types of health plans, and when it learned that it had erroneously approved plan products that violated California law, it notified the seven health plans offering those products of this error by letter on August 22, 2014.  The August 22, 2014 letters stated that, under California law, all plans must provide coverage for lawful abortions.  Plaintiff Skyline Wesleyan Church challenges DMHC's issuance of the letters, but not the law underlying the letters.  Plaintiff also challenges DMHC's subsequent grant of a legally permissible exemption to a health plan that sought an exemption.  This exemption—for a Plan regulated by DMHC (Anthem Blue Cross)—accommodates religious opposition to abortion and is consistent with federal law.  Specifically, the exemption allows Anthem Blue Cross to offer coverage to qualifying "religious employers" that excludes abortion coverage except in the cases of rape, incest, and when the woman's life is in danger.  To date, no Plan has requested approval of a product that Plaintiff wishes to provide to its employees; namely, a product that would exclude abortion coverage except to save the life of the woman.  DMHC cannot force a health plan to provide such a product for Plaintiff.

Defendants' actions in not expanding the Plan exemption process under the Knox-Keene Act (Knox-Keene or the Act) to Plaintiff satisfies strict scrutiny.  DMHC has a compelling government interest in not extending the Knox-Keene exemption process to entities like Plaintiff that are not subject to its jurisdiction.  Any other interpretation would be unworkable, forcing DMHC to review exemption requests regarding myriad objections from any of the 26 million enrollees in DMHC-regulated Plans, leading to third-party harms by creating a patchwork of coverage for these enrollees, and would force DMHC to expand its jurisdiction beyond that delegated to it by the Legislature under the Act.  Limiting exemption requests to

licensed health plans is narrowly tailored to, and is the least restrictive means of, achieving these compelling government interests.

## STATUTORY BACKGROUND

DMHC regulates "health care service plans" under the Knox-Keene Health Care Service Plan Act of 1975, California Health and Safety Code §§ 1340-1399.864. [1] Cal. Health & Safety Code §§ 1340, 1341.[2]  DMHC regulates 94 full-service health plans, serving 26 million enrollees.[3]  DMHC is charged with executing the Act to ensure that Plans "provide enrollees with access to quality health care services and protect and promote the interests of enrollees."  § 1341(a).  The Act requires that Plans "provide to subscribers and enrollees all of the basic health care services," which includes "Physician services" and "Preventive health services."  § 1367(i); § 1345(b)(1), (5).  The Act authorizes the Director to define the scope of required basic healthcare services.  § 1367(i); *See Rea v. Blue Shield of Cal.*, 226 Cal. App. 4th 1209, 1215 (2014).  DMHC regulations broadly define "physician services" to include services provided by licensed physicians, and "preventive health services" to include "a variety of voluntary family planning services."  Cal. Code Regs. tit. 28, §

---

[1] Under state law, the term "Plan" refers to the company offering health coverage, as distinct from "product," which refers to a specific package of benefits and services that a Plan offers to purchasers.  The term "Plan" is defined under Knox-Keene as "[a]ny person who undertakes to arrange for the provision of health care services to subscribers or enrollees, or to pay for or to reimburse any part of the cost of those services, in return for a prepaid or periodic charge paid by or on behalf of the subscribers or enrollees."  Cal. Health & Safety Code § 1345(f)(1).  Under federal regulations promulgated under the Public Health Services Act, the entity that offers the coverage would be called a "health insurance issuer."  45 C.F.R. § 144.103; *see also* 42 U.S.C. § 201, et seq.  What is referred to here and under state law as a product—the specific package of benefits and services covered under a contract with a purchaser—would be referred to as a "plan" under these federal regulations.  *See id.*

[2] Unless otherwise noted, all statutory references are to the California Health and Safety Code.

[3] *View All Health Plans*, DEP'T OF MANAGED HEALTH CARE, https://wpso.dmhc.ca.gov/hpsearch/viewall.aspx (last visited Jan. 31, 2022, 4:39 PM); *DMHC Protects Consumers' Health Care Rights*, DEP'T OF MANAGED HEALTH CARE, https://wpso.dmhc.ca.gov/dashboard/MarketPlace.aspx (last visited Jan. 31, 2022, 4:41 PM).

1300.67(a), (f).   DMHC's August 22, 2014 letters reflect what is required by California law.  *Missionary Guadalupanas of Holy Spirit Inc. v. Rouillard,* 38 Cal. App. 5th 421, 437 (2019), *review denied* (Nov. 20, 2019) (concluding that "abortion services are unambiguously included in the statutory categories of 'basic health care services' set forth in the statute" and rejecting the argument "that voluntary abortions are necessarily inconsistent with regulatory language that limits the scope of 'basic health care services' to 'medically necessary' services").   Knox-Keene vests the DMHC Director with discretion to, "for good cause, by rule or order exempt a plan contract or any class of plan contracts"[4] from the requirement of providing all "basic health care services."  § 1367(i).

