Jeremiah Galus (Arizona Bar No. 030469)*
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
jgalus@ADFlegal.org

Jacob E. Reed (Ohio Bar No. 99020)*
Alliance Defending Freedom
44180 Riverside Parkway
Lansdowne, VA 20176
(571) 707-4718
jreed@ADFlegal.org

Charles S. LiMandri (California Bar No. 110841)
Paul M. Jonna (California Bar No. 265389)
Jeffrey M. Trissell (California Bar No. 292480)
Freedom of Conscience Defense Fund
P.O. Box 9520
Rancho Santa Fe, CA 92067
(858) 759-9948
cslimandri@limandri.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SKYLINE WESLEYAN CHURCH**, <br><br>                Plaintiff, <br><br> v. <br><br> **CALIFORNIA DEPARTMENT OF MANAGED HEALTH CARE**; **MARY WATANABE**, in her official capacity as Director of the California Department of Managed Health Care, <br><br>                Defendants. | Case No.:  3:16-cv-00501-LL-MSB <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** <br><br> Date:         April 6, 2022 <br> Time:         1:30 p.m. <br> Courtroom: 2B <br> Judge:        Hon. Linda Lopez |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ........................................................................................................ 1

ARGUMENT ................................................................................................................ 2

    I.    The State's strict scrutiny analysis fails from the start because it defends the wrong government policy. ................................................................................ 2

    II.   The State cannot survive strict scrutiny as applied to Skyline. ........................... 4

        A.    The State's purported interests are not compelling. ................................. 4

            1.  The State's worry about 26 million people suddenly requesting religious exemptions is speculative and hypothetical. .......................... 5

            2.  The State's interest in preventing third-party harm is broadly formulated and undermined by categorical and individualized exemptions. ................................................................................................ 6

            3.  The State's interest in complying with state law cannot override its obligation to comply with the U.S. Constitution. ........................... 8

        B.    The Abortion Coverage Requirement is not narrowly tailored to achieve the State's purported interests. .................................................. 10

CONCLUSION ........................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Barone v. City of Springfield*,
  902 F.3d 1091 (9th Cir. 2018) ................................................................................5

*BedRoc Ltd., LLC v. United States*,
  541 U.S. 176 (2004) ..............................................................................................10

*Burson v. Freeman*,
  504 U.S. 191 (1992) ................................................................................................2

*Burwell v. Hobby Lobby Stores, Inc.*,
  573 U.S. 682 (2014) ..........................................................................................8, 11

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
  508 U.S. 520 (1993) ............................................................................................4, 7

*City of Boerne v. Flores*,
  521 U.S. 507 (1997) ................................................................................................2

*Consolidated Edison Co. of New York v. Public Service Commission of New York*,
  447 U.S. 530 (1980) ................................................................................................5

*Employment Division, Department of Human Resources of Oregon v. Smith*,
  494 U.S. 872 (1990) ................................................................................................1

*Estate of Thornton v. Caldor, Inc.*,
  472 U.S. 703 (1985) ................................................................................................8

*Foothill Church v. Watanabe*,
  No. 2:15-cv-02165 (E.D. Cal. filed Oct. 16, 2015) ................................................6

*Fulton v. City of Philadelphia*,
  141 S. Ct. 1868 (2021) ....................................................................................passim

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
  546 U.S. 418 (2006) ............................................................................................5, 6

*Missionary Guadalupanas of Holy Spirit, Inc. v. Rouillard*,
  251 Cal. Rptr. 3d 1 (Cal. Ct. App. 2019) ................................................................6

*Priests for Life v. United States Department of Health & Human Services,*
   808 F.3d 1 (D.C. Cir. 2015) ........................................................................................ 7

*Satawa v. Macomb County Road Commission*,
   689 F.3d 506 (6th Cir. 2012) ...................................................................................... 6

*Sherbert v. Verner*,
   374 U.S. 398 (1963) ................................................................................................... 5

*Skyline Wesleyan Church v. California Department of Managed Health Care*,
   968 F.3d 738 (9th Cir. 2020) ........................................................................... 3, 9, 11