To obtain a license from DMHC to operate in the state, a Plan must submit documentation identifying coverage to be offered, materials to be issued to subscribers or enrollees, and the form of the contract to be issued to Plan subscribers. § 1351(f), (g); *see also* Pl.'s Ex. 4 (ECF 67-6) at 19-21.  Any amendments to coverage or other documents must be submitted to DMHC before the Plan may utilize them. § 1352.1(a); *see also* Pl.'s Ex. 4 (ECF 67-6) at 34, 28-35.  Unless DMHC objects by written notice within 30 days to the amendment on the basis that it is untrue, misleading, deceptive, or otherwise not in compliance with the Knox-Keene Act, the Plan may utilize the amended language.  *Id.*  A Plan that has been continuously licensed for the preceding 18 months may utilize amendments even before submission to DMHC under certain conditions.  § 1351(b).

///

---

[4] The different "classes" referenced in the Knox-Keene Act refer to the classes of regulated entities—health plans, not consumers, enrollees, or subscribers. See *infra* at 16-19 for full analysis.

# FACTUAL BACKGROUND

**I.    As a Result of Media Inquiries Regarding Employers Restricting Access to Abortion Coverage in Employee Health Plans, DMHC Conducted a Legal Analysis to Determine What is Required under California Law**

DMHC was alerted to the abortion coverage issue in October 2013 when Santa Clara University publicized its exclusion of abortion coverage from employee health plans. This issue quickly hit U.S. news outlets and, starting in October 2013, DMHC began receiving media inquiries. Pl.'s Exs. 15 (ECF 67-9); 8 (ECF 67-7) at 11, 17; Eisenberg Decl. Exs. C-D, G (ECF 78-3).[5] DMHC also received consumer inquiries, including from a professor at Santa Clara. *See, e.g.*, Eisenberg Decl. Exs. E-F, H (ECF 78-3).

In November 2013, after DMHC had begun its legal research, stakeholder groups, including the National Health Law Program (NHeLP), American Civil Liberties Union (ACLU), and Planned Parenthood, also began contacting DMHC requesting meetings.[6] Pl.'s Exs. 27, 28, 29, 32 (ECF 67-10); 23 (ECF 67-9); 10 (ECF 67-8) at 20:12-14 (general topic at meetings was on abortion coverage and whether health plans were required to provide it), 21:17-22:4 (discussed abortion coverage); 7 (ECF 67-7) at 45 (meetings discussed general topic of pregnancy termination).

---

[5] *See, e.g.*, Tracy Seipel, *Santa Clara University President Triggers Abortion Uproar*, Mercury News.com (Oct. 9, 2013), https://www.mercurynews.com/2013/10/09/santa-clara-university-president-triggers-abortion-uproar/; Larry Gordon, *Santa Clara University Drops Insurance for Elective Abortions*, L.A. Times (Oct. 10, 2013), http://articles.latimes.com/2013/oct/10/local/la-me-ln-abortion-university-20131010.

[6] Notably, these stakeholder groups routinely contact California governmental entities regarding healthcare issues, especially Planned Parenthood, which is a Medi-Cal provider. Pl.'s Ex. 11 (ECF 67-8) at 35.

4

## II.   DMHC ISSUED THE AUGUST 22, 2014 LETTERS TO SEVEN HEALTH PLANS, REFLECTING WHAT IS REQUIRED BY LAW

After reviewing relevant law and Plan documents, DMHC concluded that it had erroneously failed to object to abortion restrictions.  Accordingly, the Director, on August 22, 2014, sent letters to the seven Plans that had such restrictions "to remind plans that the [Knox-Keene Act] requires the provision of basic health care services and the California Constitution prohibits health plans from discriminating against women who choose to terminate a pregnancy.  Thus, all health plans must treat maternity services and legal abortion neutrally."  Wong Decl. (ECF 68-5) ¶ 5, Ex. A.

The letters also advised that these Plans' exclusions and limitations on pregnancy termination services are incompatible with reproductive privacy and choice rights established under the Reproductive Privacy Act and the California Constitution.  Wong Decl. (ECF 68-5) ¶ 5, Ex. A.  The Plans receiving the letters had previously provided coverage for some abortions, but their coverage documents contained abortion coverage "limitations or exclusions" that were discriminatory and incompatible with protections under state law.  *Id*.  The Director noted that limitations such as "any exclusion of coverage for 'voluntary' or 'elective' abortions and/or any limitation of coverage to 'therapeutic' or 'medically necessary' abortions" are "inconsistent with the Knox-Keene Act and the California Constitution."  *Id*.  Accordingly, the letters called on each Plan to amend current documents to ensure that they comply with the law.  *Id*. at ¶ 6.[7]  Each Plan made the necessary changes promptly and without objection.  Wong Decl. (ECF 68-5) ¶ 12.

---

[7] The letters noted that, "[a]lthough health plans are required to cover legal abortions, no individual health care provider, religiously sponsored health carrier, or health care facility may be required by law or contract in any circumstance to participate in the provision of or payment for a specific service if they object to doing so for reason of conscience or religion."  Compl. (ECF 1), Ex. 1 n.3.

### III. DMHC HAS NEVER REFUSED AN EXEMPTION REQUEST BASED ON RELIGIOUS HARDSHIP

To obtain an exemption from the requirements of the Knox-Keene Act, it is the Plan's responsibility to request one. §§ 1343, 1344, 1367(i). All health plans know that it is possible for them to seek such an exemption. Pl.'s Ex. 4 (ECF 67-6) at 132-33. To request an exemption, Plans generally file an amendment or a material modification that would include the new language, or a redlined version of the changes that they are seeking to make to the evidence of coverage documents. *See* Pl.'s Ex. 4 (ECF 67-6) at 147-48, 29.