*South Bay United Pentecostal Church v. Newsom*,
   985 F.3d 1128 (9th Cir. 2021) .................................................................................. 10

*Thomas v. Review Board of Indiana Employment Security Division*,
   450 U.S. 707 (1981) ................................................................................................. 10

*Turner Broadcasting System, Inc. v. F.C.C.*,
   512 U.S. 622 (1994) ................................................................................................... 5

*United States v. Lee,*
   455 U.S. 252 (1982) ................................................................................................ 7-8

*United States v. Virginia,*
   518 U.S. 515 (1996) ................................................................................................... 6

*Watchtower Bible & Tract Society of New York, Inc. v. Village of Stratton*,
   536 U.S. 150 (2002) ................................................................................................... 5

**Statutes**

Cal. Health & Safety Code § 1343(b) ............................................................................ 7, 9

Cal. Health & Safety Code § 1343(e)(2) ........................................................................... 7

Cal. Health & Safety Code § 1344(a) ..................................................................... 7, 9, 10

Cal. Health & Safety Code § 1345(j) .............................................................................. 10

Cal. Health & Safety Code § 1367(i) ................................................................................ 7

Cal. Health & Safety Code § 1367.25(c) ........................................................................ 11

**Constitutional Provisions**

U.S. Const. art. VI, cl. 2 ................................................................................................ 8

# INTRODUCTION

In *Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021), the Supreme Court reaffirmed that when a law contains a "system of individual exemptions" the government "may not refuse to extend that [exemption] system to cases of 'religious hardship' without compelling reason." *Id.* at 1878 (quoting *Employment Division, Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 884 (1990)). Yet that is what happened here.

In August 2014, the California Department of Managed Health Care and its director (the "DMHC" or "State") mandated elective abortion coverage in the healthcare plans of churches and religious organizations, even though the law allowed the DMHC to grant exemptions for "good cause" or "if in the public interest." The State previously defended that decision by claiming the Abortion Coverage Requirement is "neutral" and "generally applicable" and therefore subject only to rational basis review. But *Fulton* took that argument off the table. So the State now concedes that its exemption-riddled coverage requirement is not generally applicable and is in fact subject to strict scrutiny. *See* Defs.' Suppl. Br. in Supp. of Mot. for Summ. J. 15, ECF No. 127 ("DMHC Br.").[1]

Yet tellingly, the State's supplemental brief does not even try to defend the August 2014 coverage mandate. And how could it after *Fulton*? The Supreme Court there held that the mere "creation of a system of exceptions" undermines any assertion that the challenged law "can brook no departures." *Fulton*, 141 S. Ct. at 1882. So rather than defend its decision to enforce the coverage requirement against Skyline's plan, the State now defends its subsequent decision to not fix the harm that it caused. In the State's view, redressing Skyline's injury after the fact could open the "floodgates" to additional requests for religious exemptions, could result in "third-party harm," and could cause the DMHC to "exceed" its "statutory authority." DMHC Br. 16. But these miss the point of this lawsuit. Skyline is challenging the constitutionality of the decision to enforce the

---

[1] For ease of reference, all page number citations refer to the ECF page numbers assigned by the Court's CM/ECF system.

Abortion Coverage Requirement in the *first place*. The State's decision in August 2014 to eliminate existing exemptions and to enforce the coverage requirement against all healthcare plans, including Skyline's, is what must be subjected to strict scrutiny. And on that point, the State's supplemental brief is strikingly silent.

What's more, the State's newly asserted reasons for not remedying the harm that it caused does not satisfy strict scrutiny anyway. Indeed, none of the purported governmental interests are "compelling" because they are entirely hypothetical, speculative, and undermined by categorical and individualized exemptions. Nor is applying the Abortion Coverage Requirement to Skyline's healthcare plan narrowly tailored, because there are many less restrictive ways to accomplish these interests, and none of them involve forcing Skyline to cover elective abortions in violation of its beliefs. Simply put, "it is the rare case in which . . . a law survives strict scrutiny," *Burson v. Freeman*, 504 U.S. 191, 211 (1992), and this is not such a rare case. The Court should deny the State's motion and grant summary judgment in favor of Skyline.