Following issuance of the letters, one Plan, Anthem Blue Cross, sought an exemption from DMHC requesting approval of a contract limiting abortion coverage for "religious employers," as defined in state law, that would exclude abortion coverage except in the cases of rape, incest, or where the woman's life is in danger. Wong Decl. (ECF 68-5) ¶ 13. In October 2015, the Director granted Anthem's exemption request in full. *Id*. No health plan has sought an exemption for a product that excludes all abortion coverage, where the only exception is to protect the life of the woman. Ream Decl. (ECF 68-4) ¶ 2.

Plaintiff has failed to produce any evidence that any health plan offered such a product, even before August 2014. Although some health plans had language indicating that they did not cover "elective" or "voluntary" abortions, those terms were undefined, and there is no evidence in the record to indicate that such language excluded cases of rape and/or incest.

### IV. NO PLAN HAS REQUESTED AN EXEMPTION THAT WOULD SATISFY PLAINTIFF'S RELIGIOUS BELIEFS

Plaintiff is a Christian church that "believes and teaches that abortion violates the Bible's command against the intentional destruction of innocent human life" and that "participation in, facilitation of, or payment for an elective or voluntary abortion is a grave sin." Compl. (ECF 1) ¶¶ 21, 23. Plaintiff has not produced any evidence

6

demonstrating that a Plan has requested an exemption to offer a product that would meet Plaintiff's religious beliefs, i.e. a plan that excludes all abortion coverage except to protect the life of the woman. Nor could Plaintiff, because no Plan has made such a request. Ream Decl. (ECF 68-4) ¶ 2. DMHC's Director explicitly stated that she might grant such an exemption request—should she receive one from a regulated Plan. Pl.'s Ex. 6 (ECF 67-6) at 52-53. Plaintiff's "person most knowledgeable" regarding employee benefits testified that she was not sure whether Plaintiff's health plans included coverage for abortion in the case of rape and incest even *before* issuance of the August 22, 2014 letters. Pl.'s Ex. 3 (ECF 67-6) at 20, 22, 15, 13-15. Indeed, at the time of filing this lawsuit, Plaintiff's health plan was not among those deemed noncompliant by DMHC because that health plan did not exclude or limit abortion coverage. Compl. (ECF 1) ¶ 16, Ex. 1. Nor has Plaintiff opted to purchase a non-DMHC-regulated plan. Pl's Ex. 3 (ECF 67-6) at 12-13 (citing Pl.'s Ex. 2 (ECF 67-6) at 10-11, 61-66).[8]

## ARGUMENT

Defendants' actions in not expanding the Plan exemption process under Knox-Keene to Plaintiff survives strict scrutiny.[9] *Church of the Lukumi Babalu Aye, Inc. v. Hialeah* 508 U.S. 520 533, 531-32 (1993) (To satisfy strict scrutiny, a government action "must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest."). Here, Defendants have compelling reasons for not expanding the exemption framework to non-regulated entities and individuals, which is narrowly tailored to the government's goals. Opening up the exemption process to non-regulated entities would be unmanageable, requiring DMHC to

---

[8] Plaintiff has also not availed itself of the exempted Anthem product excluding abortion coverage in all instances except rape, incest, and to protect the life of the woman, which has been available since October 2015. In fact, although Plaintiff's Complaint acknowledges the existence of the Anthem exemption, when deposed, Plaintiff confessed that it was unaware of the available exemption. Pl.'s Ex. 3 (ECF 67-6) at 23:9-12.

[9] In the particular circumstances of this case, Defendants do not dispute that strict scrutiny applies. *See Fulton v. City of Phila.*, 141 S. Ct. 1868, 1877 (2021).

review exemption requests from entities not subject to its regulatory authority, and without a complete picture of the plan product coverage in its entirety. This would threaten extensive third-party harm to enrollees because it would allow plan products to be altered, eliminating coverage of medically necessary healthcare services that enrollees are entitled to by law. It would also force DMHC to expand its own jurisdiction beyond that delegated to it by the Legislature.

## I.   DMHC HAS A COMPELLING INTEREST IN ONLY CONSIDERING EXEMPTION REQUESTS FROM ENTITIES THAT IT REGULATES

Ensuring DMHC's exemption process is only available to DMHC-licensed Plans serves three compelling government interests: (1) preventing a flood of exemption requests from over 26 million enrollees—who may have objections to paying for healthcare varying from blood transfusions to vaccines to birth control—forcing DMHC to grant exemption requests in isolation; (2) preventing significant third-party harm to enrollees by allowing enrollees or subscribers, including employers, to opt out of legally-mandated healthcare coverage, creating a patchwork of healthcare benefits with gaps in coverage for those third parties—reimposing the very barriers to basic healthcare services access that the Legislature sought to eradicate with Knox-Keene; and (3) not expanding DMHC's jurisdiction beyond that specifically authorized by the Legislature. As noted, the government may restrict Free Exercise rights when necessary to advance compelling government interests when done in a narrowly tailored manner. *See, e.g.*, *Fisher v. Univ. of Tex.*, 136 S. Ct. 2198, 2208-10 (2016) (finding "educational benefits that flow from student body diversity" a compelling interest); *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 444 (2015) (finding state interest in upholding public confidence in judicial integrity compelling); *Sherbert v. Verner*, 374 U.S. 398, 406 (1963) (courts must analyze whether a compelling state interest "justifies the substantial infringement of [plaintiff's] First Amendment right."). Here, the government's compelling interests satisfy strict scrutiny.