## ARGUMENT

### I. The State's strict scrutiny analysis fails from the start because it defends the wrong government policy.

The State says it can survive the "most demanding test known to constitutional law," *City of Boerne v. Flores*, 521 U.S. 507, 534 (1997), because it has a compelling interest "in only considering exemption requests from entities that it regulates," which justifies "not expanding the exemption framework" to Skyline, DMHC Br. 15–16. But that focuses on the wrong policy. Skyline is challenging the DMHC's decision to enforce the Abortion Coverage Requirement against its healthcare plan in the first place, not the process by which the DMHC may later provide exemptions.

To satisfy strict scrutiny, the government must prove that *the policy that burdens* the plaintiff's religious exercise "advances interests of the highest order" and is "narrowly tailored to achieve those interests." *Fulton*, 141 S. Ct. at 1881 (cleaned up). Here, the government policy that substantially burdens Skyline's religious exercise is the

DMHC's "directive to cover abortion services, as captured through both the underlying provisions of California law and the [August 22, 2014] Letters." *Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, 968 F.3d 738, 744 (9th Cir. 2020). Yet the DMHC does not even try to justify this initial enforcement decision.

Rather, the DMHC has resorted to defending its refusal to "expand[]" the "exemption framework" to Skyline and other religious organizations *after* enforcing the coverage requirement. DMHC Br. 15. But that decision is not what caused Skyline's constitutional injury; it just ensured the injury would continue. As the Ninth Circuit recognized, "this case involves a postenforcement challenge." *Skyline*, 968 F.3d at 748. "The situation might be different if the DMHC had made clear that no coverage changes would be required until individualized exemption requests had been presented and reviewed, but that is not what happened." *Id.* Instead, the DMHC told insurers—including Skyline's—that they must immediately amend their policies to cover elective abortion, and they all complied. *Id.* As a result, the Abortion Coverage Requirement burdened, and continues to burden, Skyline's religious exercise. The system of exemptions is relevant because it shows that the coverage requirement is not generally applicable and therefore must be subjected to strict scrutiny. *See* Pl.'s Suppl. Mem. of P. & A. in Supp. of Mot. for Summ. J. 13–16, ECF No. 126.

The DMHC previously understood this distinction. Both parties have briefed strict scrutiny before, yet this is the first time, in over six years of litigation, that the DMHC has asserted "not expanding" its "exemption process" as a governmental interest. DMHC Br. 9. Previously, the State tried to justify the Abortion Coverage Requirement by claiming interests in "ensuring compliance with state law," "ensuring that all Plans cover all 'basic health services,'" and "ensuring that Plans do not discriminate against women or violate their fundamental constitutional rights." Defs.' Mem. of P. & A. in Supp. of Mot. for Summ. J. 27, ECF No. 68-1. But these generic and selectively pursued interests

are insufficient for strict scrutiny, especially in light of *Fulton*.[2] So the DMHC has changed course, now arguing that it has an interest in considering subsequent exemption requests only when made directly by health insurers. But as explained below, that is not a compelling governmental interest. And in any event, it does not explain why the DMHC rescinded religious exemptions in the *first place*. Nor does it explain why the DMHC cannot independently announce that it will no longer enforce the coverage requirement against plans purchased by churches and religious organizations.

The State cannot save an unconstitutional policy and action (enforcement of the Abortion Coverage Requirement) by defending one that Skyline does not even challenge (the "exemption framework"). By trying to do so, its strict scrutiny argument fails from the start.

## II. The State cannot survive strict scrutiny as applied to Skyline.

To survive strict scrutiny, the State must prove that applying the Abortion Coverage Requirement to Skyline's healthcare plan "advances 'interests of the highest order' and is narrowly tailored to achieve those interests." *Fulton*, 141 S. Ct. at 1881 (quoting *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993)). It cannot do so.