### A. DMHC Has a Compelling Government Interest in Not Opening the Floodgates to Exemption Requests from 26 Million Enrollees

DMHC has a compelling interest in ensuring its statutory exemption process in Knox-Keene is only available to licensed health plans to avoid opening the floodgates to exemption requests from the 26 million enrollees with coverage from Plans that it regulates. As the depositions of Plaintiff's own witnesses demonstrate, individuals' beliefs regarding the scope of abortion coverage vary widely.[10] And abortion cannot be viewed in a vacuum. Many such coverage provisions for critical medically necessary services—for example those related to contraception, vaccinations, blood transfusions, end-of-life care, and gender-affirming care—might conflict with some potential enrollees' religious views. *See, e.g.*, *Dr. A v. Hochul*, 142 S. Ct. 552 (2021) (objections to COVID-19 vaccine requirements because fetal cells were used in vaccine production); *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014) (religious objections to providing contraceptive coverage for employees); *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266 (2d Cir.), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021) (religious objections to mandatory COVID-19 vaccine policy); *Religious Sisters of Mercy v. Azar*, 513 F. Supp. 3d 1113 (D.N.D. 2021), *judgment entered sub nom. Religious Sisters of Mercy v. Cochran*, No. 3:16-CV-00386, 2021 WL 1574628 (D.N.D. Feb. 19, 2021) (religious objections to performing or covering gender-transition procedures); *Real Alts., Inc. v. Sec'y Dep't of Health & Hum. Servs.*, 867 F.3d 338, 364 (3rd Cir. 2017) ("Medical treatments that some might view as objectionable are as varied as they are numerous."); *Robinson v. Child.'s Hosp. of Bos.*, 2016 WL 1337255 (D. Mass. Apr. 5, 2016) (religious objections to influenza vaccination); *Haines v. N.H. Dep't of Health & Hum. Servs.*, 2009 WL 1307203

---

[10] There is some discrepancy in the record as to the scope of the exemption Plaintiff wants in its health plan. *Compare, e.g.*, Pl.'s Ex. 1 (ECF 67-6) at 33 (exception permitted only where the physical life of the woman is "definitely threatened"); Pl.'s Ex. 2 (ECF 67-6) at 58 ("opposed to abortion in any situation"); Pl.'s Ex. 2 (ECF 67-6) at 60 (exception permitted in "unique situations"); Pl.'s Ex. 2 (ECF 67-6) at 60-61 (there may be "certain circumstances," including where there is danger to the life of the woman "or for others reasons").

(D.N.H. Apr. 28, 2009) (religious objections to mental health screening); *Child.'s Healthcare Is a Legal Duty, Inc. v. Min De Parle*, 212 F.3d 1084, 1088 (8th Cir. 2000) (religious groups object to all medical care and consider religion to be the "sole means of healing"). But the "government simply could not operate if it were required to satisfy every citizen's religious needs and desires." *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 452 (1988). If DMHC had to review exemptions related to the religious beliefs of all indirect consumers on aspects of healthcare coverage with which they take issue, operations would grind to a halt, especially for an entity like DMHC that regulates 94 full-service health plans, serving 26 million enrollees. *See Real Alts.*, 867 F.3d at 362-63 ("[F]act that the Government may require insurers to offer coverage for expenditures for certain services that some might find objectionable on religious grounds cannot form the basis of requiring the Government to adjust its program on behalf of all employees").

Plaintiff points to the existence of secular categorical exemptions from the abortion coverage requirement in law and the fact that DMHC has granted an individualized exemption request to one Plan as evidence against the compelling government interest in limiting exemptions to the Plans that it regulates. *See* Pl.'s Mem. Supp. Summ. J. (ECF 67-1) 15-16. But unlike the exemptions for DMHC-regulated Plans, the categorical exemptions are set out in statute, limited to a narrow set of Plans, and do not require any exemption request to be made by a Plan.[11] And any individualized exemptions that DMHC has granted to Plans are not comparable

---

[11] The categorical exemptions cited as examples by Plaintiffs apply to narrow classes of Plans that could be maintained by religious as well as secular entities, including colleges and universities that directly provide care to students and school employees (typically of limited scope at college clinics) or small self-administered Plans. DMHC regulation of these self-administered Plans generally would be preempted, in any event, by the Employee Retirement Income Security Act of 1974 (ERISA). *FMC Corp. v. Holliday*, 498 U.S. 52, 61 (1990); 29 U.S.C. § 1003(a). The Small Group Reinsurance Fund exemption has no potential relevance, as the Fund only provides financial support for Plans and does not directly support or provide services to subscribers or enrollees. *See* Cal. Ins. Code § 10719 (fund authorized "solely to allow carriers to share in financing the cost of covering high risk small employer groups").

to the exemption sought by Plaintiff because no enrollees or subscribers, including employers—whether religious or secular—sought, or were eligible to seek, those individualized exemptions.