### A. The State's purported interests are not compelling.

The State's supplemental brief identifies three governmental interests: (1) "preventing a flood of exemption requests from over 26 million enrollees"; (2) "preventing significant third-party harm to enrollees"; and (3) "not expanding DMHC's jurisdiction" by exempting Skyline. DMHC Br. 16. While the State invokes each of these purported interests in defense of the wrong policy, as explained above, none of them meet the State's burden under strict scrutiny.

---

[2] The DMHC has implicitly recognized as much, telling this Court that it was considering settlement because *Fulton* "changed [the] landscape." Defs.' Resp. to Pl.'s Ex Parte Mot. to Set Suppl. Briefing Schedule 4, ECF No. 117. Unfortunately, such consideration proved to be short-lived, and the DMHC decided to continue litigation rather than resolve this case. *See* Joint Mot. to Set Suppl. Briefing Schedule 2, ECF No. 120.

### 1. The State's worry about 26 million people suddenly requesting religious exemptions is speculative and hypothetical.

The State first says it must infringe Skyline's constitutional rights because accommodation would open the "floodgates to exemption requests from 26 million enrollees." DMHC Br. 17. But this argument just "echoes the classic rejoinder of bureaucrats throughout history: If I make an exception for you, I'll have to make one for everybody, so no exceptions." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 435–36 (2006). The Supreme Court has repeatedly rejected such "slippery-slope argument[s]." *Id.* at 436; *see also Sherbert v. Verner*, 374 U.S. 398, 407 (1963) (rejecting the state's speculation as "no more than a possibility" "that the filing of fraudulent claims by unscrupulous claimants feigning religious objections to Saturday work" would drain the unemployment benefits fund).

Hypothetical or "[m]ere speculation of harm" cannot "constitute a compelling state interest." *Consol. Edison Co. of N.Y. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 530, 543 (1980); *accord Fulton*, 141 S. Ct. at 1882 ("Such speculation is insufficient to satisfy strict scrutiny."). Thus, the State cannot meet its heavy burden by pulling out of thin air some worst-case-scenario; it must instead "demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way." *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 664 (1994). Actual evidence is required. *See, e.g.*, *Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Vill. of Stratton*, 536 U.S. 150, 169 (2002) (finding no compelling interest in crime prevention in part because there was no evidence of any crime related to the challenged law); *Barone v. City of Springfield*, 902 F.3d 1091, 1105 (9th Cir. 2018) (explaining that the government's asserted interest in regulating speech, "detached from any evidence in the record," could not justify a speech restriction).

Yet nothing in the record even remotely suggests that accommodating Skyline will lead to "26 million" exemption requests. DMHC Br. 17. To the contrary, the evidence shows that just five employers—four Christian churches, including Skyline, and a

Catholic order of nuns—have filed lawsuits seeking an exemption from the Abortion Coverage Requirement. *See Foothill Church v. Watanabe*, No. 2:15-cv-02165 (E.D. Cal. filed Oct. 16, 2015); *Missionary Guadalupanas of Holy Spirit, Inc. v. Rouillard*, 251 Cal. Rptr. 3d 1 (Cal. Ct. App. 2019). Respecting religion will not cause the sky to fall.

To survive, the Abortion Coverage Requirement must achieve "actual state purposes, not rationalizations for actions in fact differently grounded." *United States v. Virginia,* 518 U.S. 515, 535–36 (1996); *see also Satawa v. Macomb Cnty. Rd. Comm'n*, 689 F.3d 506, 523 (6th Cir. 2012) (cleaned up) (courts "cannot and will not uphold government action that abridges an enumerated constitutional right on the basis of a factitious governmental interest found nowhere but in the defendants' litigating papers"). Because the DMHC's argument rests on nothing more than "slippery-slope concerns that could be invoked in response to any [free-exercise] claim," *O Centro*, 546 U.S. at 435–36, the Court should reject it.

### 2. The State's interest in preventing third-party harm is broadly formulated and undermined by categorical and individualized exemptions.

The State next argues that allowing only health insurers to request an exemption will prevent third-party harm. But again, the State focuses on the wrong policy: Skyline is challenging the DMHC's decision to enforce the Abortion Coverage Requirement in the first place, not which entity may later request an exemption. Even so, the purported interest is not compelling for at least three independent reasons.