Further, the mere existence of these exemptions does not weigh against the compelling government interests here.  No statute or rule "pursues its purposes at all costs," without reference to competing interests.  *Rodriguez v. U.S.*, 480 U.S. 522, 525-56 (1987).  For this reason, the fact that a statute or rule has made exceptions or failed to address the entire scope of a problem does not cast doubt on the strength of a governmental interest.  *See Williams-Yulee*, 575 U.S. at 449 (A "[s]tate need not address all aspects of a problem in one fell swoop; policymakers may focus on their most pressing concerns."); *Hernandez v. Comm'r*, 490 U.S. 680, 682 (1989) (discussing that the fact that the government "has already crafted some deductions and exemptions" in the tax code is "of no consequence").

The tax code, for example, contains many religious and secular exemptions, but that does not mean that the government's compelling interest in generating revenue is unworthy of credence or that additional accommodations to the tax code must be made for religious objectors.  *Hernandez*, 490 U.S. at 682; *U.S. v. Lee*, 455 U.S. 252 (1982); *see also Hobby Lobby*, 573 U.S. at 727 (acknowledging the government's argument that "[e]ven a compelling interest may be outweighed in some circumstances by another even weightier consideration").  Just as "[t]he tax system could not function if denominations were allowed to challenge the tax system because tax payments were spent in a manner that violates their religious belief," *Emp't Div., Dep't of Hum. Resources of Or. v. Smith*, 494 U.S. 872, 880 (1990), so too would DMHC be severely hampered in its operations if it were forced to review exemption requests from the 26 million enrollees in DMHC-regulated health plans that might have a religious objection to some aspect of their health coverage.

Another critical component of the government's compelling interest in limiting exemption requests to DMHC-licensed health plans is DMHC's compelling interest

in reviewing the actual plan documents that correspond to an exemption request as part of their decision-making process, as opposed to granting hypothetical requests— untethered to any comprehensive Plan coverage documents.  When a Plan requests an exemption, it generally files an amendment or a material modification showing the new language, or a redlined version of the changes that they are seeking to make to the evidence of coverage documents.  *See* Pl.'s Ex. 4 (ECF 67-6) at 147-48, 29.  In requesting that Defendants review and approve exemption requests from non-regulated entities or individuals, Plaintiff asks DMHC to approve *hypothetical* plan product documents, and to excuse some unknown health plan from compliance with California law.  Allowing exemption requests from the 26 million individuals who currently utilize a DMHC-regulated plan product related to *any* medical offering with which they have a religious objection, without the health plan at the table and without a clear picture of the whole plan product, would interfere with DMHC's ability to review and approve complete health plan products.

### B. DMHC Has a Compelling Government Interest in Preventing Third Party Harms to Enrollees

Permitting enrollees and subscribers, like Plaintiff, to submit exemption requests to DMHC would cause significant harm to third-party enrollees by allowing enrollees or subscribers, including employers, to opt out of legally-mandated healthcare coverage, creating a patchwork of healthcare benefits with gaps in coverage for those third parties.  DMHC's utmost duty under Knox-Keene is ensuring that Plans "provide enrollees with access to quality health care services and protect and promote the interests of enrollees."  § 1341(a).  It is paramount to DMHC's charge that it avoids causing third-party harms to enrollees.  DMHC has a compelling interest in protecting third-party enrollees from harm by ensuring that they obtain coverage for the healthcare to which they are entitled by law.  In contrast, allowing Plans to seek exemptions does not raise comparable concerns about third-party harms

because the existing framework for reviewing Plan exemptions allows DMHC to consider the exemption in the context of the Plan's product offerings.

The need to avoid third-party harm has been widely recognized as a compelling government interest.[12]  *See, e.g.*, *States v. Christie,* 825 F.3d 1048, 1056 (9th Cir. 2016) ("scrutiniz[ing] the asserted harm of granting specific exemptions to particular religious claimants" is an important part of the compelling government interest analysis); *Priests for Life v. U.S. Dep't of Health & Hum. Servs.,* 808 F.3d 1, 26 (D.C. Cir. 2015) (Kavanaugh, J., dissenting from the denial of rehearing en banc) ("The Government may *of course* continue to require religious organizations' *insurers* to provide contraceptive coverage to the religious organizations' employees, even if the religious organizations object." (first emphasis added)).  In *Hobby Lobby*, the Court instructed that "courts must take adequate account of the burdens a requested accommodation may impose on nonbeneficiaries," which "will often inform the analysis of the Government's compelling interest and the availability of a less restrictive means of advancing that interest."  573 U.S. at 729 n.37; *see also id.* at 739 (Kennedy, J., concurring) (religious exercise should not "unduly restrict other persons, such as employees, in protecting their own interests, interests the law deems compelling"); *see also Lee*, 455 U.S. 261 (rejecting Amish employer's religious claims that would "impose the employer's religious faith on the employees"); *Estate of Thornton*, 472 U.S. at 710 (invalidating statute that gave Sabbath observers an

---

[12] "A balanced approach is all the more in order when the Free Exercise Clause itself is at stake, not a statute designed to promote accommodation to religious beliefs and practices." *Hobby Lobby*, 573 U.S. at 745 (Ginsburg, dissenting) (citing *Wis. v. Yoder*, 406 U.S. 205, 230 (1972) ("This case, of course, is not one in which any harm to the physical or mental health of the child or to the public safety, peace, order, or welfare has been demonstrated or may be properly inferred."); *Estate of Thornton v. Caldor, Inc.*, 472 U.S. 703 (1985) (invalidating state statute requiring employers to accommodate an employee's Sabbath observance where that statute failed to take into account the burden such an accommodation would impose on the employer or other employees)).