*First*, the fear of third-party harm is sheer speculation. "Rather than rely on 'broadly formulated interests,' courts must 'scrutinize[] the asserted harm of granting *specific* exemptions to *particular* religious claimants.'" *Fulton*, 141 S. Ct. at 1881 (emphasis added) (quoting *O Centro*, 546 U.S. at 431). And here, the record shows that all of Skyline's employees share its beliefs about abortion, so exempting the church will not result in any third-party harm. Decl. of Dr. James Garlow in Supp. of Pl.'s Mot. for Summ. J. ¶¶ 9, 14–15, ECF No. 67-3. The State has submitted no evidence to the contrary.

6

*Second*, the fact that there are numerous exceptions from the Abortion Coverage Requirement undermines any contention that the coverage requirement "can brook no departures." *Fulton*, 141 S. Ct. at 1882. The State's purported interest in ensuring elective abortive coverage for third-party enrollees cannot be compelling when the State already exempts entire categories of plans (and thus enrollees) from that coverage requirement. *See, e.g.*, Cal. Health & Safety Code § 1343(e)(2) (exempting "plan[s] directly operated by a bona fide public or private institution of higher learning"). So too when the director can grant additional exemptions for virtually any reason. *Id.* §§ 1367(i), 1343(b), 1344(a) (individualized exemptions for "good cause" or if "in the public interest"). "[A] law cannot be regarded as protecting an interest of the highest order when it leaves appreciable damage to that supposedly vital interest unprohibited." *Lukumi*, 508 U.S. at 547 (cleaned up).

The State's counterarguments also fail. It cites no authority for its proposition that the categorical exemptions do not undercut its interests because they are "set out in statute, limited to a narrow set of Plans, and do not require any exemption request." DMHC Br. 18. The fact remains that those plans do not have to provide elective abortion coverage. And its assertion that the previous individualized exemption given to Anthem Blue Cross is not comparable is inapposite. *Id.* at 18–19. It is the mere "creation of a system of exceptions" to the Abortion Coverage Requirement that undermines the State's claim that it must ensure all enrollees receive elective abortion coverage. *Fulton*, 141 S. Ct. at 1882.

*Third*, preventing speculative third-party harm is far from "widely recognized" as a compelling interest. DMHC Br. 21. In fact, none of the State's cited cases hold that avoiding third-party harm justifies infringements of constitutional rights. *See Priests for Life v. U.S. Dep't of Health & Hum. Servs.,* 808 F.3d 1, 26 (D.C. Cir. 2015) (Kavanaugh, J., dissenting from denial of rehearing en banc) (stating only that the government had a compelling interest in "facilitating access to contraception," and that he would have held the government regulation there *failed* strict scrutiny); *United States v. Lee,* 455 U.S. 252,

258 (1982) (finding a compelling interest in maintaining the national social security system, not in preventing harm by imposition of an employer's religious faith on employees); *Estate of Thornton v. Caldor, Inc.*, 472 U.S. 703 (1985) (Establishment Clause case that did not discuss compelling interests at all).

The Supreme Court's decision in *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014), also supports Skyline. In the same footnote the State cites, the Supreme Court explained that the government does not have an "entirely free hand to impose burdens on religious exercise so long as those burdens confer a benefit on other individuals." *Id.* at 729 n.37. Otherwise, "[b]y framing any Government regulation as benefiting a third party, the Government could turn all regulations into entitlements to which nobody could object on religious grounds, rendering [the Free Exercise Clause] meaningless." *Id.* That is precisely what the State's argument, if accepted, would do here.

### 3. The State's interest in complying with state law cannot override its obligation to comply with the U.S. Constitution.

The DMHC finally argues that it satisfies strict scrutiny because redressing the harm caused by the Abortion Coverage Requirement would impermissibly "expand[]" the DMHC's "statutory authority." DMHC Br. 24. This argument is also meritless.