Defendants' Supplemental Brief (3:16-cv-00501-LL-MSB)

1  absolute and unqualified right not to work on the Sabbath, thus "impos[ing]"
2  "significant burdens" on employees).[13]

3      Allowing individual enrollees or subscribers to obtain exemptions from Plan
4  coverage requirements in a vacuum would lead to coverage losses of medically
5  necessary care for individuals whose plan products could be altered to accommodate
6  a wide array of different religious objections by their employer or another enrollee
7  or subscriber of their Plan—care that they are entitled to under the law.  This would
8  result in a myriad of patchwork plan products without full coverage for all basic
9  health services—ultimately leading to enrollees being denied healthcare.  Insurance
10 is already incredibly confusing for consumers[14]—allowing for this type of ad-hoc
11 exemption process would make it nearly impossible for the average enrollee to
12 understand whether their Plan provides the coverage they need.  And this is nothing
13 compared to the harm that will arise when they are unable to receive medically
14 necessary care because it has been exempted from coverage in their plan product.

15     Allowing exemption requests from subscribers and enrollees would also create
16 a transparency problem—exacerbating this third-party harm.  When Plans request
17 changes to their plan products, DMHC can use its enforcement authority to require

18      [13] The Court should also be wary of running afoul of the Establishment
19 Clause if it were to grant Plaintiff's requested relief.  Courts have invoked the
   Establishment Clause to invalidate accommodations that "would require the
20 imposition of significant burdens on other employees."  *Estate of Thornton*, 472
   U.S. at 710.  "[T]he principal reason for adopting a strong presumption. . . is the
21 overriding interest in keeping the government . . . out of the business of evaluating
   the relative merits of differing religious claims. The risk that governmental
22 approval of some and disapproval of others will be perceived as favoring one
   religion over another is an important risk the Establishment Clause was designed to
23 preclude."  *Lee*, 455 U.S. at 263 n.2 (Stevens, concurring); *see also Tex. Monthly,
   Inc. v. Bullock*, 489 U.S. 1, 15 (1989) (plurality op.) (striking down a statute
24 exempting only religious periodicals from sales and use taxes (in part) because it
   "burdens nonbeneficiaries markedly" (i.e., non-religious periodicals)).

25      [14] Deb Gordon, *Health Insurance Confusion Continues To Plague
   Americans, New Data Show*, FORBES (Feb. 8, 2021),
26 https://www.forbes.com/sites/debgordon/2021/02/08/health-insurance-confusion-
   continues-to-plague-americans-new-data-show/?sh=4af21c3f4667; Margot Sanger-
27 Katz, *It's Not Just You: Picking a Health Insurance Plan Is Really Hard*, N.Y.
   TIMES (Dec. 11, 2020), https://www.nytimes.com/2020/12/11/upshot/choosing-
28 health-insurance-is-hard.html.

the Plans to notify enrollees of any changes that might affect their coverage.  *See, e.g.*, §§ 1389.25 ("No change in … coverage for an individual plan contract shall become effective unless the plan has provided a written notice of the change at least 10 days prior to the start of the annual enrollment period applicable to the contract or 60 days prior to the effective date of the contract renewal, whichever occurs earlier in the calendar year.), 1374.21 ("changes in coverage stated in a small group health care service plan contract shall not become effective unless the plan has delivered in writing a notice indicating the change or changes at least 60 days prior to the contract renewal effective date").   DMHC has no such authority to put transparency requirements on enrollees or subscribers, including employers, so it would be unable to enforce any requirement that an employer or other subscriber provide notice to its employees or other enrollees in its plan product of its intent to seek a coverage exemption, or of any plan product coverage changes resulting from the employer or other subscriber's requested exemption.[15]  Sufficient notice of any plan product changes is critical to ensuring that those that get coverage through an employer are aware of all the limitations that their employer has pushed through for the plan product.  Employees could lose access to critical medically necessary healthcare services without even being informed that their plan product no longer covers these

---

[15] To be sure, DMHC has the authority to promulgate a regulation requiring that a Plan notify its enrollees of coverage changes that result from an exemption request sought by an enrollee or employer subscriber. *See* §§ 1374.26 ("The director may, as required by this article, or from time to time as conditions warrant . . . adopt reasonable regulations, and amendments and additions thereto, as are necessary to administer this article" governing health care service plan coverage contract changes and notice), 1344 ("The director may, by regulation, modify the wording of any notice required by this chapter for purposes of clarity, readability, and accuracy, except that a modification shall not change the substantive meaning of the notice.").  However, a new notification requirement would impose additional burdens on DMHC to promulgate and then enforce this new requirement and would impose additional compliance burdens on the Plans.  This new burden on DMHC would also weigh on the Department of Insurance because of the existing statutory requirement that the Director "consult with the Insurance Commissioner prior to adopting any regulations applicable to health care service plans . . . for the specific purpose of insuring, to the extent practical, that there is consistency of regulations applicable to these plans and entities by the Insurance Commissioner and the Director of the Department of Managed Health Care."  § 1342.5.

services.  DMHC has a compelling interest in protecting these third parties from harm by ensuring that they have coverage for the medically necessary services that they are entitled to under the law.