To begin, the argument is just another way of saying the DMHC has a compelling interest in enforcing state law. But that is not, and could never be, a sufficient reason for violating Skyline's constitutional rights. *See* U.S. Const. art. VI, cl. 2 (Supremacy Clause).

Further, the argument is a rehashing of arguments already rejected by the Ninth Circuit. The DMHC previously argued that a court *could* not redress Skyline's injury; now it argues that a court *should* not redress the injury. Both arguments are based on the same mistaken premise: that the DMHC is powerless to fix the very injury that it caused. But as the Ninth Circuit aptly understood, a religious exemption for Skyline would not require the DMHC to exceed its "statutory authority" in any way. It would simply mean that the DMHC could not apply the coverage requirement "*to prevent approval* of a

8

health plan for Skyline that comports with Skyline's religious beliefs." *Skyline*, 968 F.3d at 750 (emphasis added). In other words, the DMHC could no longer tell health insurers that the Abortion Coverage Requirement requires *all* plans—including those provided to religious organizations and churches like Skyline—to cover elective abortion. Put another way, a favorable court ruling would simply undo the effect of the August 22, 2014 letters.

So like the Ninth Circuit, this Court should deny the DMHC's "litigation position" that Skyline's injury should be ignored until it "enlist[s] a willing insurer to make a[n] [exemption] request to the DMHC on its behalf." *Id.* at 753. As the Ninth Circuit explained, that would force Skyline "to persuade a third party to submit a request for a discretionary exemption—even though there appears to be no established procedure for doing so—and then wait an unknown amount of time for a response that may never come, all while Skyline's injury remains ongoing." *Id*. Such a position is untenable: the "DMHC has not identified any case"—and still cannot identify any case—"in which a party that was already injured was required to navigate th[is] type of ill-defined terrain." *Id.*

The DMHC's "statutory authority" argument is also wrong for another reason: the DMHC *can* grant exemptions to *anyone* (and has). Indeed, the record shows that before August 2014, the DMHC granted religious exemptions for specific employers. *See* ECF No. 67-9 at 50–53, Galus Decl., Ex. 19 (letter from DMHC approving abortion-coverage limitation for Catholic hospital system); *id.* at 12–22, Galus Decl., Ex. 17 (emails showing DMHC considering and approving exemption language for Catholic employer Daughters of Charity). That is because the plain language of the Knox-Keene Act gives the DMHC's director authority to exempt "*any* class of persons" from the Act's requirements, including the Abortion Coverage Requirement. Cal. Health & Safety Code § 1343(b) (emphasis added). She also can "classify persons" for the purpose of any "rules" and "prescribe different requirements for different classes." *Id.* § 1344(a). And she may "waive *any* requirement of *any* rule" if she determines that the "requirement is

not necessary in the public interest or for the protection of the public, *subscribers*, enrollees, or persons or plans." *Id.* (emphasis added).

The State contends that the term "person" must only mean a health care service plan because it "must be read in context." DMHC Br. 25. But in interpreting a statute, the "inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004). And here, the Act broadly defines "person" as "*any* person, individual, firm, association, organization, partnership, business trust, foundation, labor organization, corporation, limited liability company, public agency, or political subdivision of the state." Cal. Health & Safety Code § 1345(j) (emphasis added). The text is clear: the DMHC can exempt *any* person or other organization, including Skyline, from the Abortion Coverage Requirement.[3]

### B. The Abortion Coverage Requirement is not narrowly tailored to achieve the State's purported interests.

The final prong of the strict scrutiny test requires the State to show that the Abortion Coverage Requirement is "narrowly tailored to achieve" its purported compelling interests. *Fulton*, 141 S. Ct. at 1881. "Narrow tailoring requires that the State employ the 'least restrictive means' to advance" its interests. *S. Bay United Pentecostal Church v. Newsom*, 985 F.3d 1128, 1142 (9th Cir. 2021) (quoting *Thomas v. Review Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 718 (1981)). If the State "can achieve its interests in a manner that does not burden religion, it must do so." *Fulton,* 141 S. Ct. at 1881. Simply put, enforcing the Abortion Coverage Requirement against Skyline's healthcare plan was not (and is not) narrowly tailored to achieve the State's purported interests in preventing a