### C. DMHC Has a Compelling Government Interest in Not Expanding its Own Statutory Authority

DMHC has a compelling interest in not expanding its authority beyond that granted to it by the California Legislature.  There is nothing in Knox-Keene that indicates that DMHC's enforcement authority was intended to apply to entities or individuals other than those health plans that it is authorized by statute to regulate. This includes its exemption authority.  *See* §§ 1343, 1344, 1367.  Any different interpretation of the Act would be contrary to California law, a point that the Ninth Circuit recognized in granting Defendants' Petition for Rehearing and amending its opinion to eliminate language that may have been read to suggest that DMHC may exempt, or be ordered to exempt, the *purchaser* or *subscriber* of a Plan, such as Plaintiff, from the requirements of the Knox-Keene Act.  *See Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, 968 F.3d 738, 747 (9th Cir. 2020); Defendants-Appellants' Pet. for Rehearing at 1-2, *Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, 18-55451 (ECF 58) (arguing that the original opinion had the "potential to create confusion by suggesting that a regulatory relationship exists between plan purchasers or subscribers and DMHC—when, in fact, no such regulatory relationship exists under California law").

Knox-Keene makes clear that neither enrollees nor subscribers are regulated under the Act, and DMHC is not free to disregard the will of the Legislature expressed in these statutes.  *See Tex. v. U.S.,* 809 F.3d 134, 183 n.191 (5th Cir. 2015) (Agency had no "leeway" to implement Deferred Action for Parents of American and Lawful Permanent Residents (DAPA) program because it "may not exercise its authority 'in a manner that is inconsistent with the administrative structure that Congress enacted into law'"); *see also People ex rel. Dep't of Alcoholic Beverage*

16

*Control v. Miller Brewing Co.*, 104 Cal. App. 4th 1189, 1198-99 (2002) ("[T]he Department's exercise of its authority must be consistent with the Legislature's delegation of authority, and any rule or administrative action that enlarges or exceeds the power delegated by the Legislature is void."); *St. Bd. of Educ. v. Honig*, 13 Cal. App. 4th 720, 752 (1993) ("no agency discretion to promulgate a regulation which is inconsistent with the governing statute"); *Comite De Padres De Familia v. Honig*, 192 Cal. App. 3d 528, 532 (1987) ("It is an axiom of administrative law . . . that an administrative agency has no discretion to exceed the authority conferred upon it by statute.").

Plaintiff cites the Director's exemption authority under Sections 1343, 1344, and 1367 of the Health and Safety Code as the source of exemptions that it claims should be available to it.  *See* Pl.'s Mem. Supp. Mot. Summ. J. (ECF 68-1) at 5. However, interpreted in context, these exemption provisions apply solely to the Plans that DMHC regulates under the Act.  "Person" as used in Section 1343 could only have been intended to mean a Plan or other entity regulated by DMHC.  The plain language must be read in context, and the context makes clear that "person" is used here to mean a health care service plan or other entity regulated by DMHC.  A "health care service plan" is defined in subdivision (f) of Section 1345 as "[a]ny *person* who undertakes to arrange for the provision of health care services to subscribers or enrollees… [or] [a]ny *person* … who solicits or contracts with a subscriber or enrollee in this state to pay for … the provision of health care services…" (emphasis added).  Clearly then, it is the Legislature's intent that a health care service plan is considered a "person" under the Act such that the use of the term "person" in Section 1343 be understood to refer to a health care service plan or other entity regulated by DMHC.  The reference to a "person" is just another way to refer to any entity or individual regulated by DMHC and subject to its enforcement jurisdiction.  "Person" is defined in subdivision (j) of Section 1345 to mean "any person, individual, firm, association, organization, partnership, business trust, foundation, labor organization,

17

corporation, limited liability company, public agency, or political subdivision of the state."  The definition of "person" does not mention enrollees or subscribers, which should be read as an intentional exclusion.  *See Silvers v. Sony Pictures Ent., Inc.*, 402 F.3d 881, 885 (9th Cir. 2005) (en banc) ("The doctrine of *expressio unius est exclusio alterius* 'as applied to statutory interpretation creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions.'").  Indeed, both "enrollee" and "subscriber" are separately defined within Section 1345.  § 1345(c), (p).  Accordingly, if enrollees and subscribers were intended to be included in the exemption provisions of Section 1343, the terms enrollee and subscriber would have been used, or the term "person" would have been defined to include "enrollees" and "subscribers."

Similarly, the reference in subdivision (b) of Section 1343 to "any class of persons or plan contracts" must also be read in context of subdivision (a) of that section, which provides that this "chapter shall apply to health care service plans and health care service plan contracts as defined in subdivisions (f) and (o) of Section 1345."  All the exemption provisions cited by Plaintiff are in Chapter 2.2 of Division 1 of the Health and Safety Code (encompassing Sections 1340-1399.874, inclusive).  It would make no sense to "exempt" a subscriber or enrollee that contracts with a regulated health plan "from this chapter" (Knox-Keene) when the entity is not subject to the requirements of the "chapter" to begin with.