---

[3] The State's *expressio unius est exclusio alterius* argument fares no better. It contends that because "enrollee" and "subscriber" are not specifically included in the definition of "person," the legislature must have meant to exclude them. But the definition doesn't include "health care service plan" either—which, just like "enrollee" and "subscriber," is separately defined in Section 1345. So by the State's own logic, a health plan also is not a "person" and therefore cannot seek an exemption either. That's nonsensical.

flood of exemption requests, preventing third party harm, and not exceeding statutory authority.

Take the State's supposed interests in limiting the number of exemption requests and preventing the DMHC from exceeding its statutory authority. The State's decision in August 2014 to revoke already-in-place religious exemptions and enforce the coverage requirement against plans sold to churches and religious organizations actually *increased* the likelihood of exemption requests, exacerbating the DMHC's administrative convenience and "jurisdiction" concerns rather than achieving them. So it is not surprising that there were in fact many less-restrictive alternatives for the State to achieve its purported interests without burdening Skyline's religious exercise. "The most straightforward way," *Hobby Lobby*, 573 U.S. at 728, would have been for the State to leave the existing plan approvals and religious exemptions intact, as doing so would have neither resulted in a "flood" of exemption requests nor exceeded the DMHC's statutory authority.

Even now, the DMHC could alleviate the burden caused by its August 2014 letters by informing health insurers that, in light of *Fulton*, religious employers like Skyline can limit or exclude abortion coverage in their plans because the Free Exercise Clause trumps any competing state requirements. *See Skyline,* 968 F.3d at 752 ("The DMHC retains discretion to create exemptions from the Coverage Requirement."). Or the State could avoid the constitutional violation once and for all by expressly adopting a formal religious exemption like it did for its contraceptive coverage requirement. *See* Cal. Health & Safety Code § 1367.25(c) (requiring health insurers to provide religious employers with contraceptive-free plans if contraceptives "are contrary to the religious employer's religious tenets"). The State could employ any or all of these methods while still preserving its purported governmental interests. The Free Exercise Clause requires it to do so.

Nor can the State seriously contend that forcing Skyline's employee healthcare plan to cover elective abortion is the least restrictive way to prevent so-called third-party

harm. As detailed above, all of Skyline's employees share its religious beliefs about abortion, so the State's interest in withholding an exemption *from Skyline* cannot be considered compelling. *See Fulton*, 141 S. Ct. at 1881. Moreover, the State has granted categorical and individualized exemptions from the Abortion Coverage Requirement. It can "offer[] no compelling reason why it has a particular interest in denying an exception to [Skyline] while making them available to others." *Id.* at 1882.

## CONCLUSION

For the foregoing reasons and the reasons set forth in Skyline's prior summary judgment briefing, the Court should grant Skyline's Motion for Summary Judgment and deny Defendants' Motion for Summary Judgment.

Dated:  March 2, 2022                     Respectfully submitted,

s/ Jeremiah Galus
Jeremiah Galus (Arizona Bar No. 030469)*
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
jgalus@ADFlegal.org

Jacob E. Reed (Ohio Bar No. 99020)*
Alliance Defending Freedom
44180 Riverside Parkway
Lansdowne, VA 20176
(571) 707-4718
jreed@ADFlegal.org

Charles S. LiMandri (California Bar No. 110841)
Paul M. Jonna (California Bar No. 265389)
Jeffrey M. Trissell (California Bar No. 292480)
Freedom of Conscience Defense Fund
P.O. Box 9520
Rancho Santa Fe, CA 92067
(858) 759-9948
cslimandri@limandri.com

*Admitted *pro hac vice*
*ATTORNEYS FOR PLAINTIFF*

# CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2022, service of the foregoing Plaintiff's Supplemental Memorandum of Points and Authorities in Support of its Motion for Summary Judgment was made by way of the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: March 2, 2022               s/ Jeremiah Galus
                                   Jeremiah Galus
                                   Attorney for Plaintiff