Finally, even if it were not clear from the Knox-Keene Act that neither subscribers nor enrollees are regulated under the Act, DMHC is entitled to deference in connection with its interpretation of the state statutes it is charged with enforcing.  *See Alvarez v. IBP, Inc.*, 339 F.3d 894, 911 (9th Cir. 2003) (affording deference to state agency's interpretation of state statute that the agency enforces); *Sharon S. v. Super. Ct.*, 31 Cal. 4th 417, 436 (2003) (under California law, agency's "interpretation of a statute [it] is charged with enforcing deserves substantial weight,"

and such weight is even "greater" "where the agency has special expertise"); *see also City of Bangor v. Citizens Commc'ns Co.*, 532 F.3d 70, 94 (1st Cir. 2008) ("Federal courts generally defer to a state agency's interpretation of those statutes it is charged with enforcing").  Any other interpretation would require the Court to override DMHC's interpretation of the law it is charged with enforcing.

For these reasons, it would be an expansion of the authority delegated to DMHC by the Legislature if DMHC were to review exemption requests from subscribers or enrollees and DMHC has a compelling interest in not expanding its jurisdiction beyond that delegated to it by the Legislature.

## II.   LIMITING EXEMPTION REQUESTS TO LICENSED HEALTH PLANS IS NARROWLY TAILORED TO, AND IS THE LEAST RESTRICTIVE MEANS OF, ACHIEVING DMHC'S COMPELLING GOVERNMENT INTERESTS

Limiting DMHC's review of exemption requests to licensed, regulated health plans is narrowly tailored to achieve its compelling government interests.  Narrow tailoring requires that a government action restrict religious freedom no more than necessary to advance the government's compelling interest and that the government "seriously undertook to address the problem with the least intrusive tools readily available to it." *McCullen v. Coakley*, 573 U.S. 464, 494 (2014); *Thomas v. Rev. Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981).  For an action to be narrowly tailored, it must be neither "overbroad [n]or underinclusive in substantial respects because the proffered objectives are not pursued with respect to analogous nonreligious conduct and those interests could be achieved by narrower ordinances that burdened religion to a far lesser degree." *Lukumi*, 508 U.S. at 522.  DMHC's limitation of its exemption process to the entities it regulates satisfies both requirements.

Plaintiff fails to identify *any* less restrictive means to achieve these compelling government interests, let alone any less restrictive means that would work "equally well." *Hobby Lobby*, 573 U.S. at 731; *see also Sherbert*, 374 U.S. at 409 (rejecting alternatives that would be "unworkable"); *Kaemmerling v. Lappin*, 553 F.3d 669, 684

(D.C. Cir. 2008) (rejecting alternative methods of identification that would be "less effective").  The only option other than limiting exemption requests to DMHC-licensed Plans would be allowing *all* 26 million enrollees in DMHC-licensed Plans to request exemptions, seeking a hypothetical health plan product that fits the individual's religious beliefs—all without any Plan involvement or a complete review of the plan product coverage documents in their entirety.  As explained above, this is untenable and contrary to DMHC's compelling interests in only reviewing exemption requests from entities that are subject to its jurisdiction, and most importantly, would have dire consequences in terms of third-party harms.

In determining whether the government action is the least restrictive means of furthering a compelling interest, a key consideration is whether other alternatives would impose harm on third parties.  In *Hobby Lobby*, the Court instructed that "courts must take adequate account of the burdens a requested accommodation may impose on nonbeneficiaries," which "will often inform the analysis of the Government's compelling interest and the availability of a less restrictive means of advancing that interest."  573 U.S. at 729 n.37; *see also id.* at 739 (Kennedy, J., concurring) (religious exercise should not "unduly restrict other persons, such as employees, in protecting their own interests, interests the law deems compelling").  Any exemption process that allows Plaintiff to submit exemption requests directly to DMHC would harm third parties, as discussed in detail above.

Because limiting the exemption process to DMHC-licensed health plans is narrowly tailored to achieve the compelling interests of avoiding third party harms, maintaining a functional system for regulating health plan coverage, and ensuring DMHC doesn't expand its own jurisdiction, and Plaintiff has failed to identify any less restrictive means of furthering these interests, Defendants' actions survive strict scrutiny.  In short, Plaintiff failed to present evidence that would allow a reasonable fact-finder to conclude that the Department violated the Free Exercise Clause.

1

**CONCLUSION**

2      Defendants respectfully request that this Court grant Defendants' Motion for

3   Summary Judgment and dismiss Plaintiff's Complaint with prejudice.

4   Dated:  February 2, 2022                      Respectfully submitted,

5                                                 ROB BONTA
                                                  Attorney General of California
6                                                 KARLI EISENBERG
                                                  Supervising Deputy Attorney General
7

8

9                                                 */s/ Hayley Penan*

10                                                HAYLEY PENAN
                                                  MELISSA RIESS
11                                                Deputy Attorneys General
                                                  *Attorneys for Defendants,*
12                                                *California Department of Managed*
                                                  *Health Care, Mary Watanabe in her*
13                                                *official capacity as Director of the*
                                                  *California Department of Managed*
14                                                *Health Care*

15   SD2016600637
     35881553.docx

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants' Supplemental Brief (3:16-cv-00501-LL-MSB)

# CERTIFICATE OF SERVICE

Case Name:  **Skyline Wesleyan Church v.**     No.     **3:16-cv-00501-CAB-DHB**
            **CA DMHC**

I hereby certify that on <u>February 2, 2022</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION OF CLAIMS (OR DEFENSES)**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>February 2, 2022</u>, at Sacramento, California.

|  |  |
|---|---|
| Adrienne White | */s/ Adrienne White* |
| Declarant | Signature |

SD2016600637
35884873.docx